## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| TECHTRONIC INDUSTRIES COMPANY LIMITED,<br><br>          Plaintiffs,<br><br>     – against –<br><br>MUDDY WATERS CAPITAL LLC, and MW DOMINO MANAGEMENT LLC,<br><br>          Defendants. | Case No. 1:25-cv-00249<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Techtronic Industries Company Limited ("TTI"), by and through its undersigned counsel, brings this Complaint against Defendants Muddy Waters Capital LLC and MW Domino Management LLC (together, "Muddy Waters") and allege as follows:

### NATURE OF THE CASE

1.     Muddy Waters has built a business model around exploiting market uncertainty and regulatory gaps. Operating in the shadows of financial markets, it takes substantial short positions in public companies and then deploys a sophisticated network of affiliates and partners to drive down stock prices through coordinated publicity campaigns. Through a calculated pattern of behavior, Muddy Waters systematically amplifies negative reports about target companies using media channels and platforms that it controls or influences, creating the misleading appearance of independent validation. While Muddy Waters publicly positions itself as a crusader against corporate fraud, its actual practices reveal a more troubling reality: it profits not from exposing genuine misconduct, but from creating market chaos through the strategic deployment of damaging allegations, regardless of their truth. When operating in plain sight, Muddy Waters at least assumes public accountability for its claims. But Muddy Waters has developed a more insidious approach:

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

This case arises from one such scheme.[1]

2.    The short positions Muddy Waters announces typically come with substantial fanfare and promotion, designed to alert the greatest number of market participants to their reports, thereby shifting the target stock downward and maximizing profit.  When Muddy Waters achieves its objective and the stock price drops—as it often does regardless of the truth of the report due to the negative publicity—Muddy Waters swiftly closes its short positions and locks in its profits, leaving the company and the investing public to grapple longer term fallout and damage.

3.    But Muddy Waters also plays a second, clandestine role in short selling: ████████

████████████████████████████████████████████████████████████

████████████████████████████    Like Muddy Waters, these third-party short sellers issue

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[1]    *E.g.*, Isabella Steger, *Examining Muddy Waters' Track Record*, Wall Street Journal (Nov. 28, 2012, 4:34 AM), https://www.wsj.com/articles/BL-DLB-40733 (noting recovery of four companies following Muddy Waters reporting); Winky T. Yang, *Profit and Ethics in Short Selling: The Case of Muddy Waters*, Seven Pillars Institute (Jan. 6, 2015), https://sevenpillarsinstitute.org/profit-ethics-short-selling-case-muddy-waters/ (explaining ethical concerns regarding business model); Michelle Celarier, *The Dark Money Secretly Bankrolling Activist Short-Sellers – and the Insiders Trying to Escape It*, Institutional Investor (Nov. 30, 2020), https://www.institutionalinvestor.com/article/2bsxbe3qsygknlfaolibk/portfolio/the-dark-money-secretly-bankrolling-activist-short-sellers-and-the-insiders-trying-to-expose-it.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

4.    ███████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

5.    ████████████████████████████████████████ Unlike

Muddy Waters, Bonilla's reach and assets are smaller.  He lacks Muddy Waters' massive financial

wherewithal and liquidity to maximize profits from his reports.  Bonilla needed a partner.  A

veteran shark to help him catch the big corporate fish and turn a larger profit.  ████████████

████████████████████████████████████████████████████

████████████

6.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Under this structure, Muddy Waters' role was simple: ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

7.    ███████████████████████████████████████████████

and shortly thereafter, Bonilla selected TTI, one of the largest tool manufacturers in the world and one of Hong Kong's most successful businesses, as the target of their scheme.  First in February 2023 and then again in June 2023, Bonilla, operating anonymously under the fictitious name "Jehoshaphat Research" published a lengthy, detailed, and utterly false report asserting that TTI was engaged in corporate malfeasance and accounting fraud.

8.    ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████

9.    ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

10.    Muddy Waters' assistance did not end there.  ████████████████████████

████████████████████████████████    Zer0esTV, a video channel owned by Carson Block whose content is driven by Block and other Muddy Waters employees and typically features them in its videos.  By spotlighting Bonilla, ████████████████████████████████, thus increasing the

report's negative impact on TTI's stock and ████████████████████████████████ ████████████████.

11.     ████████████████████████████████████████████████████, the scheme succeeded. TTI's stock price dropped by nearly 20% as a result of the Jehoshaphat Report. The allegations in the report were false and defamatory but that was inconsequential to Muddy Waters and Bonilla profiting to the tune of millions of dollars.

