UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TECHTRONIC INDUSTRIES COMPANY LIMITED, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 1:25-cv-00249-DAE |
| MUDDY WATERS CAPITAL LLC and MW DOMINO MANAGEMENT LLC, | § § § | |
| Defendants. | § § | |

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

TO THE HONORABLE DAVID A. EZRA:

Muddy Waters Capital LLC and MW Domino Management LLC ("Muddy Waters") move to dismiss all claims alleged in Plaintiff's Complaint.

## I.     Introduction and summary.

Plaintiff Techtronic Industries Company Limited ("TTI") claims it was defamed by a short-seller report written by non-party Victor Bonilla and published on February 22, 2023 ("the Report"). The Report opined that TTI's revenues were overstated due to unusual accounting practices and predicted that its stock price would decline. Nearly two years later, TTI sued Muddy Waters, although Muddy Waters did not write or publish the Report, alleging it engaged in a "conspiracy to commit" libel, libel *per se*, and disparagement. TTI's lawsuit fails, as a matter of law, for two independent reasons, and should be dismissed.

First, TTI's claims are barred by Texas' one-year statute of limitations because TTI did not file suit until almost two years after the Report was published and it pleads no theory or facts that could toll limitations. Second, even if its claims were not time-barred, TTI Complaint fails to state

a conspiracy claim under Texas law because (1) it has not sued, in this case, any defendant who committed the underlying alleged torts of libel, libel *per se*, and disparagement, and (2) it has not alleged that Muddy Waters had a "meeting of the minds" with Bonilla or the "specific intent" to libel and disparage TTI, essential elements of any conspiracy claim.

## II.    TTI's factual allegations and legal claims.

### A.    The parties.

Plaintiff TTI is a Chinese company whose stock is traded on the Hong Kong stock exchange.  Comp. ¶ 13.  TTI manufactures and sells power tools, outdoor power equipment, hand tools, and vacuum cleaners.  *Id*. ¶ 19.  It claims an annual revenue of over $13 billion and a market capitalization of $20 billion.  *Id*. ¶ 21.

Defendants Muddy Waters Capital LLC and MW Domino Management LLC are Delaware companies owned by Austin, Texas, resident Carson Block.  Comp. ¶¶ 14-15.  The difference between them is immaterial to this motion, so they are referred to collectively as "Muddy Waters." Muddy Waters is "among the most prominent activist short seller firms today."  *Id*. ¶ 28.

"Short sellers" borrow shares from a broker for a fee and agree to return the same number of shares to the broker at a later time.  *See Wu v. GSX Techedu Inc.*, 738 F. Supp. 3d 527, 550 fn. 24 (D.N.J. 2024).  The short seller then sells the borrowed stock, betting that its price will decline before the short seller has to buy replacement shares.  *Id*.  The short seller profits if the stock price declines enough to cover the broker fee and the cost of the replacement shares.  *Id*.  If the price rises, the short seller's exposure is potentially unlimited.  *Sharett v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 70 (S.D.N.Y. 2015).  "Activist" short sellers will investigate publicly traded companies, and if they conclude the market has misjudged a company's value or the company has misled investors, they will take a short position in the company's stock and then publish a report explaining why.

*See In re Genius Brands Int'l, Inc. Securities Litigation*, 97 F.4th 1171, 1178 fn. 3 (9th Cir. 2024). Short seller investigations do the same work as long form financial investigative journalists (a vanishing breed) and the (over-worked and under-resourced) SEC by providing investors with in-depth business and market information. Activist reports, including those by Muddy Waters, have led to publicly traded companies being delisted from stock exchanges, fueled criminal securities fraud investigations, and are cited by federal courts sustaining the adequacy of pleadings in securities class action lawsuits. *See, e.g.*, *Schneider v. Natera, Inc.*, No. 1:22-CV-398-DAE, 2023 WL 9958265, at *9 (W.D. Tex. Sept. 11, 2023) (plaintiffs adequately pled loss causation in securities fraud claim based on short-seller report); *In re Cassava Sciences, Inc. Securities Litigation*, No. 1:21-CV-751-DAE, 2023 WL 3442087, at *8 (W.D. Tex. May 11, 2023) (denying motion to dismiss securities fraud claim supported by short-seller analysis).[1] The risk taken by activist short sellers signals confidence in their reports' accuracy because, "[a]fter all, by shorting the stock, [they] put their money behind their belief that the stock is overvalued," *Cassava Sciences, Inc. v. Bredt*, No. 1:22-CV-9409, 2024 WL 1347362, at *25 (S.D.N.Y. March 28, 2024), and an inaccurate report harms their reputation and poses legal risks.

Non-party Victor Bonilla is an activist short seller who publishes reports under the name

---

[1] Muddy Waters' research is regularly cited and relied on by courts and other authorities in the US and abroad. *See, e..g., Saskatchewan Healthcare Employee's Pension Plan v. KE Holdings Inc.*, 718 F. Supp. 3d 344, 360-65, 374-75 (S.D.N.Y. 2024) (Muddy Waters report satisfied heightened securities fraud pleading standard); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 115-16, 123-24 (S.D.N.Y. 2013) (Muddy Waters report supported denial of motion to dismiss securities fraud claim, noting that "majority of courts" have held that short-seller reports do not implicate the skepticism of traditional anonymous sources); *Henning v. Orient Paper, Inc.*, No. CV 10-5887, 2011 WL 2909322, at *2, 6-7 (C.D. Cal. July 20, 2011) (Muddy Waters reports supported securities fraud allegations and loss causation); *Burford Capital Ltd. v. London Stock Exchange Group pcl.* [2020] EWHC 1183 (rejecting claim that Muddy Watters report describing misleading accounting was market manipulation); UK Financial Conduct Authority, Final Notice (August 30, 2023) (censuring NMC Health PLC for fraud, citing Muddy Waters report).

