UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TECHTRONIC INDUSTRIES COMPANY LIMITED, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 1:25-cv-00249-DAE |
| MUDDY WATERS CAPITAL LLC and MW DOMINO MANAGEMENT LLC, | § § § | |
| Defendants. | § § | |

**DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

TO THE HONORABLE DAVID A. EZRA:

Muddy Waters Capital LLC and MW Domino Management LLC (collectively, "Muddy Waters") move to dismiss all claims alleged in Plaintiff's Amended Complaint (ECF 39).

## I.    Introduction and summary.

Plaintiff Techtronic Industries Company Limited ("TTI") claims it was defamed by a financial researcher, Victor Bonilla, and that Muddy Waters "conspired" with him. This Court dismissed TTI's Original Complaint for failing to allege facts to support its claim of civil conspiracy against Muddy Waters, specifically that it intended to libel or defame TTI, an essential element of its claims. TTI's Amended Complaint fails to cure this fatal defect. Nor has TTI alleged facts to support its new, alternative "partnership" and "agency" vicarious liability theories. Further, the claims underlying TTI's Original Complaint have been dismissed on the merits in the Florida lawsuit TTI filed against Bonilla because Bonilla's February 2023 short-seller report is factually true and protected opinion, and thus not actionable as a matter of law.

TTI attempts to salvage this lawsuit by adding conspiracy claims based on Bonilla's

publication in June 2023 of a second short-seller report that was not mentioned in its Original Complaint. These new claims fail as a matter of law because they are time-barred, having been filed far more than a year after the date TTI claims it learned of Bonilla and Muddy Waters' relationship. These claims also fail because TTI is unable to allege facts showing that Muddy Waters intended to libel or disparage TTI or is otherwise vicariously liable for Bonilla's reports.

## II.    The parties.

TTI is a Chinese company traded on the Hong Kong stock exchange. ECF 39 ¶ 13. TTI manufactures and sells power tools, power equipment, hand tools, and vacuum cleaners. *Id*. ¶ 19. It claims an annual revenue of over $13 billion and a market capitalization of $20 billion. *Id*. ¶ 21.

Muddy Waters is owned by Austin, Texas, resident Carson Block. ECF 39 ¶¶ 14-15. Muddy Waters is "among the most prominent activist short seller firms today." *Id*. ¶ 28.

"Short sellers" borrow shares from a broker for a fee and agree to return the same number of shares to the broker at a later time. *See Wu v. GSX Techedu Inc.*, 738 F. Supp. 3d 527, 550 fn. 24 (D.N.J. 2024). The short seller then sells the borrowed stock, betting that its price will decline before the short seller has to buy replacement shares. *Id*. The short seller profits if the stock price declines enough to cover the broker fee and the cost of the replacement shares. *Id*. If the price rises, the short seller's exposure is potentially unlimited. *Sharett v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 70 (S.D.N.Y. 2015). "Activist" short sellers investigate publicly traded companies, and if they conclude a company's stock is overvalued, they may take a short position stock and publish a report explaining why. *See In re Genius Brands Int'l, Inc. Securities Litigation*, 97 F.4th 1171, 1178 fn. 3 (9th Cir. 2024). Reports by Muddy Waters and others have led to delistings, criminal investigations, indictments, and convictions, and are routinely cited by federal courts, including this Court, as supporting the adequacy of securities class action pleadings. *See, e.g., Schneider v.*

*Natera, Inc.*, No. 1:22-CV-398-DAE, 2023 WL 9958265, at *9 (W.D. Tex. Sept. 11, 2023); *In re Cassava Sciences, Inc. Securities Litigation*, No. 1:21-CV-751-DAE, 2023 WL 3442087, at *8 (W.D. Tex. May 11, 2023).[1]  The substantial risk inherent in short selling itself signals confidence in the accuracy of these reports because, "by shorting the stock, [they] put their money behind their belief that the stock is overvalued," *Cassava Sciences, Inc. v. Bredt*, No. 1:22-CV-9409, 2024 WL 1347362, at *25 (S.D.N.Y. March 28, 2024).

Non-party Victor Bonilla publishes short-seller reports as Jehoshaphat Research.  ECF 39 ¶ 45.  His work has been cited by a federal court when ruling that a securities fraud claim had been adequately pled.  *Del. County Employees Retirement Sys. v. AdaptHealth Corp.*, 606 F. Supp. 3d 124, 134 (E.D. Pa. 2022).  That lawsuit resulted in a class-action settlement valued at $60 million. *Del. County Employees Retirement Sys. v. AdaptHealth Corp.*, 739 F. Supp. 3d 270 (E.D. Pa. 2024).

In 2023, Bonilla and Muddy Waters entered into a standard research agreement embodied in a written contract.  ECF 39 ¶ 43 & Ex. 1.  The parties agreed that Bonilla would research companies and, if he decided to publish a report, he would give Muddy Waters prior notice.  *Id*. Ex. 1 at 7-8.  If Muddy Waters decided to take a short position in the company, and if Bonilla decided to publish his report, Muddy Waters would pay Bonilla a percentage of its resulting profits, if any.  *Id*. Ex. 1 at 1-2.  Bonilla retained sole discretion on what companies to research, and Muddy

---

[1] *See also Saskatchewan Healthcare Employee's Pension Plan v. KE Holdings Inc.*, 718 F. Supp. 3d 344, 360-65, 374-75 (S.D.N.Y. 2024) (Muddy Waters report satisfied heightened securities fraud pleading standard); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 115-16, 123-24 (S.D.N.Y. 2013) (Muddy Waters report supported denial of motion to dismiss securities fraud claim, noting that "majority of courts" have held that short-seller reports do not implicate the skepticism of traditional anonymous sources); *Henning v. Orient Paper, Inc.*, No. CV 10-5887, 2011 WL 2909322, at *2, 6-7 (C.D. Cal. July 20, 2011) (Muddy Waters reports supported securities fraud allegations and loss causation theory); *Burford Capital Ltd. v. London Stock Exchange Group pcl*. [2020] EWHC 1183 (rejecting claim that Muddy Watters report describing misleading accounting was market manipulation); UK Financial Conduct Authority, Final Notice (August 30, 2023) (censuring NMC Health PLC for fraud, citing Muddy Waters report).