12.     TTI has sued Bonilla in the Middle District of Florida for the damage caused by his defamatory report. TTI now seeks to hold Muddy Waters accountable for its role as Bonilla's co-conspirator and for the damage that Bonilla's falsehoods made.

## PARTIES

13.     Plaintiff Techtronic Industries Company Limited is organized under the laws of Hong Kong and has its principal place of business in Hong Kong. It is a publicly traded company whose stock is traded on the Hong Kong stock exchange.

14.     Defendant Muddy Waters Capital LLC is a limited liability corporation organized under the state of Delaware. Its sole member is Carson Block, who is a resident of Austin, Texas. Muddy Waters Capital LLC is an investment manager that manages private investment funds including as relevant here, the Muddy Waters Domino Fund. Muddy Waters Capital takes short positions in companies that are the target of short reports published by its affiliate, Muddy Waters Research LLC.

15.     Defendant MW Domino Management LLC is a limited liability corporation organized under the state of Delaware. Its sole member is Carson Block, who is a resident of Austin, Texas. MW Domino Management LLC is an investment fund that short sales public companies based on the direction of Muddy Waters Capital LLC and the research of Muddy Waters Research LLC.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this case pursuant to Section 1332(a)(3) of Title 28 of the U.S. Code because the suit is between citizens of different States in which a citizen of a foreign state is an additional party and the amount in controversy is in excess of $75,000.

17.     This Court has personal jurisdiction over Muddy Waters pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because it is domiciled in Texas and is subject to the jurisdiction of a court of general jurisdiction of the State of Texas.

18.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this District.

## FACTUAL BACKGROUND

### I.     TECHTRONIC INDUSTRIES

19.     TTI is a manufacturer of power tools, outdoor power equipment, hand tools, and vacuum cleaners.

20.     The company was founded in Hong Kong in 1985 by Horst Pudwill and Roy Chi Ping Chung.  It began as an original equipment manufacturer for globally recognized brands including Craftsman.

21.     In 1990, TTI made an initial public offering and its stock was listed on the Hong Kong Stock Exchange.  Since its initial public offering, TTI's revenue has grown from $63.1 million to more than $13 billion.  The company's market capitalization has likewise grown and is currently nearly $20 billion.

22.     Beginning in 2005 with its acquisition of Milwaukee Power Tools, TTI began investing heavily in lithium-ion battery technology.  Over the nearly two decades since then, TTI has become a global leader in battery research and development and is one of the largest

manufacturers of batteries in the world, reflecting its status as not only a manufacturer of reliable tools but as a technological leader and innovator.

23.     In 2019, reflecting the great success and growth of the company, TTI's stock was selected as one of fifty companies included in the Hang Seng Index, the Hong Kong analog to the U.S. Dow Jones Industrial Average.

24.     Today, TTI's lines of products include numerous famous and respected brands including Ryobi, Milwaukee, Hoover, Oreck and Dirt Devil.

25.     In 2021, TTI earned $13.2 billion in revenue and $1.19 billion in gross profit.  Of its revenue, TTI earned $11.9 billion in sales of power tools and $1.2 billion in sales of vacuum cleaners.  Of the $11.9 billion in power tools, $6.8 billion was derived from sales of the Milwaukee line of power tools.  The remaining $5.1 billion in sales included all of TTI's other power tool product lines globally, including Ryobi.

26.     In 2022, TTI earned $13.3 billion in revenue and $1.2 billion in operating profit. Of its revenue, TTI earned $12.3 billion in sales of power tools and $925 million in sales of vacuum cleaners.  Of the $12.3 billion in power tools, $8.1 billion was derived from sales of the Milwaukee line of power tools.  The remaining $5.1 billion in sales included all of TTI's other power tool product lines globally, including Ryobi.

27.     As a publicly traded company, TTI publishes its financial results twice per year, including all of the information in paragraphs 20 and 21, above.

## II.     MUDDY WATERS CAPITAL

28.     Muddy Waters Capital is a privately held investment firm that manages assets of approximately $220 million, including in the Muddy Waters Domino Fund and Muddy Waters Global Opportunity Fund.  Founded by Carson Block, Muddy Waters is among the most prominent

activist short seller firms today.  It takes positions in publicly traded stocks that become more valuable if the price of the stock declines, and then sets about trying to reduce that price.