Jehoshaphat Research. Comp. ¶ 38. In 2022, Jehoshaphat Research's work was cited by a federal court when it ruled that a class-action securities fraud claim had been adequately pled. *Delaware County Employees Retirement Sys. v. AdaptHealth Corp.*, 606 F. Supp. 3d 124, 134 (E.D. Pa. 2022). Its report revealed that the defendant corporation's true organic growth was negative, when calculated in line with industry standards, contrary to the company's disclosures claiming profitability. *Id.* That lawsuit resulted in a class-action settlement valued at $60 million. *Delaware County Employees Retirement Sys. v. AdaptHealth Corp.*, 739 F. Supp. 3d 270 (E.D. Pa. 2024).

In 2023, Bonilla and Muddy Waters entered into a research agreement embodied in a written contract. *Id.* ¶ 43 & Ex. 1. The parties agreed that Bonilla would research companies and, if he decided to publish a report, he would give Muddy Waters prior notice. *Id.* Ex. 1 at 7-8. If Muddy Waters decided to take a short position in the company and Bonilla decided to publish his report, Muddy Waters would pay Bonilla a percentage of its resulting profits, if any. *Id.* Ex. 1 at 1-2. Bonilla retained sole discretion on what companies to research, and Muddy Waters had no right to direct or control his research or decision to publish. *Id.* Ex. 1 at 2, 11. Conversely, Bonilla had no right to direct or control Muddy Waters' investment decisions. *Id.*

Bonilla published a 60-page report on TTI on Jehoshaphat Research's website on February 23, 2023 (the "Report"). Comp. ¶ 47 & Ex. 2. Muddy Waters took a short position on TTI before the Report was published. *Id.* ¶ 60. In broad terms, the Report concluded that TTI had been employing various unusual accounting practices that had the effect of overstating its profits and understating its expenses, resulting in an artificially inflated stock price. *See* Comp. Ex. 2. The Report criticized TTI's publicly filed financial statements; it did not disparage the quality of TTI's products. *Id.* The Report compared TTI's accounting practices to its peers and predicted that TTI's more aggressive methods would eventually require the company to recognize large, delayed

expenses and reduce its profits, and therefore concluded that its stock price faced a large downside risk. *Id*. After the Report was published, TTI's stock declined by nearly 20%. *Id*. ¶ 80. TTI alleges that the Report's criticisms of its accounting practices were "false," but TTI does not deny that it employed those practices. *Id*. ¶ 55.

TTI sued Bonilla for libel in the Middle District of Florida on August 3, 2023, repeatedly alleging that Bonilla had published the Report with "unidentified co-conspirators" who profited from short selling TTI's stock. *See Techtronic v. Bonilla*, No. 8:23-cv-01734, Doc. 1 ¶¶ 9, 32, 104, 118. TTI did not name Muddy Waters in its Florida lawsuit, but it deposed Carson Block and another Muddy Waters executive, Freddy Brick. The Florida case remains pending with cross-motions for summary judgment briefed and under consideration.

**B.    TTI's claims against Muddy Waters in this lawsuit.**

TTI filed this lawsuit on February 20, 2025, almost two years after the Report was published. Although filled with vitriol, the Complaint's allegations boil down to a claim that Muddy Waters profited from short trades based on Bonilla's report. Comp. ¶¶ 1-11. While TTI criticizes Muddy Waters for not fact-checking the Report before it was published, and for relying solely on Bonilla's credibility, *id*. ¶¶ 61-70, it does not allege that Muddy Waters knew the Report was false or knew that Bonilla intended to publish false statements about TTI. Comp. ¶¶ 1-92. Having taken Muddy Waters' depositions, TTI surely would have alleged such facts if it could, but it does not because it cannot. TTI also ignores the undisputed fact that the contract between Muddy Waters and Mr. Bonilla required him to provide and publish only accurate, complete, and non-misleading information. *See id*. Ex. 1 at 7-8 and Section IV.B., below.

TTI attempts to state three causes of action against Muddy Waters: Conspiracy to Commit Libel, Conspiracy to Commit Libel Per Se, and Conspiracy To Disparage TTI's Business. Comp.

¶¶ 95, 113, 130. Each claim is based on the very same statements in the Report. *Id*. ¶¶ 97, 115, 132. Each claim alleges that the Report injured TTI's "business reputation." *Id*. ¶¶ 99, 117, 132. TTI's conspiracy theory rests on the allegation that Muddy Waters and Bonilla

> reached a meeting of the minds on the goal of profiting from short selling the stock of publicly traded companies, specifically shorting the stock of TTI, and/or of profiting from short selling the stock of publicly traded companies by releasing 'research reports.'

*Id*. ¶¶ 95, 113, 130. However, TTI does ***not*** allege Bonilla and Muddy Waters had a "meeting of the minds" to libel or disparage TTI or to engage in any other illegal or tortious conduct. *Id*. At most, TTI alleges an agreement to short it stock, not a "conspiracy to libel" it.