Waters had no right to control his research or decision to publish.  *Id*. Ex. 1 at 2, 11.  Conversely, Bonilla had no right to control Muddy Waters' investment decisions.  *Id.*

Bonilla published a report on February 23, 2023, analyzing TTI's publicly filed financial statements.  ECF 39 ¶ 47 & Ex. 2.  Muddy Waters went short on TTI before it was published.  *Id*. ¶ 60.  Bonilla concluded that TTI used accounting practices that overstated its profits and understated its expenses, resulting in an inflated stock price.  ECF 39 Ex. 2.  Bonilla compared TTI's accounting practices to its peers and predicted that TTI's methods would eventually require it to recognize large, delayed expenses, and concluded that TTI's stock faced a large downside risk.  *Id*.  Following publication, TTI's stock declined.  *Id*. ¶ 80.  Although TTI alleges Bonilla's criticisms were "false," it does not deny that it used the challenged accounting practices.  *Id*. ¶ 55.

TTI sued Bonilla in the Middle District of Florida on August 3, 2023, alleging that Bonilla had worked with "unidentified co-conspirators."  *See Techtronic v. Bonilla*, No. 8:23-cv-01734, ECF 1 ¶¶ 9, 32, 104, 118.  TTI deposed Carson Block and another Muddy Waters executive in that case before filing this one.  TTI's claims based on Bonilla's February 2023 report have been dismissed on summary judgment in that case, as explained in more detail below.

## III.    The differences between TTI's Original and Amended Complaints.

### A.    TTI's claims based on Bonilla's February 22, 2023, short-seller report.

TTI's Original Complaint attempted to allege "conspiracy to libel" and "conspiracy to disparage" claims against Muddy Waters based on Bonilla's February 2023 report.  ECF 1 ¶¶ 94-141.  On Muddy Waters' motion to dismiss, this Court held that TTI failed to allege facts showing that Muddy Waters had the specific intent to libel or disparage TTI, as required.  ECF 38 at 20-21.  This Court recognized that, under Texas law, an "actionable civil conspiracy requires *specific intent to agree to accomplish something unlawful* or to *accomplish something lawful by unlawful means*."

*Id*. at 20 (quoting *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017)) (emphasis added by Court).  A "conspiracy" to libel or defame requires a specific intent to publish something *false* and therefore *unlawful*, not just something negative.  *Parker*, 514 S.W.3d at 222.  This Court held that the agreement between Bonilla and Muddy Waters did not support an inference that Muddy Waters agreed to act unlawfully or to employ unlawful means, and therefore TTI did not "meet the test in *Parker* to adequately allege Defendant's specific intent to libel or disparage" TTI.  ECF 38 at 21.

As explained below, TTI's Amended Complaint fails to cure this pleading defect.  Its allegations remain conclusory and fail to show Muddy Waters intended that any false information about TTI be published.  The facts pled, indeed, show that Muddy Waters contractually required Bonilla to publish only truthful statements.  Recognizing this inadequacy, TTI tries new vicarious liability theories – "partnership" and "agency" – but fails to plead facts to support them, as well.

### B.    TTI's new claims based on Bonilla's June 2023 short-seller report.

TTI's Amended Complaint alleges new conspiracy claims based on a separate report that Bonilla published on June 5, 2023 (the "Second Report").  ECF 39 ¶¶ 197-244.  While Bonilla's February 2023 report (the "First Report") discussed TTI's financial statements, his Second Report discussed how TTI handled its tool inventory and its contract with Home Depot.  *Id*. ¶¶ 96-97.  TTI claims Bonilla's Second Report included false information about how it sold inventory labeled "blemished" and its compliance with its Home Depot contract.  *Id*. ¶¶ 100-01.

TTI filed this case more than a year and a half after Bonilla published the Second Report, and more than eight months after TTI claims it first learned about the Bonilla-Muddy Waters contract.  Yet the Second Report went unmentioned until TTI filed its Amended Complaint on January 8, 2026.  That unexplained delay bars TTI's new claims.

IV.     **The Amended Complaint fails to state a claim on which relief may be granted.**

A.     **TTI's claims based on the Second Report are time-barred.**

A claim may be dismissed under Rule 12(b)(6) "if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Dismissal on limitations is required "where it is evident from the plaintiff's pleadings that the action is barred, and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). In diversity cases, federal courts apply state statutes of limitations. *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989). In Texas diversity cases, Texas limitations law applies, regardless of which law governs the substantive claim. *In re BP p.l.c. Securities Litigation*, 51 F. Supp. 3d 693, 697 (S.D. Tex. 2014); *Aubrey v. D Magazine Partners, LP*, No. 3:19-CV-0056-B, 2020 WL 1479025, at *12 (N.D. Tex. March 26, 2020).