29.     Muddy Waters shorts companies based on its research arm, Muddy Waters Research LLC, which styles itself as "a pioneer in on-the-ground, freely published investment research."[2]  Muddy Waters purportedly aims to unveil "business fraud, accounting fraud, and fundamental problems" with public companies, which "the market does not yet perceive."[3]  Muddy Waters Capital takes positions in the companies that Muddy Waters Research identifies as falling into one of those three categories.

30.     Muddy Waters Research ensures its reports are published with significant fanfare as the goal is widespread readership and adoption, thereby convincing the market to sell their shares in the target company's stock and reduce the stock's value.  This in turn causes Muddy Waters' short positions to rise in value, resulting in the ultimate goal of profiting from its short position.

31.     Muddy Waters' coordinated media campaigns follow a distinct pattern designed to maximize market impact. It strategically times the release of negative information, leverages multiple controlled media platforms to create the appearance of independent validation, and coordinates trading activity to exploit resulting market disruption. This systematic approach allows Muddy Waters to magnify the impact of negative reports far beyond what their substantive merit would justify.

32.     For example, in 2024, Muddy Waters Research announced three shorts and issued 11 reports about these shorts.  These shorts and their corresponding reports were the subject of

---

[2]  About Muddy Waters Research, Muddy Waters Research LLC, *available at* https://muddywatersresearch.com/about/ (last accessed February 20, 2025).

[3]  *Id.*

8

significant publicity; Carson Block publicly announced each short and each announcement preceded a stock drop. Muddy Waters' short of Eurofins, as one example, resulted in a single day decline of 25%.[4]

33.    Publication by Muddy Waters is not a guarantee of accuracy. Far from it as the market has rejected its findings on several companies that it researched and shorted.[5] For example, Muddy Waters shorted Anta Sports in 2019: the stock boomed in 2021 and today, trades higher than it did at the time of the short.[6]

34.    Market analysts have criticized Muddy Waters for its approach due to the difficulties in regulating these funds is well known despite the "undeniable potential for unethical market manipulation."[7]

35.    Perhaps owing to the looming regulator threat, Muddy Waters also serves an ██████████████████ sinister role supporting ███████████ smaller short sellers. ████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

[4] *Eurofins denies short seller Muddy Waters' allegations after share fall*, Reuters (June 25, 2024, 3:42 AM), https://www.reuters.com/business/eurofins-denies-short-seller-allegations-after-share-slump-2024-06-25/.https://www.bloomberg.com/news/articles/2024-11-20/muddy-waters-carson-block-says-he-s-shorting-elf-beauty-shares

[5] *See* Steger *supra* note 1.

[6] *See* ANTA Sports Products Limited (ANPDY), yahoo!finance (last visited Feb. 19, 2025), https://finance.yahoo.com/quote/ANPDY/.

[7] *See e.g.*, *Activist Short-Sellers: Manipulative Profit Seekers or Bearers of Justice*?, Bocconi Students Investment Club (March 5, 2023), https://bsic.it/activist-short-sellers-manipulative-profit-seekers-or-bearers-of-justice/; Yang, *supra* note 1 (noting that "an unethical short seling research report can do great damage to both the market and the target companies.").

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

36.     Unsurprisingly, this practice has come under scrutiny.  The U.S. Department of Justice recently indicted another short seller, Andrew Left, for participating in a similar arrangement because, according to the indictment, hiding the so-called balance sheet provider's involvement hid material information from investors.  The Securities & Exchange Commission has also announced two new rules, which will take effect in 2025, requiring disclosure from short sellers, lenders, and some institutional investors with the goal of increasing transparency in short selling (absent here) and helping regulators and investors detect potential market manipulation.

37.     ████████████████████████████████████, Muddy Waters benefits from a decline in the stock price regardless of whether the allegations in the report are accurate or truthful; what matters is whether the allegations are sensational enough to grab the market's attention and create a panic and sell off.  Muddy Waters, safely in the shadows, avoids any question or reputational harm, litigation risk, or potential scrutiny from regulators.

## III.    JEHOSHAPHAT RESEARCH

38.     Victor Bonilla is also an activist short seller.  Under the name Jehoshaphat Research, Bonilla takes short positions in the publicly traded stock of specific companies and then anonymously publishes "research" reports about those companies intended to cause the stock price to decline.  Bonilla then cashes out his short positions, reaping the profits from his "research."

39.     Bonilla publishes his "research" on a website, Jehoshaphat Research ( www.jehoshaphatresearch.com), and on Twitter, using the handle @JehoshaphatRsch, which has more than 4,000 followers.  The published "research" reports purport to expose fraud by the target

companies.  To the contrary, as detailed below, the report about TTI is rife with false allegations, false assertions of fact, and defamatory statements.