## III.    TTI's claims are time-barred under Texas law.

A claim may be dismissed under Rule 12(b)(6) "if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Limitations is an affirmative defense, and dismissal is proper "where it is evident from the plaintiff's pleadings that the action is barred, and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F. 3d 359, 366 (5th Cir. 2003).

In diversity cases, "federal courts apply state statutes of limitations and related state law governing tolling of the limitation period." *Hensgens v. Deere & Co.,* 869 F.2d 879, 880 (5th Cir. 1989). In Texas diversity cases, Texas limitations law applies, regardless of which law may govern the substantive claims. *In re BP p.l.c. Securities Litigation*, 51 F. Supp. 3d 693, 697 (S.D. Tex. 2014) (applying Texas statute of limitations to claims governed by English law); *Aubrey v. D Magazine Partners, LP*, No. 3:19-CV-0056-B, 2020 WL 1479025, at *12 (N.D. Tex. March 26, 2020) (applying Texas statute of limitations to defamation claims asserted under Florida law).

### A.    TTI's "conspiracy to commit" libel and libel *per se* claims are time-barred.

TTI labels its first two claims "Conspiracy to Commit Libel" and "Conspiracy to Commit

Libel Per Se." Comp. ¶¶ 94, 112. In Texas, the limitation period for libel and libel *per se* claims is one year. Tex. Civ. Prac. & Rem. Code § 16.002(a) (libel); *Velocity Databank, Inc.*, *v. Shell Offshore, Inc.*, 456 S.W.3d 605, 608 (Tex. App. – Houston [1st Dist.] 2014, pet. denied) (libel *per se*). The fact that TTI couches its claims as "conspiracy to commit" those torts does not impact limitations. Civil conspiracy is a vicarious liability theory, and therefore it "does not have its own statute of limitation." *Agar Corp., Inc. v. Electro Circuits International, LLC*, 580 S.W.3d 136, 140-42 (Tex. 2019). A conspiracy claim shares the limitations period of the alleged underlying tort and may proceed only if that tort "is itself not barred by limitations." *Id*. at 143-44.

Libel claims accrue "when the allegedly defamatory matter is published or circulated." *Glassdoor, Inc. v. Andra Group, LP*, 575 S.W.3d 523, 529 (Tex. 2019). Texas applies the "single publication rule," meaning that libel claims accrue when a challenged statement is first published, even if the allegedly libelous statement remains accessible online. *Id.* at 528-29.

The Report was published on February 23, 2023. Comp. ¶ 47, 72, 74, 76. Any libel claims based on the Report accrued that day and expired on February 24, 2024. TTI did not file this lawsuit until February 20, 2025, nearly two years after the Report was published. TTI's Complaint, therefore, affirmatively shows that its conspiracy to commit libel and libel *per se* claims are time-barred. Those claims should be dismissed. *E.g., Walker v. Beaumont ISD*, 938 F.3d 724, 742-43 (5th Cir. 2019) (dismissing claims as time-barred on the pleadings); *Jones*, 339 F. 3d at 366 (5th Cir. 2003) (same); *Gause v. Mattis*, No. 5:18-CV-417-DEA, 2018 WL 11452196, at *3-4 (W.D. Tex. Dec. 11, 2018) (same).[2]

---

[2] TTI appears to claim that Jehoshaphat Research also published something "in June 2023," but does not say what. *See* Comp. ¶ 7. June 2023 is more than one year before TTI filed suit, so any claim based on a June 2023 publication is time-barred. Likewise, for any claim TTI may be trying to state based on "tweets" published in conjunction with the February 2023 report or based on Bonilla's contemporary appearance on an online video channel to discuss his report. *Id*. ¶¶ 75-79.

**B.      TTI's "conspiracy to disparage" claim is also time-barred.**

TTI labels its third cause of action "Conspiracy To Disparage TTI's Business."  Comp.

¶ 129.  This claim is based on the same statements in the Report that criticized TTI's accounting

practices and opined that its revenue and stock price were overstated as a result.  *Id*. ¶¶ 48-54, 131.

TTI claims those statements "adversely affected TTI's business and otherwise good business

reputation."  *Id*. ¶ 140.  TTI does not allege that the Report disparaged TTI's power tools and other

products, and it did not.  *Id*. Ex. 2.

A plaintiff cannot resurrect a time-bared claim by "recasting [its] claim in the language of

another cause of action … ."  *Gandy v. Williams*, 634 S.W.3d 214, 243 (Tex. App. – Houston  [1st

Dist.] 2021, pet. denied).  In particular, a plaintiff "cannot avoid the one-year statute of limitations

applicable to defamation claims by simply alleging additional causes of action that are subject to

a two-year statute of limitations."  *Hamad v. Center for Jewish Community Studies*, 265 Fed. App'x

414, 417 (5th Cir. 2008) (applying one-year limitation period to business disparagement claim).

For instance, the one-year statute of limitations bars tortious interference claims "based solely on

defamatory statements."  *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 370 (Tex. 2014).

Likewise, although the "default" limitations period for business disparagement claims is two years,

when the gravamen of a particular business disparagement claim "'is injury to a plaintiff's

reputation because of defamatory statements,' the applicable statute of limitations is one year."

*Van Dyke v. Retzlaff*, No. 4:18-CV-247, 2020 WL 6557715, at *3 (N.D. Tex. Nov. 9, 2020) (quoting

*Walker*, 938 F.3d at 742).