Like its claims based on the First Report, TTI labels its claims based on the Second Report "conspiracy" to commit libel, libel *per se* and disparage. ECF 39 ¶¶ 197, 215, 232. The limitations period for libel and libel *per se* claims is one year. Tex. Civ. Prac. & Rem. Code § 16.002(a) (libel); *Velocity Databank, Inc. v. Shell Offshore, Inc.*, 456 S.W.3d 605, 608 (Tex. App. – Houston [1st Dist.] 2014, pet. denied) (libel *per se*). Civil conspiracy "does not have its own statute of limitations." *Agar Corp., Inc. v. Electron. Circuits International, LLC*, 580 S.W.3d 136, 140-42 (Tex. 2019). Instead, civil conspiracy claims share the limitations period of the alleged underlying tort and are time-barred unless that tort "is itself not barred by limitations." *Id*. at 143-44.

Libel claims accrue "when the allegedly defamatory matter is published or circulated." *Glassdoor, Inc. v. Andra Group, LP*, 575 S.W.3d 523, 529 (Tex. 2019). Texas applies the "single publication rule," so libel claims accrue when a challenged statement is first published, even if the statement remains publicly available. *Id*. at 528-29. Libel claims accrue even if the identity of the

speaker is unknown. *Id*. at 530. Separate statements, even if published by the same party, have separate limitations periods. *E.g.*, *Carlson v. Trans Union, LLC*, No. 3:02-CV-2654-H, 2003 WL 21750706, at *2 (N.D. Tex. July 22, 2003).

Limitations on TTI's Second Report conspiracy to libel and libel *per se* claims began to run on the publication date, June 5, 2023, and expired a year later, unless tolled.[2] TTI claims that it did not learn of the alleged "meeting of the minds" between Bonilla and Muddy Waters until June 30, 2024. ECF 39 ¶ 145. Assuming limitations were tolled until then, TTI's conspiracy to libel and libel *per se* claims expired July 1, 2025, six months *before* TTI filed its Amended Complaint. ECF 39. These claims are time-barred and should be dismissed with prejudice. *E.g.*, *Walker v. Beaumont ISD*, 938 F.3d 724, 742-43 (5th Cir. 2019) (dismissing time-barred claims on the pleadings).

TTI's new "conspiracy to disparage" claim is likewise time-barred. A plaintiff "cannot avoid the one-year statute of limitations applicable to defamation claims by simply alleging additional causes of action that are subject to a two year-statute of limitations." *Hamad v. Center for Jewish Community Studies*, 265 Fed. App'x 414, 417 (5th Cir. 2008) (applying libel one-year limitation period to business disparagement claim); *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 370 (Tex. 2014) (one-year statute of limitations bars tortious interference claims "based solely on defamatory statements"). Although the default limitations period for business disparagement

---

[2] No Texas case has held that limitations on a defamation claim are tolled past the date when the challenged statement became publicly available, even when the publishers' identities were unknown. This Court's ruling that limitations were tolled until TTI learned of Muddy Waters' relationship with Bonilla is therefore unique. *See Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 342, 344 (Tex. 1992) ("limitations begin to run when the fact of the injury is known, not when the alleged wrongdoers are identified"); *Petrosurance Cas. Co. v. Threadneedle Ins. Co., Ltd.*, 129 F.3d 608, at *7 (5th Cir. 1997) ("the limitations period commences when the wrongful act effects an injury, not when the alleged wrongdoers are identified"). But, as noted, even if equitable tolling applies to TTI's claims based on the Second Report, they are time-barred.

claims is two years, when the gravamen of a claim, as here, "'is injury to a plaintiff's reputation because of defamatory statements,' the applicable statute of limitations is one year." *Van Dyke v. Retzlaff*, No. 4:18-CV-247, 2020 WL 6557715, at *3 (N.D. Tex. Nov. 9, 2020) (quoting *Walker*, 938 F.3d at 742). *See also Hamad*, 265 Fed. App'x at 417 (applying one-year limitation period to business disparagement claim).

Libel and slander (collectively "defamation") are false statements that harm a person or business's **reputation**, while business disparagement is narrower, encompassing only "falsehoods concerning the **condition or quality of a business's products or services** that are intended to, and do in fact, cause financial harm." *Innovative Block of South Texas, Inc. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020). The torts of defamation and business disparagement are distinguished by "the nature of the alleged falsehoods." *Id.* at 418. The Texas Supreme Court follows Section 629 of the Second Restatement of Torts, which defines a "disparaging" statement as one that "is understood to cast doubt upon the quality of another's land, chattels or intangible things, or upon the existent or extent of his property in them … ." *Id.* at 417 (citing Restatement (Second) of Torts § 629).[3] This Court has (as it must) applied the Texas Supreme Court's definition of disparagement. *AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 398 (W.D. Tex. 2023) (business disparagement encompasses "falsehoods concerning the condition or quality of a business's

---

[3] *See also Texas Tribune, Inc. v. MRG Medical LLC*, No. 03-23-00293-CV, 2024 WL 2305265, at *5 (Tex. App. – Austin May 22, 2024, pet. denied) (distinction between defamation and business disparagement turns on "whether the falsehood affects the plaintiff's reputation or the marketability of the plaintiff's good[s] and services"); *Double Diamond, Inc. v. Saturn*, 339 S.W.3d 337, 348 (Tex. App. – Dallas 2011, pet. denied) (using Restatement § 629 definition of "disparaging" in business defamation jury charge); *Smith v. Textile Rental Servs. Ass'n*, No. 3:20-CV-3178-B, 2021 WL 3566678, at *7 (N.D. Tex. Aug. 12, 2021) ("business disparagement encompasses falsehoods concerning the condition or quality of a business's products or services," quoting *Innovative Block*); *Broughton v. Livingston ISD*, No. 9:08-CV–175, 2010 WL 3056862, at *10 (E.D. Tex. July 29, 2010) (quoting Restatement § 629 definition of "disparaging").