40.     Bonilla is also an investment analyst and manager.  In addition to his operation of Jehoshaphat Research, he is the principal of Carrollwood Capital Management, L.P. ("Carrollwood"), an investment advisory firm that manages at least five hedge funds: Carrollwood SPV I, LP; Carrollwood SPV II, LP; Carrollwood SPV III, LP; Carrollwood SPV IV, LP; and Carrollwood SPV V, LP.  In aggregate, as of March 2023, these funds held gross assets of approximately $52 million.

41.     Bonilla is not Muddy Waters.  Carrollwood's assets represent less than a quarter of those held by Muddy Waters.  Likewise, Jehoshaphat publishes significantly fewer reports, having issued four short reports in 2024, none with the same fanfare as those issued by Muddy Waters.

## IV.     MUDDY WATERS AND JEHOSHAPHAT TARGET TTI

42.     Given Muddy Waters' and Carson Block's prominence within the activist short seller community, Victor Bonilla, ███████████████████████████████████████████ ███████████████████████.

43.     ██████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████ ██████████████████████████████ ███████████████.

44.     ██████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████.



45. ███████████████████████████████████████

███████████████████████████████████████████

█████████

46.    It did not take long for Bonilla ████████████████████████

██████████████████

47.    On February 22, 2023, Jehoshaphat Research published a "research report" falsely

asserting that TTI has "been inflating its profits dramatically for over a decade with manipulative

accounting" (the "Jehoshaphat Report").  A true and accurate copy of the Jehoshaphat Report is attached as Exhibit 2 to this Complaint.

48.     The Jehoshaphat Report is riddled with false assertions of fact that are disparaging and defamatory toward TTI.  Among other things:

49.     First, Bonilla claimed that TTI's financial reports, which it makes regularly to the public and Hong Kong securities regulators, were a "web of deceit."  Ex. 2 at 1.  Bonilla inexplicably claimed that TTI's great success—its decade-long streak of increasing its gross margin each year—must, on its own, be evidence of some sort of accounting trickery and that TTI's operating income is "[o]]verstated by ~40-70% by [a]ccounting [g]ames."  *Id.* at 2.

50.     Second, Bonilla falsely claimed that "TTI's financials are littered with evidence of costs being deceptively managed downward" through capitalization of costs and under-depreciation of capital assets.  *Id.* at 2.  Bonilla claimed that, as a result, "TTI's balance sheet has become a vast, toxic graveyard where the accounting bodies get buried."  *Id.* at 1.

51.     To support this assertion, Bonilla claimed that (i) TTI engaged in "excessive capitalization" of development costs to "massage[]" its earnings (*id*. at 11), which overstated TTI's income by more than $200 million, and (ii) TTI "stuffed so much nonsense (e.g., costs)" into its property, plant and equipment assets ("PP&E"), that its PP&E assets were "overvalued", resulting in TTI's earnings being "inflated by shifting expenses to later periods."  *Id.* at 14-17.  Bonilla further claimed that TTI was "[o]verproducing inventory which raises gross margin and pushes costs until later."  *Id.* at 27.  Because of the alleged under-depreciation, Bonilla falsely claimed, TTI is pushing costs into the future where it eventually is forced to write off capital assets for excessive losses.  *Id.* at 11-12.

52.    Third, Bonilla falsely claimed that TTI caused a "boost" to its earnings by treating "hundreds of millions of dollars of 90+ days past due [accounts receivable] that are in default according to TTI's own accounting policy" as "money-good" and not applying any reserve to these overdue balances.  *Id.* at 24.  Bonilla further claimed that TTI was engaging in "accounting manipulation" by "allocating current costs into 'prepayments' to defer expense recognition until later."  *Id.* at 33-34.  Bonilla implied without any basis that "[i]f committing outright financial fraud is the 'hard stuff,' would defying one's accountants be a 'gateway drug?'"  *Id.* at 3.

53.    Fourth, Bonilla falsely asserted that TTI is "literally struggling to pay its bills on time" and "failing to pay [its suppliers and vendors] within existing [payment] terms."  *Id.* at 4-5.