In Texas, libel and slander (collectively, "defamation") are false statements that harm a

business' ***reputation***, while business disparagement "encompasses falsehoods concerning the

***condition or quality of a business's products or services*** that are intended to, and do in fact, cause

financial harm." *Innovative Block of South Texas, Inc. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020). The torts are distinguished by "the nature of the alleged falsehoods." *Id.* at 418. In defining the scope of business disparagement claims, the Supreme Court in *Innovative Block* relied on Section 629 of the Second Restatement of Torts, which defines a "disparaging" statement as one that "is understood to cast doubt upon the quality of another's land, chattels or intangible things, or upon the existence or extent of his property in them … ." *Id.* at 417 (citing Restatement (Second) of Torts § 629).[3]

For example, a false statement about the quality of a manufacturer's concrete blocks is business disparagement, not defamation. *Innovative Block*, 603 S.W.3d at 420. On the other hand, a false statement about the amount of noise a business makes is defamation, not business disparagement, because it is not about the plaintiff's products or services. *Amini v. Spicewood Animal Hospital, LLC*, No. 03-18-00272-CV, 2019 WL 5793115, at *9 (Tex. App. – Austin Nov. 7, 2019, no pet.). *See also Kinect Solar, LLC v. Panasonic Corp. of N. America*, No. 1:20-CV-378-LY, 2020 WL 6385292, at *4 (W.D. Tex. 2020) (misleading statements that competitor's products were not covered by warranty stated business disparagement claim), *adopted*, 2020 WL 10054586 (W.D. Tex. Nov. 17, 2020).

---

[3] *See also AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 398 (W.D. Tex. 2023) (business disparagement encompasses "falsehoods concerning the condition or quality of a business's products or services," citing *Innovative Block*); *Texas Tribune, Inc. v. MRG Medical LLC*, No. 03-23-00293-CV, 2024 WL 2305265, at *5 (Tex. App. – Austin May 22, 2024, pet. denied) (distinction between defamation and business disparagement turns on "whether the falsehood affects the plaintiff's reputation or the marketability of the plaintiff's good[s] and services"); *Double Diamond, Inc. v. Saturn*, 339 S.W.3d 337, 348 (Tex. App. – Dallas 2011, pet. denied) (using Restatement § 629 definition of "disparaging" in business defamation jury charge); *Smith v. Textile Rental Servs. Ass'n*, No. 3:20-CV-3178-B, 2021 WL 3566678, at *7 (N.D. Tex. Aug. 12, 2021) ("business disparagement encompasses falsehoods concerning the condition or quality of a business's products or services," quoting *Innovative Block*); *Broughton v. Livingston ISD*, No. 9:08-CV–175, 2010 WL 3056862, at *10 (E.D. Tex. July 29, 2010) (quoting Restatement § 629 definition of "disparaging").

TTI does not (and cannot) allege that the Report disparaged its products. Rather, the Report is about TTI's accounting practices and stock price. Therefore, TTI's "Conspiracy to Disparage TTI's Business" claim is not based on an underlying ***business disparagement claim***, as defined by Texas law, but is actually based on a ***defamation*** claim subject to the one-year statute of limitations. *See Walker*, 938 F.3d at 742 (applying one-year limitations period to business disparagement claim); *Van Dyke v. Retzlaff*, No. 4:18-CV-247, 2020 WL 6557715, at *2-3 (N.D. Tex. Nov. 9, 2020) (applying one-year limitations period to business disparagement claim).

This rule is well-established. Forty years ago, in *Gulf Atlantic Ins. Co. v. Hurlbut*, the Dallas Court of Appeals applied the one-year limitations period to a business disparagement claim based on statements that hurt a company's reputation, but that did not disparage "the quality of what the plaintiff has to sell." 696 S.W.2d 83, 96 (Tex. App. – Dallas, 1985), *rev'd on other grounds*, 749 S.W.2d 762 (Tex. 1987). While reversing on other grounds, the Supreme Court expressly approved the Court of Appeals' holding that the plaintiff's business disparagement claim was "in essence a claim for slander," and therefore was "barred by the one year statute of limitations." 749 S.W.2d at 766. TTI's "conspiracy to disparage" claim is therefore time-barred and should be dismissed along with its conspiracy to commit libel and libel *per se* claims.

## C. Plaintiff has not, and cannot, plead facts that would toll limitations.

When a claim is time-barred on the face of a complaint, the plaintiff must plead facts that would toll limitations to avoid dismissal. *Jones*, 339 F.3d at 336. TTI does not allege any tolling theory or facts that would support tolling. Comp. ¶ 1-141.

Although TTI alleges that it learned "for the first time" of the relationship between Muddy Waters and Bonilla during discovery in its Florida lawsuit on June 30, 2024, Comp. ¶ 90, this is contradicted by the Complaint's allegation that Muddy Waters is a well-known short-seller that

actively promoted the Report on "an online video channel for short sellers" which, "[l]ike Muddy Waters itself," was "founded by Carson Block and is run by him." *Id*. ¶¶ 76-77. When TTI sued Bonilla in Florida on August 3, 2023 – well within the one-year statute of limitations – it alleged that he operated Jehoshaphat Research "with additional unidentified co-conspirators" who profited from short selling its stock. *See* Ex. 1 ¶¶ 9, 32, 104, 118, attached. Counsel for Bonilla disclosed to TTI on February 6, 2024 – also within limitations – that "Freddy Brick at Muddy Waters Capital discussed the short thesis and Techtronic itself." *See Techtronic v. Bonilla*, No. 8:23-cv-01734, Doc. 137-1 ¶ 2; Doc. 137-2 at 4.