products or services," citing *Innovative Block*).[4]

A false statement about the quality of a manufacturer's concrete blocks is business disparagement. *Innovative Block*, 603 S.W.3d at 420. A false statement about how much noise a business makes is defamation, because the statement is not about the plaintiff's products or services. *Amini v. Spicewood Animal Hospital, LLC*, No. 03-18-00272-CV, 2019 WL 5793115, at *9 (Tex. App. – Austin Nov. 7, 2019, no pet.). *See also Kinect Solar, LLC v. Panasonic Corp. of N. America*, No. 1:20-CV-378-LY, 2020 WL 6385292, at *4 (W.D. Tex. 2020) (misleading statement that a competitor's products were not covered by warranty was a business disparagement claim), *adopted*, 2020 WL 10054586 (W.D. Tex. Nov. 17, 2020).

TTI's "Conspiracy to Disparage" claim is based on the same statements as its conspiracy to libel claims. ECF 39 ¶¶ 232-44. TTI claims those statements harmed TTI's business and business reputation; it does not (and cannot) allege that Bonilla disparaged its products. *Id*. Indeed, the Second Report stated that TTI was selling brand-new tools marked as blemished, so it reported that TTI's tools were in *better* condition than advertised. *See* ECF 39 ¶ 97. Therefore, TTI's "Conspiracy to Disparage" claim is not based on an underlying ***business disparagement*** claim, but rather a ***defamation*** claim subject to Texas's one-year statute of limitations, and this is time-barred. *See Walker*, 938 F.3d at 742 (applying one-year limitations period to business disparagement claim); *Van Dyke*, 2020 WL 6557715, at *2-3 (dismissing claim labeled "business disparagement" under one-year limitation period for libel); *Hamad*, 265 Fed. App'x at 417 (same).

---

[4] This distinction is long-established. In *Gulf Atlantic Ins. Co. v. Hurlbut*, the Dallas Court of Appeals applied the one-year limitations period to a claim labeled "business disparagement" complaining of statements that did not disparage "the quality of what the plaintiff has to sell." 696 S.W.2d 83, 96 (Tex. App. – Dallas, 1985), *rev'd on other grounds*, 749 S.W.2d 762 (Tex. 1987). While reversing on other grounds, the Supreme Court expressly approved the Court of Appeals' holding that the plaintiff's disparagement claim was "in essence a claim for slander" and "barred by the one year statute of limitations." 749 S.W.2d at 766.

**B.      TTI again fails to state a claim for relief based on the First Report.**

Bonilla's First Report was the sole basis for TTI's Original Complaint.  ECF 1.  Its Amended Complaint asserts the same causes of action based on that report:  conspiracy to libel, to libel *per* se, and to disparage.  ECF 39 ¶¶ 149-96.  Although time-barred on their face, this Court has held that, based on TTI's assertion of equitable tolling, there are fact issues precluding dismissal of these claims based on limitations.  ECF 38 at 14-16.  But even before this Court issued that ruling, Bonilla's First Report was held to be non-actionable, as a matter of law, by a federal court in Florida.  TTI has reasserted those claims in its Amended Complaint.  They should be dismissed with prejudice for the same reason they were dismissed in Florida.

TTI's Florida lawsuit against Bonilla asserted claims against him for libel, libel *per se*, and disparagement based on both his First and Second Reports.  *See* ECF 39 ¶ 142.  After extensive discovery, including deposing Bonilla and two Muddy Waters witnesses, the court held that the First Report is a combination of factually accurate statements about TTI's financial statements and constitutionally protected expressions of Bonilla's opinions based on those facts.  *Techtronic Industries Co. Ltd. v. Bonilla*, No 8:23-cv-1734, 2025 WL 2687164 (M.D. Fla. Sept. 19, 2025) ("*TTI*").  TTI made the same complaints about the First Report in that case as he makes here, and the Florida court rejected them in a carefully reasoned opinion.

At the outset, the court noted Bonilla's careful disclaimer of his status as a self-interested activist short seller, and held that Bonilla's statements that TTI was "inflating its profits" with "manipulative accounting" and "accounting games" and that TTI's balance sheet had become "a vast toxic graveyard" were nonactionable opinions and colorful rhetoric.  *TTI*, 2025 WL 2687164, at *8.  It then rejected each of TTI's claims that the First Report contained false statements of fact.

First, the court rejected TTI's claim that Bonilla falsely reported that TTI had

overcapitalized development costs, and thus overstated its income.  *TTI*, 2025 WL 2687164, at *8. TTI admitted that Hong Kong accounting standards permitted it to capitalize development costs, which increased its reported profits, and did not challenge Bonilla's statement of *facts*, merely disagreeing with "the conclusions Bonilla drew from those facts, i.e., that TTI deferred too much in development costs," which the court held was Bonilla's opinion and thus not actionable.  *Id*.