54.    Based on "accounting manipulation[s]," Bonilla calculated what he stated was TTI's "true" earnings by subtracting what he stated were the overstated amounts resulting from each "manipulation" (*id.* at 2, 9, 14):

| | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | LTM 1H22 |
|---|---|---|---|---|---|---|---|---|---|---|
| Reported EBIT | $291 | $368 | $414 | $453 | $531 | $612 | $685 | $993 | $1,256 | $1,318 |
| Minus: Excessive Capitalization of R&D | ($84) | ($90) | ($101) | ($109) | ($123) | ($126) | ($148) | ($142) | ($289) | ($337) |
| (Add back: Associated Amortization) | $59 | $63 | $73 | $81 | $88 | $101 | $101 | $101 | $89 | $100 |
| Minus: Missing Depreciation | $0 | $0 | $0 | ($7) | ($7) | ($5) | ($20) | ($39) | ($63) | ($83) |
| Minus: Missing Bad Debt Reserves | $0 | $0 | $0 | $0 | $0 | ($76) | ($106) | ($89) | ($51) | ($78) |
| Minus: Allocation of Spending to Prepayments | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | ($235) |
| Minus: Gross Profit Benefit from Overproducing | ($62) | ($47) | ($63) | ($7) | ($1) | ($71) | ($106) | ($127) | ($555) | ($206) |
| "True" EBIT | $205 | $293 | $324 | $412 | $489 | $434 | $406 | $697 | $388 | $480 |
| *Shortfall* | *-30%* | *-20%* | *-22%* | *-9%* | *-8%* | *-29%* | *-41%* | *-30%* | *-69%* | *-64%* |

55.    Each of these assertions is false.  TTI's financial reports accurately reflect the company's financial position in accordance with industry accepted accounting practices and the requirements of Hong Kong securities regulators, as verified each year by Deloitte after a comprehensive audit of TTI's financial records.

56.    First, TTI's decade of increasing gross margins is entirely accurate and is a result of TTI's strategic plan, growth and innovation including its prescient investment in battery technology and pioneering position in the cordless power tools industry.

57.     Second, TTI depreciates its capital assets in accordance with accepted international accounting standards that govern its books, specifically, the Hong Kong Financial Reporting Standards.  When it disposes of an asset at significantly below book value, it does so because it cannot sell the assets at full market and risk its proprietary intellectual property being put into the open market.  Instead, TTI is forced to sell such assets for scrap, resulting in the entirely correct accounting treatment Bonilla falsely characterized as nefarious.

58.     Third, TTI's accounting for aged accounts receivable is consistent with the historical payments that it has *actually received* from customers in those circumstances.  Because of the high quality of TTI's customers, it consistently receives payments from all of its customers, including even those whose accounts become overdue for a period of time.

59.     Fourth, TTI's accounts payable aging is entirely consistent with its financial position for years, including years during which TTI's business was growing rapidly.  Far from "struggling" to pay its bills or experiencing any financial stress, TTI's financials are robust and healthy.

60.     █████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████████████████████████████

61.     █████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████



62. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████ Muddy Waters employees, starting with Carson Block, who have significant experience with the Hang Seng Index and public accounting in Asian companies, would have seen the significant and obvious flaws of the Jehoshaphat Report.

63. ███████████████████████████████████████

███████████████████████████████████

64. ██████████████████████████

65. ███████████████████████████

66. █████████████████████████████

67. ██████████████████████████

68. ███████████████████████████████████████

██████████████████████████

69. ███████████████████████████████████████

██████████.

70. Muddy Waters' ██████████████████ regarding the Jehoshaphat Report prior to its publication reveals its base profit motivation and exemplifies its reckless disregard for and negligence towards the truth or falsity of the report and callousness toward harm that the

Jehoshaphat Report could—and ultimately did—cause TTI and the millions of innocent investors who owned TTI's stock.

71.    But Muddy Waters had nothing to fear from this fallout: ████████████████

████████

72.    Bonilla published the Jehoshaphat Report at approximately 9 p.m. Eastern Time on February 22, 2023, about half an hour before the Hong Kong stock exchange opened at 9:30 a.m. Hong Kong time on February 23, 2023.

73.    Muddy Waters was not listed as an investor in the Jehoshaphat Report, nor is its name listed anywhere on the Jehoshaphat Report nor its surrounding press.

74.    Bonilla chose to release the Jehoshaphat Report on February 22, 2023 because he knew that TTI was scheduled to release its 2022 annual financial results on March 1, 2023 and intended his report to cause the maximum disruption possible to the company before this announcement. On the same evening, Bonilla sent a letter to TTI's auditors in an attempt to inflict maximum damage.