But even if TTI did not learn of Muddy Waters' relationship with Mr. Bonilla until June 2024, this would not toll limitations because "'limitations begin to run ***when the fact of injury is known,' not when the alleged wrongdoers are identified.***" *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344 (Tex. 1992) (quoting *Morena v. Sterling Drub, Inc.*, 787 S.W.2d 348, 351 (Tex. 1991)) (emphasis added). *See also Petrosurance Cas. Co. v. Threadneedle Ins. Co., Ltd.*, 129 F.3d 608, at *7 (5th Cir. 1997) ("the limitations period commences when the wrongful act effects an injury, not when the alleged wrongdoers are identified") (table) f(citations omitted).

In Texas, the statute of limitations is applied strictly, and the discovery rule is a very limited exception. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 457 (Tex. 1996). Whether the discovery rule applies is a question of law. *Velocity Databank, Inc.*, 456 S.W.3d at 609. The discovery rule only "delays accrual of a cause of action until the plaintiff knew or should have known of their ***injury***, not the identity of the wrongdoer." *Baxter v. Gardere Wynne Sewell LLP*, 182 S.W.3d 460, 463 (Tex. App. – Dallas 2006, pet. denied) (emphasis in original). *See also Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 743 (Tex. App. – Houston 1993, writ denied) ("In Texas, all that is required to commence the running of the

limitations period is the discovery of an injury and its general cause, **not** the exact cause in fact and ***the specific parties responsible***.") (emphasis added). Specifically, the discovery rule applies to defamation claims only "when the injured party cannot learn of ***the existence of his cause of action*** before the limitation period has expired." *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex. 1976) (emphasis added). It does not apply where, as here, "the defamation is made a matter of public knowledge through such agencies as newspapers or television broadcasts." *Id.*

For the same reason, TTI cannot allege fraudulent concealment because "[f]raud and concealment, in order to prevent the running of the statute [of limitations], must relate to concealment of the cause of action and not to the concealment of the parties." *Griffith v. Shannon*, 284 S.W. 598, 600 (Tex. Civ. App. – 1926, writ dism'd).

> [C]oncealment of one's identity does not toll the statute of limitations when, regardless of the defendant's identity, the plaintiff knows, or reasonably should know, he has a cause of action. In other words the doctrine of fraudulent concealment will not toll limitations unless the wrongdoer fraudulently conceals the plaintiff's ***cause of action***.

*Baxter*, 182 S.W.3d at 464 (emphasis in original) (citing *Otis v. Scientific Atlanta*, 612 S.W.2d 665, 667 (Tex. Civ. App. – Dallas 1981, writ ref'd n.r.e.)). Limitations are not tolled even if the alleged fraud leaves a plaintiff "unaware of all the potential defendants." *Id.*

> Knowing that one has a cause of action does not necessitate knowing "the exact identity of the wrongdoer," or awareness of all the potential defendants. Rather, knowledge of a cause of action only requires knowing that one has suffered an "injury and that it was likely caused by the wrongful acts of another." "Once these requirements are satisfied, 'limitations commences, even if the plaintiff does not know the exact identity of the wrongdoer.'"

*Labaty v. UWT, Inc.*, 121 F. Supp. 3d 721, 745 (W.D. Tex. 2015) (quoting *Childs v. Haussecker*, 974 S.W.3d 31, 40 (Tex. 1998) and *Baxter*, 182 S.W.3d at 463). In short, "[i]rrespective of the potential effect of fraudulent concealment or the discovery rule on limitations, actual knowledge of the alleged injury causing conduct starts the clock on the limitations period." *Exxon Corp. v.*

*Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 209 (Tex. 2011).

Finally, equitable estoppel cannot excuse TTI's failure to file suit within the one-year limitations period. Equitable estoppel may bar a party from asserting limitations, but ***only if*** that party has actively induced a plaintiff not to file suit on a known claim within limitations. *Baxter*, 182 S.W.3d at 465. *See also Cont'l Cas. Co. v. Dr. Pepper Bottling Co. of Tex., Inc.*, No. 3:03-cv-1207-BH, 2005 WL 440395, at *7 (N.D. Tex. Feb. 23, 2005) ("Equitable estoppel bars a defendant from asserting a limitations defense when the defendant … makes representations that induce a plaintiff not to file a suit within the applicable limitations period.") (citing *Villages of Greenbriar v. Torres,* 874 S.W.2d 259, 264 (Tex. App. – Houston [1st Dist.] 1994, writ denied)); *Leonard v. Eskew*, 731 S.W.2d 124, 129 (Tex. App. – Austin 1987, writ ref'd n.r.e.) (equitable estoppel applies only when the defendant "has induced the plaintiff not to file suit"). TTI does not, and cannot, allege that Muddy Waters made any statement within limitations that induced it from filing suit.