Second, the Court rejected TTI's claim that Bonilla falsely stated that it "stuffed nonsense" into its financial statements' PP&E numbers on its balance sheet because "TTI does not dispute that it has large depreciation of PP&E on its balance sheet" and because "[s]tuffed nonsense is certainly nonactionable hyperbole."  *TTI*, 2025 WL 2687164, at *9.

Third, the Court rejected TTI's assertion that Bonilla's criticism that TTI's balance sheets treated past-due accounts receivable as "money good" was actionable, because the fact that "TTI is carrying some stale debt (over 90 days) is factually accurate," and "Bonilla's statements as to what that means for TTI is pure opinion."  *TTI*, 2025 WL 2687164, at *9.

Next, the court rejected TTI's challenge to Bonilla's claim "that TTI was overproducing inventory to increase profits," because TTI admitted that "its inventory numbers were reported correctly," and that even if TTI "disagrees with Bonilla's speculation as to the reason the large amount of inventory is carried on TTI's books, such opinions are nonactionable."  *TTI*, 2025 WL 2687164, at *10.

Finally, the court rejected TTI's complaints about Bonilla's statements about prepayments and deposits included on its financial statement because, again, TTI could not challenge the accuracy of the reported numbers because "the underlying facts [were] pulled from the financial statements," and because "Bonilla's opinions regarding the facts" are not actionable.  *TTI*, 2025 WL 2687164, at *10.  Summarizing its holdings, the Court explained:

At bottom, TTI does not dispute much of the underlying data in the First Report. Instead, TTI challenges the opinions and conclusions Bonilla reaches based on the data. As stated recently by the Southern District of New York in the *Grifols v. Yu* opinion, the challenged statements "must be considered in the context of a Report that has the purpose of financial commentary and analysis from a party with a disclosed interest, not factual reporting, and that is aimed at conveying this interested party's particular viewpoint or perspective on [the plaintiff company] based on publicly available financial data."

*Id*. (quoting *Grifols v. Yu*, No. 24-CV-576, 2025 WL 1531713, at *13 (S.D.N.Y. May 29, 2025)).

The legal principles applied by the Florida court are no different in Texas. Defamation and disparagement claims must be based on statements of verifiable fact. *E.g.*, *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018). Opinions are not actionable, especially opinions based on disclosed facts, such as Bonilla's evaluation and critiques of TTI's publicly available financial statements. *Id*. While TTI claims it plans to appeal the dismissal of its First Report claims in Florida, it had a full and fair opportunity to pursue those claims and failed. This Court should not give TTI a second bite at the apple.

### C.    TTI's Amended Complaint still does not allege facts showing Muddy Waters' vicarious liability for Bonilla's publications.

The Court dismissed TTI's Original Complaint because TTI failed to plead facts showing Muddy Waters had the specific intent to defame it. ECF 38 at 21. The Amended Complaint does not cure that defect. Instead, TTI again relies on its deficient conspiracy theory and tries to relabel Muddy Waters' research agreement with Bonilla a "partnership," "joint venture," or "agency," conclusory labels that are contradicted by the agreement itself and Texas law.

### 1.    TTI's conspiracy allegations remain insufficient under Texas law.

A complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). The plaintiff must allege "factual content that allows the court to draw the reasonable inference that the [moving] defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

677-78 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678. "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A plaintiff "must plead ***specific facts***, not mere conclusional allegations." *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (emphasis added).

"Civil conspiracy requires specific intent." *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). There is no such thing as a "conspiracy to be negligent." *Id.* Civil conspiracy requires proof of the defendant's "***specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means***." *Parker*, 514 S.W.3d at 222 (emphasis added). "[A]n actionable conspiracy exists only as to those parties who are ***aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement***." *Id.* (emphasis added). Specifically, a "conspiracy to defame" theory requires a meeting of the minds and agreement ***to defame the plaintiff***. *Backes v. Misko*, 486 S.W.3d 7, 15 (Tex. App. – Dallas 2015, pet. denied); *In re Lipsky*, 441 S.W.3d 530, 551 (Tex. App. – Fort Worth 2013, orig. proceeding).

Despite having deposed the alleged co-conspirators before filing this lawsuit, and being granted the right to re-plead, TTI still does not allege facts showing that Muddy Waters had the requisite specific intent and meeting of the minds to act unlawfully. The Amended Complaint alleges ***only*** "a meeting of the minds on the goal of shorting the stock of TTI by publishing and promoting" Bonilla's reports, ECF 39 ¶¶ 150, 168, 185, and that Muddy Waters "knew" the Second Report was false because it allegedly received information that conflicted with Bonilla's conclusions. ECF 39 ¶¶ 120-22. But Texas law is clear that receiving conflicting information does not establish knowledge of falsity or intent to defame. *Huckabee v. Time Warner Entm't Co. L.P.*,

19 S.W.3d 413, 427 (Tex. 2000) (mere fact that defamation defendant has heard "an alternative explanation of events is not evidence that the defendant doubted the allegations," let alone knew a statement was false).  The Amended Complaint's own allegations foreclose any such inference. TTI alleges that "no Muddy Waters employee even read the Second Report … before it was published." *Id.* ¶ 128.  A defendant cannot plausibly be alleged to have knowingly agreed to publish false statements in a report it did not read.  Accordingly, while the Amended Complaint is replete with pejorative descriptions of activist short selling,[5] it still does not allege, as it must, facts showing that Muddy Waters knew either the First or Second Report were false when published.[6]

Indeed, the ***facts*** TTI alleges show that Muddy Waters ***contractually required*** Bonilla to publish only ***truthful, complete, and non-misleading information***:

As of the date on which any information is provided to Muddy Waters and as of the date of any publication by either an affiliate of MCW or by the Researcher (or by an entity controlled by the Researcher), ***the Researcher represents, warrants and covenants that***:

(i)     ***the information that the Researcher provided to Muddy Waters is true and correct***, and at each of the times set forth above, such information ***did not contain any untrue statements of material fact nor*** did such information ***omit to state any material fact necessary to make that information***, in light of the circumstances,

---

[5]  The Amended Complaint again tries to smear Muddy Waters by referencing a "looming regulator threat" over its "sinister role" in "insidious balance sheet arrangements."  ECF 39 ¶ 42.  But TTI knows that the investigation resulted in no action against Muddy Waters because TTI's counsel in this lawsuit, Quinn Emmanuel Urquart & Sullivan LLP, represented Muddy Waters during those investigations, during which it disclosed highly confidential information to Quinn Emmanuel. Muddy Waters reserves its right to challenge Quinn Emmanuel's continued representation of TTI based on its prior representation of Muddy Waters.

[6]  TTI does allege, in a **quadruple** alternative, that Muddy Waters knew statements "about TTI were false when Bonilla made them, **and/or** acted with reckless disregard **and/or** negligently as to the truth of those statements," "**and/or** intended to interfere in TTI's economic interest in an unprivileged fashion."  ECF 39 ¶¶ 156, 175, 189.  The first alternative allegation is conclusory and insufficient under *Iqbal/Twombly*.  The other alternatives do not state a conspiracy claim, even putting aside their conclusory nature and the Florida court's ruling that the First Report contained no false facts.  When facts are pled in the alternative, and only one states a claim, the complaint fails to state a claim.  *E.g.*, *Thomas v. Kamtek, Inc.*, 143 F. Supp. 3d 1179, 1189 (N.D. Ala. 2015) ("Alternative pleading does not permit a plaintiff to make factual contradictions that conflict with legal conclusions on essential elements of the claim.").

> *not misleading*;
>
> (ii) ***the Researcher agrees that any information that the Researcher has provided to Muddy Waters is accurate and complete*** and may be relied upon by Muddy Waters;
>
> (iii) ***to the extent the Researcher becomes aware of any additional information or an omission that would make the information provided untrue or misleading, the Researcher shall disclose such information or omission to Muddy Waters as soon as possible and without delay*** … .

ECF 39 Ex. 1 ¶ 9(h) (emphasis added).  A contract that requires truthfulness cannot plausibly support an inference that the parties agreed to commit libel or disparagement.  To the contrary, it shows that Muddy Waters ***required*** Bonilla to be truthful because by taking a short position in TTI's stock, Muddy Waters risked unlimited exposure, and the success of its investment depended on the market receiving Bonilla's reports as credible.  *Cassava Sciences, Inc.*, 2024 WL 1347362, at *25.  The Amended Complaint still fails to allege an essential element of conspiracy, the specific intent "to accomplish something unlawful or to accomplish something lawful by unlawful means." *Parker*, 514 S.W.3d at 222.

The Amended Complaint also fails because conspiracy requires proof that the defendant knew of the "intended harm or proposed wrongful conduct ***at the outset***."  *Parker*, 514 S.W.3d at 22 (emphasis added).  The Amended Complaint does not allege facts showing that Muddy Waters intended, at the time it contracted with Bonilla, that he publish false and defamatory facts about TTI.  These omissions preclude TTI's conspiracy theory.[7]

Unable to plead facts showing conspiracy, TTI tries to allege vicarious liability by recharacterizing Muddy Waters and Bonilla's relationship as a "partnership" or "agency," but TTI

---

[7] Muddy Waters continues to believe that Texas civil conspiracy law requires naming, in the same suit, the underlying tortfeasor as defendant.  *See* ECF 2 at 15-17.  Muddy Waters maintains that the Amended Complaint fails to satisfy this requirement in addition to independently failing to plead the specific intent required under *Parker*.

fails to allege facts necessary to those relationships, as well.

### 2.    TTI's partnership/joint-venture allegations are insufficient.

TTI now tries to allege vicarious liability through "Partnership/Joint Venture."  ECF 39 ¶¶ 245-56.  Joint venture is a species of partnership and is analyzed under the same framework. *Ingram v. Deere*, 288 S.W.3d 886, 894 (Tex. 2009).  The Business Organizations Code defines partnership in Texas as "an association of two or more persons to carry on a business for profit as owners." Tex. Bus. Orgs. Code § 152.051(b).  These factors indicate whether a partnership has been created:  "(1)  receipt or right to receive a share of profits in the business; (2) expression of an intent to become partners in the business; (3) participation or right to participate in control of the business; (4) agreement to share or sharing: (A) losses of the business; or (B) liability for claims by third parties against the business; and (5) agreement to contribute or contributing money or property to the business."  *Id.* § 152.052(a).  Whether a partnership exists is determined by examining the totality of the circumstances.  *Peykoff v. Cawley*, No. 24-10186, 2025 WL 1380070, at *5 (5th Cir. May 13, 2025).

A complaint alleging partnership requires factual allegations beyond reciting the statutory partnership factors to state a plausible claim.  In *Peykoff*, the Fifth Circuit recently affirmed dismissal of an amended complaint with prejudice because the plaintiffs' allegations that parties agreed to share profits and jointly participate in control did "little more than repeat the partnership formation factors."  2025 WL 1380070, at *3-5.  *See also Bodine v. First Co.*, No. 3:20-CV-3116-BT, 2021 WL 5505562, at *6 (N.D. Tex. Nov. 24, 2021) (dismissing complaint where plaintiffs "failed to plead any single factor used to determine whether partnerships exist").