75.    Simultaneous with the publication of the report on Jehoshaphat Research's website, Bonilla, through Jehoshaphat Research, posted a series of Tweets making the same false assertions about TTI, including the false claim that TTI was engaged in "massively, persistently manipulated accounting." At least 32,200 Twitter users viewed these Tweets, of which at least 30 re-Tweeted the false claims, further propagating Bonilla's malicious falsehoods.

76.    Muddy Waters also knew that promoting short seller reports was critical to ensuring that the market reacted to the information that Bonilla was publishing, that a sufficiently large number of TTI stockholders would sell their shares in a short-term panic and by extension, that Muddy Waters would profit. For this reason, ████████████████████████████

████████████████ a scripted interview with Bonilla on Zer0esTV, an online video channel for short sellers.

77.    Like Muddy Waters itself, Zer0esTV was founded by Carson Block and is run by him.  Zer0esTV is closely tied to Muddy Waters, having promoted many of the reports that Muddy Waters issued or invested in.  Muddy Waters employees frequently serve as guests or hosts of various shows on Zer0esTV.  As one example, Muddy Waters employee Freddy Brick hosted an interview with Joe Saluzzi on the website following the Berkshire Hathaway crash on June 3, 2024, and Carson Block makes frequent appearances on the channel.

78.    Bonilla appeared on the Zer0esTV program "The Chopping Block" to promote the Jehoshaphat Report.  His heavily scripted interview ████████████████████ gave Bonilla a platform to promote the defamatory and disparaging allegations from his Jehoshaphat Report.

79.    Muddy Waters' willingness to █████████████████████, without ensuring that the Jehoshaphat Report was the result of thorough and diligent reporting, further exhibits its recklessness, negligence, and malice.

80.    Muddy Waters' efforts, in concert with Bonilla's, were successful.  On the day the Jehoshaphat Report was published, TTI's stock price declined from HKD 92.50 per share to HKD 74.95 per share, a reduction of nearly 20%.  The losses were so severe that the Hong Kong Stock Exchange stopped trading in TTI's stock mid-way through the trading day on February 23, 2023.  Reflecting the great reach of Bonilla's lies, the trading volume of TTI's stock on February 23 was nearly six times higher than on the previous day, despite the early stop to trading.  On this single day, Bonilla's false assertions in the Jehoshaphat Report caused TTI to lose $3.5 billion in market

capitalization: real money that TTI's investors had the day before Bonilla and Muddy Waters enacted their scheme that was destroyed.

81.    The false Jehoshaphat Report also caused severe reputational harm to TTI among investors, partner companies, and consumers, and caused the company to suffer additional damages, including being forced to incur expenses, including legal fees, to investigate and refute Bonilla's false assertions and additional fees paid to the company's accounting firms to confirm the alleged accounting improprieties were false.

82.    In addition, TTI was faced with dissatisfaction among its key executives, who had joined the company to develop and sell power tools but were now forced to work 24/7 to counteract the harmful effects of Bonilla's false report.  To prevent widescale departures, TTI was forced to provide additional compensation to these executives tied to their ongoing employment with the company.  Each of these effects inflicted direct financial damage on TTI and was directly caused by Bonilla's wrongful actions.

83.    ███████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████

84.    ███████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████

85.    TTI issued two rebuttal statements in response to the Jehoshaphat Report, detailing the falsity of each of Bonilla's assertions.  But by the time of these rebuttals, the damage was done, and Muddy Waters and Bonilla had reaped the profits from their scheme.

## V.    TTI'S LAWSUIT AGAINST BONILLA

86.    TTI sued Bonilla in the Middle District of Florida alleging libel and libel per se for the statements contained within the Jehoshaphat Report.  The case is currently set for trial and is awaiting a trial date pending the outcome of cross-motions for summary judgment.

87.    In that action, TTI seeks to hold Bonilla accountable for his libelous statements that have caused significant damage to TTI's business and business reputation.

88.    TTI successfully opposed Bonilla's motion to dismiss, and, in the order denying this motion, the Court ruled that Bonilla's report contained statements that "in their totality … are more than opinion or hyperbole" and represented statements of fact.  *Techtronic Indus. Co. Ltd. v. Bonilla*, 8:23-cv-01734-CEH-AEP (M.D. Fla. Dec. 11, 2023) ECF No. 39, at 14.  The Court also squarely rejected, on TTI's motion to compel, Bonilla's attempt to claim the journalist privilege as a defense. The Court explained that Bonilla "clearly fails to" demonstrate that he is "a full-time employee of any news organization" in its order.  *Techtronic*, 8:23-cv-01734-CEH-AEP, ECF No. 55, at 3.