### D.    *Glassdoor v. Andra Group* bars TTI's claims.

The Texas Supreme Court addressed the ***exact*** question presented here in *Glassdoor, Inc. v. Andra Group, LP*, 575 S.W.3d 523, 529 (Tex. 2019). In *Glassdoor*, Andra Group believed it had been libeled and disparaged by anonymous reviews posted on Glassdoor's website, and it filed a state-court pre-suit petition to discover the reviewers' identities. 575 S.W.2d at 525. The company did not, however, file a libel or business disparagement lawsuit within limitations. Glassdoor argued that the pre-suit discovery petition became moot after limitations expired on any putative claims based on the anonymous reviews. *Id*. at 530. Andra Group responded that the reviewers' anonymity presented "discovery rule issues," but the Supreme Court disagreed, explaining that limitations began to run when Andra Group discovered or should have discovered "the injury and that it was likely caused by the wrongful acts of another." *Id*. The Court reiterated the long-

standing rule that limitations commence "***even if the plaintiff does not know the exact identity of***

***the wrongdoer.***" *Id.* (emphasis in original). The company's putative libel and disparagement

claims, therefore, were "time-barred as a matter of law." *Id*. at 525. The company could have

preserved its claims against the anonymous reviewers, the Court explained, by filing a Doe lawsuit,

citing a case where the plaintiff had done just that. *Id*. at 530 (citing *In re Does 1-10*, 242 S.W.3d

805, 814 (Tex. App. – Texarkana 2007, orig. proceeding)). Because Andra Group had not done so,

limitations barred its putative libel and disparagement claims. *Id*.

      *Glassdoor* controls. The Report was released publicly on February 22, 2023. Comp. ¶¶ 72-

74. TTI believed Mr. Bonilla had "co-conspirators" no later than August 3, 2023, even if it did not

know their names. TTI could have preserved its claims by filing a Doe lawsuit before February

24, 2024. Because it did not, *Glassdoor* establishes that TTI's claims against Muddy Waters are

time-barred and must be dismissed.

## IV.   Even if its claims were not time-barred, TTI's Complaint fails to state a claim for conspiracy against Muddy Waters.

      A complaint that fails to state a claim upon which relief can be granted should be dismissed.

Fed. R. Civ. P. 12(b)(6). A complaint "must contain either direct or inferential allegations

respecting all the material elements necessary to sustain recovery." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 562 (2007). The plaintiff must allege "factual content that allows the court to draw

the reasonable inference that the [moving] defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "A pleading that offers 'labels and conclusions'

or 'a formulaic recitation of the elements of a cause of action will not do." *Id*. at 678 (quoting

*Twombly*, 550 U.S. at 555). While courts must take well-pleaded facts as true, "courts are not

bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at

555 (citation omitted). A plaintiff "must plead ***specific facts***, not mere conclusional allegations."

*Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (emphasis added).

    **A.**    **TTI fails to state a conspiracy claim because it does not allege Muddy Waters participated in an underlying tort for which TTI seeks to hold a named defendant liable.**

As noted, conspiracy is a vicarious liability theory, not an independent tort. *Agar Corp.*, 580 S.W.3d at 140. Civil conspiracy requires proof of five elements: (1) a combination of two or more persons; (2) seeking to accomplish an object or course of action; (3) who reach a meeting of the minds on that object or course of action; (4) an unlawful, overt act in pursuit of that object or course of action; and (5) resulting damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) ("*Parker*").

Additionally, Texas law does not recognize stand-alone civil conspiracy claims: at least one party must be sued who is alleged to have committed the underlying tort. *West Fork Advisors, LLC v. SunGard Consulting Services, LLC*, 437 S.W.3d 917, 920 (Tex. App. – Dallas 2014, pet. denied). A plaintiff must either (1) allege that the named defendant itself committed the underlying tort or (2) name as a defendant an alleged co-conspirator who committed the underlying tort. *Id*. The Texas Supreme Court has stated, in no uncertain terms, that a "defendant's liability for conspiracy depends on participating in some underlying tort *for which the plaintiff seeks to hold at least one of the named defendants liable*." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1991) (emphasis added).[4]

---

[4] *See also PrevMED v. MNM-1997, Inc.*, No. H-15-2856, 2017 WL 785656, *14 (S.D. Tex. Feb. 28, 2017) (liability for civil conspiracy "depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable"); *Four Bros. Boat Works v. Tesoro Petroleum Cos., Inc.*, 217 S.W.3d 653, 668 (Tex. App. – Houston [14th Dist. 2006, pet. denied) ("to prevail on a civil conspiracy claim, the plaintiff must show the defendant was liable for some underlying tort"); *AFE Oil & Gas, LLC v. Hess*, No. 05-07-01564-CV, 2009 WL 294828, at *4 (Tex. App. – Dallas Feb. 9, 2009, no pet.) ("If no defendant is liable for fraud, then no defendant can be liable for conspiracy to commit fraud.").

In *West Fork Advisors*, for example, West Fork alleged that SunGard conspired with two individuals to misappropriate its trade secrets and commit other torts. 437 S.W.3d at 920-21. West Fork failed to establish that SunGard itself committed those wrongs. *Id.* at 920. West Fork did not join either of SunGard's alleged co-conspirators "as defendants in this case so that their purported liability could be adjudged by the trial court." *Id.* at 921. Citing the Texas Supreme Court's requirement in *Tilton* that a plaintiff alleging conspiracy must seek "to hold at least one of the named defendants liable" for the underlying tort, the Court of Appeals held that West Fork's stand-alone conspiracy claim against SunGard failed as a matter of law. *Id. See also Tap Acquisition, Inc. v. Vianet Group, PLC*, No. 3:14-CV-3601-B, 2016 WL 8674576, at *7 (N.D. Tex. Oct. 14, 2016) (distinguishing *West Fork Advisers* because "there remains an underlying tort claim pending against a named defendant").