TTI's Amended Complaint suffers the same defect:  it alleges that Muddy Waters "partnered with" Bonilla, ECF 39 ¶ 1, but does not (and cannot) plead concrete facts showing that

they carried on a joint business "as owners," expressed an intent to be partners, exercised mutual control over a shared enterprise, shared the risks and liabilities of ownership, or jointly contributed money or property, as explained below.

### a. No expression of intent to be partners (§ 152.052(a)(2)).

Texas partnership formation law looks to objective manifestations of intent to be partners, including the parties' writings. *Ingram*, 288 S.W.3d at 899. Muddy Waters and Bonilla's agreement expressly disclaims any such intent: "Nothing in this Agreement shall be construed to create a relationship of partnership, joint venture, or agency between Muddy Waters and the Researcher." ECF 39 Ex. 1 ¶ 16. TTI pleads no facts showing an intent to form a partnership. TTI cannot overcome an express disclaimer by pleading conclusory labels. *E.g.*, *Qatalys, Inc. v. Mountain Medical Technologies, Inc.*, No. 3:14-CV-1784-L, at *5 (N.D. Tex. Mar. 27, 2015).

### b. No mutual right of control (§ 152.052(a)(3)).

Muddy Waters and Bonilla's agreement states that Muddy Waters "will not in any way direct, guide, or control, either directly or indirectly, the contents, methodology or conclusions" of Bonilla's work and that "[a]ll decisions" on those topics "shall be solely those of the Researcher." ECF 39 Ex. 1 ¶ 16. Publication remains Bonilla's decision "in [his] sole discretion." ECF 39 Ex. 1 ¶ 1(d). TTI alleges no facts showing that Muddy Waters controlled Bonilla's authorship, research methodology, or decision to publish. ECF 39 ¶¶ 150-51, 198. TTI's cites Bonilla's audit and reporting rights, *id.* ¶¶ 52, 249, but such rights are common in contracts. "The right to control a business is the right to make executive decisions." *Ingram*, 288 S.W.3d at 901. Access to information and post hoc financial review are not control over the operation or management of a business. *Eagle TX I SPE, L.L.C. v. Sharif & Munir Enterprises, Inc.*, 602 Fed. App'x 576, 583 (5th Cir. 2015) (no partnership where access and audit rights did not confer "the right to make

executive decisions"). Likewise, Muddy Waters retained sole authority to decide whether to take a short position on any company Bonilla researched. ECF 39 Ex. 1 ¶ 1(c).

### c.  Profit sharing (§ 152.052(a)(1)) is not dispositive.

While the agreement provided for profit-sharing *if* Muddy Waters took a short position in a company that Bonilla researched and *if* that position was profitable, sharing profits "by itself, does not indicate" partnership. Tex. Bus. Orgs. Code § 152.052(b)(1)(B); *see Liserio v. Colt Oilfield Services, LLC*, 2022 WL 16542585, at *4 (W.D. Tex. Oct. 28, 2022) (no partnership despite profit sharing where plaintiff received distributions through payroll or Form 1099 and never received a K-1). If sharing contingent profits was enough, every contingent-fee attorney would become "partners" with their clients. That is not Texas law.

### d.  No loss or liability sharing (§ 152.052(a)(4)).

Here, the agreement is again explicit: "under no circumstances shall Researcher be liable … for any Net Loss incurred by the Fund or MW Domino or its affiliates." ECF 39 Ex. 1 ¶ 2(b). A relationship where only one party bears the risk of trading losses is inconsistent with "carry[ing] on a business for profit as owners." Tex. Bus. Orgs. Code § 152.051(b). While an agreement to share losses is not required, Texas courts still consider whether the parties share downside risk in the totality-of-the-circumstances analysis, and it weighs against partnership formation. *Boyle v. DeCarteret*, No. 14-23-00339-CV, 2024 WL 3875815, at *4 (Tex. App. – Houston [14th Dist.] Aug. 20, 2024, no pet.).

TTI alleges Bonilla shared losses because he risked receiving no compensation, ECF 39 ¶ 251, but that does not allege "loss sharing" under Texas law; it alleges contingent compensation risk, which the Business Organizations Code excludes as evidence of partnership. Tex. Bus. Orgs. Code § 152.052(b)(1)(B). The Amended Complaint does not allege that Bonilla risked any trading

losses, capital, or third-party liability, risks borne exclusively by Muddy Waters.

### e.   No joint contribution of money or property (§ 152.052(a)(5)).

The agreement describes an exchange:  independent research and advance notice of publication in return for contingent profit.  "[T]he value of the contribution must be 'distinguished from services rendered or property given as an employee.'"  *Peykoff*, 2025 WL 1380070, at *3 (quoting *Ingram*, 288 S.W.3d at 902).  Under Section 152.052(b)(1)(B), that is "compensation to an … independent contractor" that does not establish partnership.  The Amended Complaint lacks allegations showing that Bonilla's contribution went beyond that, at most, of an independent contractor, *Peykoff*, 2025 WL 1380070, at *4, so TTI's late-alleged partnership theory fails to state a claim against Muddy Waters.