89.    During discovery, TTI deposed each of Bonilla's sources and each rejected Bonilla's reporting and his characterizations of the interviews. █████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████

90.    During discovery, on June 30, 2024, TTI learned for the first time, of the arrangement between Muddy Waters and Bonilla.  This disclosure was the result of a second heavily litigated motion to compel.

91.    ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

92.    TTI now seeks compensation for the great harm done to its reputation and the specific damages it has suffered as a result of Bonilla and Muddy Waters' campaign of falsehoods against it.

93.    All conditions precedent to filing suit have been complied with and/or are waived.

## FIRST CLAIM FOR RELIEF
## Conspiracy to Commit Libel

94.    Plaintiffs repeat and reallege paragraphs 1 to 93 as if fully set forth herein.

95.    Muddy Waters and Bonilla reached a meeting of the minds on the goal of profiting from selling short the stock of publicly traded companies, specifically, shorting the stock of TTI, and/or of profiting from short selling the stock of publicly traded companies by releasing "research reports" on companies.

96.    In furtherance of that goal, Bonilla, acting in concert with Muddy Waters, published a "research report" intended to lower the stock prices of publicly traded companies so that Bonilla and Muddy Waters could profit from the short-selling of those companies' stocks.

97.     The Jehoshaphat Report—the "research report" targeting TTI—was malicious, false, and defamatory, and it disparaged TTI's business integrity and accused TTI of fraudulent business practices both on Jehoshaphat Research and on Twitter.  For these reasons, Bonilla's publication of this report represented an unlawful and overt act.

98.     Bonilla's statements about TTI are false.

99.     Bonilla's false and defamatory statements exposed TTI to contempt and injury to its business reputation.

100.    Bonilla published these false and defamatory statements about TTI to numerous third parties on the internet through the Jehoshaphat Report, Bonilla's Twitter handle, and, with the assistance of Muddy Waters, through Zeroes TV.

101.    Muddy Waters knew the false and defamatory statements about TTI were false when Bonilla made them, and/or acted with reckless disregard and/or negligently as to the truth of the statements.

102.    TTI is not a public figure or a limited public figure.

103.    Muddy Waters is a non-media defendant.

104.    Bonilla does not publish disinterested and neutral commentary or editorializing as to matters of public interest.

105.    Bonilla's false and defamatory statements do not enjoy any absolute or qualified privilege.

106.    Neither Muddy Waters nor Bonilla enjoys any absolute or qualified privilege.

107.    Bonilla published these false and defamatory statements about TTI recklessly, negligently, and willfully and with malice, specifically with the purpose, desire, and effect of causing injury to TTI.

108.    Muddy Waters agreed to support Bonilla's publication of false and defamatory statements about TTI, and such agreement was reckless, negligent, willful, and with malice, specifically as to the purpose, desire, and effect of causing injury to TTI.

109.    Bonilla's false and defamatory statements have adversely affected TTI's otherwise good business reputation.

110.    TTI was not aware of the meeting of the minds between Muddy Waters and Jehoshaphat Research until the summer of 2024.

111.    As a direct and proximate result of Muddy Waters and Bonilla's actions, TTI suffered substantial damage, including reputational injury and financial harm, in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
### Conspiracy to Commit Libel Per Se

112.    Plaintiffs repeat and reallege paragraphs 1 to 93 as if fully set forth herein.

113.    Muddy Waters and Bonilla reached a meeting of the minds on the goal of profiting from short selling the stock of publicly traded companies, specifically, shorting the stock of TTI, and/or of profiting from short selling the stock of publicly traded companies by releasing "research reports" on companies.

114.    In furtherance of that goal, Bonilla, acting in concert with Muddy Waters, published a "research report" intended to lower the stock prices of publicly traded companies so that Bonilla and Muddy Waters could profit from the short-selling of those companies' stocks.

115.    The Jehoshaphat Report—the "research report" targeting TTI—was malicious, false, and defamatory, and it disparaged TTI's business integrity and accused TTI of fraudulent business practices both on Jehoshaphat Research and on Twitter. For these reasons, Bonilla's publication of this report represented an unlawful and overt act.

116.    Bonilla's statements about TTI are false.

117.    Bonilla's false and defamatory statements exposed TTI to contempt and injury to its business reputation.

118.    Bonilla's false statements are defamatory *per* se because, when considered alone without innuendo, these statements subject TTI to distrust, contempt, or disgrace and/or injure TTI in its trade or profession by accusing TTI of fraudulent or dishonest business practices.