Likewise, in *Wingert v. DeVoll*, No. 03-09-00440-CV, 2010 WL 3271744 (Tex. App. – Austin Aug. 20, 2010, pet. denied), the plaintiff alleged a stand-alone conspiracy claim on purported "tortious interference with official duties" of a homeowner association officer. *Id.* at *7. Assuming such a tort existed, the Court of Appeals noted that the plaintiff had not sought to "hold any named defendant liable" for that alleged tort. *Id.* Quoting *Tilton*'s holding that a defendant's liability for conspiracy depends upon it "participating in some underlying tort *for which the plaintiff seeks to hold at least one of the named defendants liable*," the Court reversed and rendered a take-nothing judgment for the defendants. *Id.* at *7-8 (emphasis added by Court of Appeals).

TTI has not sued Muddy Waters for libel, libel *per se*, or disparagement. It cannot do so, because Muddy Waters did not publish the Report or supply its allegedly defamatory content, an essential element of those claims. *Roe v. Patterson*, 707 S.W.3d 94, 98 (Tex. 2025). Nor has TTI named Bonilla as a defendant in this case, so TTI does not "seek to hold at least one named

defendant liable" for the underlying alleged torts, as required by Texas law. *Tilton*, 925 S.W.2d at 681. TTI may complain that this requirement of Texas law is harsh or unfair, but this Court is bound to follow Texas Supreme Court precedent, and the rule in *Tilton* is clear: TTI's conspiracy claims cannot stand alone, with no alleged tortfeasor defendant. The Complaint therefore fails to state a claim and should be dismissed.

**B.      TTI also fails to state a conspiracy claim because it does not allege that Muddy Waters had a specific intent to libel or disparage it.**

TTI's conspiracy theory also fails because it does not allege the requisite ***specific intent*** and ***meeting of the minds***, *i.e.*, that Muddy Waters intended for TTI to be libeled and disparaged and agreed with Bonillo on that goal.

"Civil conspiracy requires specific intent." *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). There is no such thing as a "conspiracy to be negligent." *Id.* (citing *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995)). A civil conspiracy claim requires proof of the defendant's "***specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means.***" *Parker*, 514 S.W.3d at 222 (emphasis added). "[A]n actionable conspiracy exists ***only*** as to those parties who are ***aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement.***" *Parker*, 514 S.W.3d at 222 (emphasis added). Specifically, a "conspiracy to defame" theory requires alleging and proving a meeting of the minds ***to defame the plaintiff***. *Backes v. Misko*, 486 S.W.3d 7, 15 (Tex. App. – Dallas 2015, pet. denied) (conspiracy requires proving "a meeting of the minds between [defendants] to defame [plaintiff]"); *In re Lipsky*, 441 S.W.3d 530, 551 (Tex. App. – Fort Worth 2013, orig. proceeding) (conspiracy requires proving defendants "agreed on the objective to defame" plaintiff).

Despite having thoroughly deposed the alleged co-conspirators before filing this lawsuit,[5] TTI does **not** allege that Muddy Waters had the requisite specific intent to show a civil conspiracy and a meeting of the minds to libel or disparage TTI.  Rather, the Complaint alleges **only** that "Muddy Waters and Bonilla reached a meeting of the minds **on the goal of profiting from … short selling the stock of TTI, and/or of profiting from short selling … by releasing 'research reports.'**"  Comp. ¶¶ 95, 113, 130 (emphasis added).  TTI does **not** allege that Muddy Waters and Bonilla agreed to libel or disparage it, that the short-selling arrangement was illegal,[6] or that the parties agreed to any other course of illegal conduct.  While the Complaint is replete with pejorative descriptions of activist short selling, it does not even allege that **Bonilla** intended to publish false statements about TTI, let alone that **Muddy Waters** knew Bonilla held that intent, knew his report would be false, or knew that the Report was false when it was published.  *See* Comp. ¶¶ 1-11, 42-85.[7]

---

[5] TTI took the depositions of Bonilla, Block, and Brick in its Florida lawsuit.  Ex. 2 at 5-7.  All three were questioned about Muddy Waters' alleged involvement in researching, drafting, and publishing the Report, and all three confirmed it had no substantive involvement.  *Id*.  TTI was also told that any claims against Muddy Waters were time-barred, *id*., but it filed suit anyway.

[6] Without claiming that it engaged in any unlawful act, the Complaint tries to smear Muddy Waters by referencing a "looming regulator threat" over its "anonymous and sinister role" in "insidious balance sheet arrangements."  Comp. ¶ 35-37.  But TTI knows full well that the investigation resulted in no action being taken against Muddy Waters, because TTI's counsel in this lawsuit, Quinn Emanuel Urquart & Sullivan LLP, **represented Muddy Waters during those investigations**.  Those investigations involved detailed inquiries into Muddy Waters' business model, during which it disclosed highly confidential information to Quinn Emanuel.  Muddy Waters has not yet moved to disqualify Quinn Emanuel because the Court can dismiss TTI's lawsuit on the pleadings.  However, should the case proceed further, Muddy Waters reserves its right to challenge Quinn Emanuel's continued representation of TTI based on its prior representation of Muddy Waters.