### 3.    TTI's agency allegations are also insufficient under Texas law.

TTI also now alleges that Bonilla was Muddy Waters's "agent."  ECF 39 ¶ 258.  Agency is a consensual relationship where the agent acts on behalf of the principal and is subject to the principal's control of the manner and means in which the agent accomplishes the assigned task.  *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017).  "To prove agency, evidence must establish that the principal has both the right:  (1) to assign the agent's tasks; and (2) to control the means and details of the process by which the agent will accomplish the task."  *Happy Indus. Corp. v. American Specialties, Inc.*, 983 S.W.2d 844, 852 (Tex. App. – Corpus Christi-Edinburg 1998, pet. dism'd w.o.j.).  Texas courts do not presume agency, and the party asserting it bears the burden of pleading facts showing the requisite right of control.  *Cmty. Health Sys. Prof'l Servs. Corp.*, 525 S.W.3d at 697.

Federal courts require a plaintiff asserting agency to plead facts showing that the principal had the right to control the agent's conduct.  In *Kaiser v. De Lage Landen Financial Services, Inc.*,

Chief Judge Moses dismissed an agency theory where the plaintiff alleged that sales representatives "were clearly acting as agents," holding that such assertions were conclusory and that the complaint lacked facts showing control over "the means and details" of the representatives' work. No. DR-22-CV-00038-AM/CW, 2023 WL 11960689, at *7 (W.D. Tex. Oct. 2, 2023). Similarly, in *Cunningham v. Lifestyles Development, LLC*, the Court dismissed an agency claim where the plaintiff alleged a business relationship but failed to plead facts showing that the purported principal directed or controlled the alleged agents' conduct, emphasizing that "broad, general allegations are not sufficient" to plausibly plead agency. No. 4:19-CV-000006-ALM-CAN, 2019 WL 4282039, at *4-5 (E.D. Tex. Aug. 8, 2019).

Notably, neither *Kaiser* nor *Cunningham* involved an express contractual disclaimer of agency. Here, the agreement states: "Nothing in this Agreement shall be construed to create a relationship … of agency between Muddy Waters and the Researcher." ECF 39 Ex. 1 ¶ 16. The agreement specifically provides that Muddy Waters cannot "direct, guide, control … the contents, methodology or conclusions" of the Bonilla's work and that "[a]ll decisions" on those topics "shall be solely those of the Researcher." ECF 39 Ex. 1 ¶ 16. It also provides that publication is Bonilla's choice in his "sole discretion." *Id.* ¶ 1(d). TTI's conclusory label, ECF 39 ¶ 258, cannot plausibly override the written terms that negate agency's defining element. ECF 39 Ex. 1 ¶ 16.

TTI's Amended Complaint alleges that "Muddy Waters provided Bonilla with tools and resources," ECF 39 ¶ 260, and that Bonilla's research was "integrated and essential to Muddy Waters' core short-selling business operations," whatever that means. ECF 39 ¶ 262. This does not show Muddy Waters assigned Bonilla's tasks or had the right to control how or whether Bonilla investigated, authored, or published any reports, as required to plausibly allege agency.

"In an agency relationship, the principal has 'the right to dictate the means and details of

the process by which the agent will accomplish the task' of the agent.  This is distinguishable from the relationship with an independent contractor, in which 'one has the right to control the end sought to be accomplished, but not the means and details of how it should be accomplished[.]'" *Stancil v. Gilman*, 2025 WL 2349813, at \*8 (Tex. App. – El Paso Aug. 13, 2025, pet. filed).  Here, Muddy Waters did not have the right to assign tasks nor the "right to control the end sought to be accomplished."  Bonilla was not required to conduct any research, of any kind, or to publish any report at all, which makes Bonilla less than an independent contractor, let alone Muddy Waters' agent.

## V.    Conclusion and prayer.

Despite a second chance, TTI still fails to plead facts plausibly alleging Muddy Waters' vicarious liability for Bonilla's publications, so Rule 12(b)(6) dismissal remains required.

Respectfully submitted,

*/s/ Peter D. Kennedy*

| | |
|---|---|
| David S. Korzenik | Peter D. Kennedy |
| (admitted pro hac vice) | Texas Bar No. 11296650 |
| dkorzenik@mkslex.com | pkennedy@gdhm.com |
| Miller Korzenik Rayman LLP | James A. Hemphill |
| The Paramount Building | Texas Bar No. 00787674 |
| 1501 Broadway, Suite 2015 | jhemphill@gdhm.com |
| New York, NY 10036 | Hailey L. Suggs |
| (212) 752-9200 (Phone) | Texas Bar No. 24113497 |
| (212) 688-3996 (Fax) | hsuggs@gdhm.com |
| | Graves, Dougherty, Hearon & Moody, P.C. |
| | 401 Congress Avenue, Suite 2700 |
| | Austin, Texas 78701 |
| | (512) 480-5764 (Phone) |
| | (512) 536-9908 (Fax) |

**Counsel for Defendants**

**Certificate of Service**

On January 22, 2026, I caused a copy of this document to be served by the Electronic Case

Filing System as shown below.

Asher B. Griffin
Quinn Emanual Urquart & Sullivan LLP
300 West 6th Street, 2010
Austin, Texas 78701

Jason Sternberg
Laura N. Ferguson
Quinn Emanual Urquart & Sullivan LLP
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133

Kristin Tahler
Quinn Emanual Urquart & Sullivan LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

Nicholas Inns
Quinn Emanual Urquart & Sullivan LLP
1300 I Street, NW, Suite 900
Washington, D.C. 2005

_/s/ Hailey L. Suggs_ _____
Hailey L. Suggs

Defendant's Motion to Dismiss Plaintiff's Amended Complaint – Page 22