119.    Bonilla published these false and defamatory statements about TTI to numerous third parties on the internet through the Jehoshaphat Report, Bonilla's Twitter handle, and, with the assistance of Muddy Waters, through Zeroes TV.

120.    Muddy Waters knew the false and defamatory statements about TTI were false when Bonilla made them, and/or acted with reckless disregard and/or negligently to the truth of the statements.

121.    TTI is not a public figure or a limited public figure.

122.    Muddy Waters is a non-media defendant.

123.    Bonilla does not publish disinterested and neutral commentary or editorializing as to matters of public interest.

124.    Bonilla's false and defamatory statements do not enjoy any absolute or qualified privilege.

125.    Bonilla published these false and defamatory statements about TTI recklessly, negligently, and willfully and with malice, specifically with the purpose, desire, and effect of causing injury to TTI.

126.    Bonilla's false and defamatory statements have adversely affected TTI's otherwise good business reputation.

127.    TTI was not aware of the meeting of the minds between Muddy Waters and Bonilla until spring of 2024.

128.    As a direct and proximate result of Muddy Waters and Bonilla's actions, TTI suffered substantial damage, including reputational injury and financial harm, in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**Conspiracy To Disparage TTI's Business**

129.    Plaintiffs repeat and reallege paragraphs 1 to 93 as if fully set forth herein.

130.    Muddy Waters and Bonilla reached a meeting of the minds on the goal of profiting from short selling the stock of publicly traded companies, specifically, shorting the stock of TTI, and/or of profiting from short selling the stock of publicly traded companies by releasing "research reports" on companies.

131.    In furtherance of that goal, Bonilla, acting in concert with Muddy Waters, published a "research report" intended to interfere with TTI's business and economic interests in an unprivileged fashion.

132.    Bonilla's false and disparaging statements exposed TTI to contempt and injury to its business and business reputation.

133.    Bonilla published these false and defamatory statements about TTI to numerous third parties on the internet through the Jehoshaphat Report, Bonilla's Twitter handle, and, with the assistance of Muddy Waters, through Zeroes TV.

134.    Muddy Waters knew the false and disparaging statements about TTI were false when Bonilla made them, and/or acted with reckless disregard to the truth of the statements and/or intended to interfere in TTI's economic interest in an unprivileged fashion.

135.    Bonilla published these false and disparaging statements about TTI willfully and with malice, specifically with the purpose, desire, and effect of causing injury to TTI.

136.    TTI is not a public figure or a limited public figure.

137.    Muddy Waters is a non-media defendant.

138.    Bonilla, acting in concert with Muddy Waters, does not publish disinterested and neutral commentary or editorializing as to matters of public interest.

139.    Bonilla's false and disparaging statements do not enjoy any absolute or qualified privilege.

140.    Bonilla's false and disparaging statements have adversely affected TTI's business and otherwise good business reputation.

141.    As a direct and proximate result of Muddy Waters and Bonilla's actions, TTI suffered special damages representing the total amount of the fees accrued by the professionals TTI hired to analyze the company following the accusations in the First and Second Reports.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

a.      An award of actual, presumed, general and special damages as allowed by law and, as applicable, to be proven at trial;

b.      An award of punitive damages;

c.      Costs of this action, reasonable attorneys' fees, and pre- and post-judgment interest, to the maximum extent provided by law·

d.      An order requiring Defendants to retract all previously published defamatory statements; and

e.      Any other relief the Court deems just and appropriate.

**JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedures, Plaintiffs respectfully demand a trial by jury of any issues so triable.

Dated:  February 20, 2025

**QUINN EMANUEL URQUHART
& SULLIVAN LLP**
Asher Griff

Asher B. Griffin, Texas Bar No. 24036684
300 West 6th Street, Suite 2010
Austin, TX 78701
(737) 667-6100
ashergriffin@quinnemanuel.com

Jason Sternberg *(pro hac vice* forthcoming)
Laura N. Ferguson *(pro hac vice* forthcoming)
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
Telephone:  (305) 402-4880
Facsimile:  (305) 901-2975
jasonsternberg@quinnemanuel.com

Kristin Tahler *(pro hac vice* forthcoming)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
kristintahler@quinnemanuel.com

Nicholas Inns *(pro hac vice* forthcoming)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
Facsimile:  (202) 538-8100
nicholasinns@quinnemanuel.com
*Attorneys for Techtronic Industries Company Limited*