[7] TTI does allege, in a **quadruple** alternative, that Muddy Waters knew the challenged statements "about TTI were false when Bonilla made them, **and/or** acted with reckless disregard **and/or** negligently as to the truth of the statements," "**and/or** intended to interfere in TTI's economic interest in an unprivileged fashion."  Comp. ¶¶ 101, 120, 134 (emphasis added).  The first alternative allegation – knowledge of falsity at the time of publication – is conclusory and thus insufficient under *Iqbal/Twombly*.  It is also directly contradicted by TTI's claim  that "no Muddy Waters employee even read the Jehoshaphat Report – or even asked for a copy of it – before it was

Indeed, the only *facts* TTI alleges about the Bonilla-Muddy Waters research agreement support the opposite inference:  Muddy Waters *contractually required* Bonilla to provide and publish only *truthful, complete, and non-misleading information*.  That contract provided:

> As of the date on which any information is provided to Muddy Waters and as of the date of any publication by either an affiliate of MCW or by the Researcher (or by an entity controlled by the Researcher), *the Researcher represents, warrants and covenants that*:
>
> (i)  *the information that the Researcher provided to Muddy Waters is true and correct*, and at each of the times set forth above, such information *did not contain any untrue statements of material fact nor* did such information *omit to state any material fact necessary to make that information*, in light of the circumstances, *not misleading*;
>
> (ii)  *the Researcher agrees that any information that the Researcher has provided to Muddy Waters is accurate and complete* and may be relied upon by Muddy Waters;
>
> (iii)  *to the extent the Researcher becomes aware of any additional information or an omission that would make the information provided untrue or misleading, the Researcher shall disclose such information or omission to Muddy Waters as soon as possible and without delay* … .

Comp. Ex. 1 ¶ 9 (emphasis added).  This is no evidence of Muddy Waters joining a "conspiracy to libel."  To the contrary; it shows that Muddy Waters *required* Bonilla to be truthful because taking a short position in TTI's stock exposed Muddy Waters to unlimited exposure, and the success of its investment depended on the market receiving Bonilla's report as credible.  *Cassava Sciences, Inc.*, 2024 WL 1347362, at *25.  TTI, therefore, fails to allege an essential element of conspiracy as to Muddy Waters:  the specific intent "to accomplish something unlawful or to accomplish something lawful by unlawful means."  *Parker*, 514 S.W.3d at 222.

TTI's failure (and inability) to allege that Muddy Waters knew the Report would be false

---

published."  Comp. ¶ 68.  None of the other alternatives, even putting aside their conclusory nature, would state a conspiracy claim.  When facts are pled in the alternative, and only one of those alternative states a claim while the others do not, the complaint fails to state a claim.  *E.g.*, *Thomas v. Kamtek, Inc.*, 143 F. Supp. 3d 1179, 1189 (N.D. Ala. 2015) ("Alternative pleading does not permit a plaintiff to make factual contradictions that conflict with legal conclusions on essential elements of the claim.").

and defamatory ***before it was published*** is also fatal, because conspiracy requires proof that the defendant knew of the "***intended harm or proposed wrongful conduct at the outset.***"  *Parker*, 514 S.W.3d at 22 (emphasis added).  TTI criticizes Muddy Waters for not fact-checking the Report before it was published and for shorting TTI's stock "based entirely on Bonilla's say-so," Comp. ¶¶ 61-69, but neither of those objections, nor TTI's conclusory claim that Muddy Waters had a "reckless disregard for and negligence towards" the report's accuracy, Comp. ¶ 70, allege the requisite ***specific intent*** to defame TTI.  The Complaint should therefore be dismissed for failing to allege facts supporting essential elements of civil conspiracy under Texas law.

## V.    Conclusion and prayer.

For these reasons, the Court should dismiss Plaintiff Techtronic Industries Company Limited's Complaint with prejudice, enter a final judgment that it take nothing against Defendants, and award Defendants such other and further relief to which they may be entitled.

Respectfully submitted,

*/s/ Peter D. Kennedy*

| | |
|---|---|
| David S. Korzenik | Peter D. Kennedy |
| (pro hac vice motion pending) | Texas Bar No. 11296650 |
| dkorzenik@mkslex.com | pkennedy@gdhm.com |
| Miller Korzenik Rayman LLP | James A. Hemphill |
| The Paramount Building | Texas Bar No. 00787674 |
| 1501 Broadway, Suite 2015 | Graves, Dougherty, Hearon & Moody, P.C. |
| New York, NY 10036 | 401 Congress Avenue, Suite 2700 |
| (212) 752-9200 (Phone) | Austin, Texas 78701 |
| (212) 688-3996 (Fax) | (512) 480-5764 (Phone) |
| | (512) 536-9908 (Fax) |

**Counsel for Defendants**

Defendants' Motion to Dismiss – Page 20

**Certificate of Service**

On April 22, 2025, I caused a copy of this document to be served by the Electronic Case

Filing System as shown below.

Asher B. Griffin
Quinn Emanual Urquart & Sullivan LLP
300 West 6th Street, 2010
Austin, Texas 78701

Jason Sternberg
Laura N. Ferguson
Quinn Emanual Urquart & Sullivan LLP
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133

Kristin Tahler
Quinn Emanual Urquart & Sullivan LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

Nichoals Inns
Quinn Emanual Urquart & Sullivan LLP
1300 I Street, NW, Suite 900
Washington, D.C. 2005

*/s/ Peter D. Kennedy*
Peter D. Kennedy