UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TECHTRONIC INDUSTRIES COMPANY LIMITED, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 1:25-cv-00249-DAE |
| MUDDY WATERS CAPITAL LLC and MW DOMINO MANAGEMENT LLC, | § § § § | |
| Defendants. | § § | |

**DEFENDANT MUDDY WATERS CAPITAL LLC'S
MOTION TO DISQUALIFY ITS FORMER COUNSEL**

TO THE HONORABLE DAVID A. EZRA:

Defendant Muddy Waters Capital LLC ("Muddy Waters") moves to disqualify its former counsel, Quinn Emanuel Urquhart & Sullivan LLP ("Quinn"), from representing Plaintiff Techtronic Industries Company Limited ("TTI") and would respectfully show:

**I.     Introduction.**

This case presents an unfortunate example of a law firm suing its former client after obtaining relevant confidential information during its representation of that client in a related matter. Muddy Waters has repeatedly put TTI and Quinn on notice of its objection to this conflict but deferred moving to disqualify Quinn because this lawsuit has not proceeded past the pleadings stage and may never. However, TTI's recent insistence on taking redundant and potentially pointless discovery from Quinn's former clients requires this motion.

**II.    Quinn Emanuel has a disquieting pattern of missing or ignoring client conflicts.**

In its very first filing, Muddy Waters notified TTI of Quinn's conflict of interest: Quinn's prior representation of Muddy Waters, its founder Carson Block, and other Muddy Waters

employees in a related matter. ECF 23 at 18 n.8. Quinn's response was unequivocal: "Muddy Waters has never been a Quinn Emanuel client." ECF 29 at 7 n.1. This was false. In fact, Quinn represented Muddy Waters, several affiliates, Block, and other company officials in a matter that TTI has repeatedly referenced in its pleadings – showing its relatedness to this case. Either Quinn's conflict database is incomplete, or TTI's counsel did not consult it before making a false statement to the Court. When Muddy Waters again objected to the conflict when moving to dismiss TTI's Amended Complaint, *see* ECF 41 at 14 n.5, there was no response. ECF 47.[1]

Unfortunately, similar conflict problems seem endemic to Quinn. Just last week, Quinn was disqualified for simultaneously representing adverse clients in ongoing litigation. *CoStar Group, Inc. v. Com. Real Estate Exchange, Inc.*, No. 2:20-cv-8819 (C.D. Cal.) (ECF 1317). A few weeks before that, Quinn withdrew from a case where it had sued a party who had consulted the firm about the same matter and shared confidential information. *Rai v. Ourarin Inc.*, No. 4:25-cv-09654 (N.D. Cal.), ECF 29, 59. Muddy Waters has located many more examples:

- In *Kiani v. Koffey*, 30-2025-01484637 (Orange Cty. Super. Ct., filed May 22, 2025), Quinn was disqualified for "side switching" by attacking an employment agreement for one client it had previously defended for a different client.[2]

- In *Gil-White v. Alterna Cap'l Partners, LLC*, 84 Misc.3d 1223(A) (Sup. Ct. N.Y. Cty. Oct. 25, 2024), Quinn was disqualified from suing a current client despite an effort to "skirt around New York's Rules of Professional Conduct." *Id*. at *6.

- In *X Corp. v. Bright Data Ltd.*, 2024 WL 3408220, at *7 (N.D. Cal. Jul. 12, 2024), Quinn was disqualified in a lawsuit where it "attack[ed] a former client whose on-point battleplan it helped create just over one year ago."

---

[1] Both times, Muddy Waters expressly reserved its right to bring this motion should TTI's lawsuit survive the pleading stage. ECF 29 at 7 n.1; ECF 41 at 14 n.5.

[2] *See Quinn Emanual disqualified in Masimo board dispute*, DailyJournal.com (March 31, 2026).

Motion to Disqualify – Page 2

- In *Jogani v. Jogani*, No. BC290553 (L.A. Cty. Super. Ct.), Quinn was disqualified in June 2024 from handling an appeal because the firm's attorneys had consulted with the other side about representing him.[3]

- In *Blake v. S. Cal. Edison Co.*, 2020 WL 3262832, *7 (Cal. App. June 17, 2020), Quinn was disqualified after suing a company from which Quinn had received material confidential information and for whom it had prepared a litigation strategy.

- In *SC Innovations, Inc. v. Uber Technologies, Inc.*, 2019 WL 1959493, *10 (N.D. Cal. May 2, 2019), Quinn was disqualified from suing Uber for predatory pricing because it had defended Uber in similar lawsuits.

There have been others.[4]  Quinn calls itself the world's "most feared" law firm, and its 2025 profits per partner reportedly averaged $9 million.  This matter and the recent spate of disqualifications highlight the ethical challenges of striving to be a globally "feared" and extremely profitable law firm.  Large law firms may face more conflicts than smaller ones, but the same ethics rules apply.

## III.   The facts of this case.

### A.   Quinn represented Muddy Waters in a broad government investigation and received confidential information about its business, short-selling strategies, and relationships with third-party activists like Victor Bonilla.

Beginning in late 2021, the DOJ and SEC investigated activist short sellers, including Muddy Waters and Carson Block, in a broad government inquiry into their research, publication, and trading practices.  Ex. 1 ¶ 2.  The SEC formally notified Muddy Waters, through its counsel, that it had concluded its investigation and did not intend to recommend any enforcement action, by letter dated July 29, 2024.  *Id.*  While government ultimately took no action against Muddy Waters, Block, or any affiliated person, its investigation thoroughly examined Muddy Waters'

---

[3] *Quinn Emanuel disqualified from appeal of $10B dispute*, DailyJournal.com (June 7, 2024).

[4] *See Freedom Wireless, Inc. v. Bos. Commc'ns Grp. Inc.*, 2006 WL 8071423 (Fed. Cir. March 20, 2006) (affirming Quinn disqualification); *URS Corp. v. Earth Tech., Inc., et al.*, 2006 WL 3721200 (Cal. App. Dec. 19, 2006) (affirming Quinn disqualification).  *But see Mayers v. Stone Castle Partners, LLC, et al.*, 43 Misc.3d 1203(A) (Sup. Ct. N.Y. Cty. Mar. 28, 2014) (disqualifying Quinn), *rev'd*, 126 A.D.3d 1 (N.Y. App. 2015) (reversing disqualification).

business, including:  Muddy Waters' its preparation and publication of reports; the timing and reasons for its publications; its securities trading positions and history; and its relationships with outside researchers, among other things.  *Id.*  Subpoenas and warrants were issued that required Muddy Waters to produce an enormous number of confidential documents.  *Id.* ¶ 3.

Muddy Waters and Block retained Debevoise & Plimpton as primary counsel for the investigation, but they also sought independent counsel and strategic advice from lawyers unaffiliated with Debevoise.  Ex. 1 ¶ 5.  Muddy Waters and Block wanted independent counsel to evaluate Debevoise's strategy, advise Muddy Waters and its principals, and participate in strategy discussions and decisions about their subpoena responses, communications with the agencies, potential litigation risk, and public and media responses.  *Id.*

On January 3, 2022, a mutual acquaintance connected Block with Quinn partner Alex Spiro.  Ex. 1 ¶ 6.  Spiro – whose name recently began appearing on TTI's filings in this case – personally replied, referring Block to his partner, William Burck, in Quinn's D.C. office.  *Id.*  Before he disclosed any confidential information, Block asked Burck to confirm that Quinn had no conflict representing him and Muddy Waters, pointing out an article Quinn had recently published called "*How to Sue Short Sellers*," which touted Quinn's skill in "navigating the 'muddy waters'" of suing short sellers, an obvious reference to Block's company.  *Id.* ¶ 7.  Burck told Block that was written by "[s]omeone dumb" at Quinn, and assured Block that Quinn represented "a bunch of short sellers," without naming any.  *Id.*, Ex. 2 at 3.  Two days later, Burck told Block that Quinn had "cleared conflicts" and could represent him and Muddy Waters.  Ex. 1 ¶ 8, Ex. 2 at 2.  Block relied on that assurance in discussing Quinn's potential representation and in sharing highly confidential Muddy Waters information.  Ex. 1 ¶ 8.

Block, Freddy Brick, Scott Devinsky, and other Muddy Waters key personnel had a

conference call with Burck on January 7 to discuss Quinn's representation of Block, Muddy Waters, and its principals.  Ex. 1 ¶ 9.  During that call and in later communications, Block and others explained the scope of the DOJ/SEC investigation, Muddy Waters' business operations and organizational structure, its confidential research and publication process and history, its trading practices and history, and its relationships with outside researchers.  *Id.*

Burck sent Block a Quinn engagement letter on January 19 proposing that the firm represent Muddy Waters, its related entities, Block, Brick, and Devinsky.  Ex. 1 ¶ 10, Ex. 4.  Muddy Waters' General Counsel reviewed the letter, returned a redline, and discussed with Burck the revisions, which focused on avoiding conflicts and protecting Muddy Waters' confidential information.  Ex. 1 ¶ 11.  Among other things, Muddy Waters added language that Quinn would not "explicitly use or seek to use information that is specific to our business" if the firm later represented a client adverse to Muddy Waters.  *Id.* ¶ 12.  Burck returned a revised engagement letter on January 24, signed by him on behalf of Quinn, incorporating Muddy Waters' revisions and other discussed changes.  *Id.* ¶ 13.  Block signed the revised engagement letter for himself and Muddy Waters, as did the other individuals, on January 25.  Ex. 5 at 13-14.  Confirming Quinn's pre-existing ethical obligations, the letter only permitted Quinn to represent future clients adverse to Muddy Waters if the future matter was not substantially related to Quinn's representation of Muddy Waters, Block, and the other individuals.  Ex. 1 ¶ 14, Ex. 5 at 5.

Once the letter was signed, Quinn's representation was active and substantive.  Ex. 1 ¶ 15. Burck participated in strategy calls with Muddy Waters and Debevoise, communicated directly with Block and other Muddy Waters personnel, reviewed written analyses and draft materials, and advised Muddy Waters and its principals on their responses to subpoenas, communications with

Motion to Disqualify – Page 5

the government, and media strategy.  *Id*.[5]

The government served additional subpoenas in June 2022 seeking documents and communications about Muddy Waters' research reports.  Ex. 1 ¶ 19.  This took the investigation into especially sensitive subjects, including Muddy Waters' research process, its journalistic and publication activities, and its communications and arrangements with third-party researchers – the "balance sheet arrangements" at the center of this case – the exact type of relationship Muddy Waters had with Victor Bonilla regarding his two reports on TTI.  *Id.* ¶ 20.  Burck was actively involved in Muddy Waters' response to these subpoenas, participating in multiple calls discussing the company's legal strategy, as reflected in Quinn's invoices.  *Id.* ¶ 21, Ex. 9.

During this process, Muddy Waters disclosed to Quinn highly confidential information that identified the companies and securities it had researched and shorted, how and where it traded, and the timing and rationale for its publications and trading positions.  Ex. 1 ¶ 22.  Muddy Waters keeps that information strictly confidential because its journalistic research methods and trading processes, its internal decision-making and strategic priorities, and its assessments of specific companies and securities are highly valuable, proprietary trade secrets.  *Id.*  Of particular relevance here, Muddy Waters disclosed during the DOJ/SEC investigation detailed, confidential information about its relationships with third-party researchers and balance sheet arrangements.  Ex. 1 ¶¶ 20, 23.  As required by the subpoenas, Muddy Waters identified those third-party researchers, its compensation and profit-sharing agreements, and other trade secrets about the manner and scope of its business.  *Id.*

---

[5] While representing Muddy Waters and Block in the DOJ/SEC investigation, Burck consulted on Block's behalf with unidentified Quinn lawyers in Texas, who he described as "very aggressive litigators," presumably giving them actual notice of the firm's ongoing representation of Muddy Waters' founder.  *Id.* ¶ 25, Ex. 8.

Motion to Disqualify – Page 6

This mass of confidential information, if obtained by competitors or counterparties, would allow them to anticipate Muddy Waters' actions, exploit its research and trading strategies, reproduce Muddy Waters' highly successful business model, gain leverage in negotiations, and interfere with or exploit its third-party relationships. Ex. 1 ¶ 28. Of particular relevance here, if this information were obtained by the subjects of Muddy Waters' third-party researchers' reports – such as TTI – it could be used against Muddy Waters to attack and mischaracterize those relationships in litigation and regulatory complaints.

Muddy Waters only disclosed these confidences because Burck assured Block (1) that Quinn had "cleared conflicts," (2) that Quinn represented "a bunch" of other short sellers, (3) that Quinn's anti-short seller playbook was written by "someone dumb," and (4) that Quinn would, as every law firm is required to do, abide by its sacred duties of loyalty and confidentiality. Ex. 1 ¶ 29. Muddy Waters did not, of course, authorize Quinn to use those confidences for any purpose other than representing it, let alone to use them against it in a lawsuit. *Id.*

> **B.    While actively representing Muddy Waters and its principals, Quinn promoted a "playbook" for suing activist short sellers like Muddy Waters.**

In June 2021, shortly before the DOJ/SEC investigation began, Quinn advertised its willingness to sue short sellers in a website article called, aptly, "*How to Sue Short Sellers*." Ex. 3. Quinn's article detailed how to attack short sellers like Muddy Waters by suing them for libel and filing SEC and DOJ complaints. *Id*. at 4. Quinn touted its ability to file such suits and ended with a coy reference to its soon-to-be client (and current adversary): "We frequently advise clients in navigating the ***muddy waters*** of short attacks … ." *Id*. at 4-5 (emphasis added). As noted, when Carson Block asked Quinn lawyer William Burck about this, Burck attributed it to "[s]omeone dumb" at Quinn, Ex. 2 at 3, yet one of its authors was Burck's D.C. office colleague, Michael Liftik. *See* Ex. 3 at 5.

Motion to Disqualify – Page 7

In April 2022, while Burck was actively advising Muddy Waters and Block, Quinn updated the "offensive playbook" described in "*How to Sue Short Sellers*" in a second online article. Ex. 7. Quinn noted "[l]ast summer, we published an article on how to sue short sellers," "sketched a roadmap for a successful lawsuit," and offered "practice pointers for building a case against a short seller." *Id*. at 1. Quinn's update "provide[d] additional insight into how companies can outmaneuver shorts" and highlighted "regulators' growing focus on short sellers' illegal trading practices." *Id*. The article, incredibly, then described *the matter where Quinn was representing Muddy Waters and Block at that very moment*:

> Late last year, news outlets reported that **the DOJ had opened a criminal investigation** into whether short sellers were illegally conspiring to push stock prices down through short reports and illegal trading tactics … . **Targets of the investigation include Carson Block, founder of Muddy Waters Research** and Andrew Left, founder of Citron Research. While no charges have been brought, **the DOJ has reportedly issued dozens of subpoenas**, and both Block and Left have received search warrants. …

*Id*. at 4 (emphasis added).[6] Quinn advised potential clients that the DOJ and SEC "may be interested in hearing from companies about additional trading abuses by short sellers." *Id*. Again, the article was attributed in part to Burck's D.C. office colleague, Liftik. *Id*. at 5.

**C.** **Quinn then executed its activist short-seller lawsuit "playbook" by suing its own client on TTI's behalf after unilaterally declaring its representation over.**

Muddy Waters received a no-action letter from the SEC dated July 29, 2024, but not from the DOJ. Ex. 1 ¶ 2. Quinn held Muddy Waters' $100,000 retainer until July 2024 (*after* it had sued Bonilla in Florida for TTI) when it unilaterally declared its representation of Muddy Waters over (but without offering to return or destroy its client files). Ex. 10. After taking third-party discovery in the Florida case without indicating its intent to sue Muddy Waters, Quinn filed this

---

[6] To Muddy Waters' knowledge, Quinn has never updated this article to report that no government action was ever taken against Muddy Waters, Block, or any other of its Muddy Waters clients.

lawsuit, accusing its former client of "conspiring" with Bonilla to libel and disparage TTI in his First Report.  ECF 1.  After this Court dismissed TTI's Complaint, Quinn filed TTI's Amended Complaint, accusing Muddy Waters of conspiring with Bonilla to libel and disparage TTI in his Second Report.  ECF 39.  Quinn's publicly touted "playbook" for suing short sellers had come to fruition.

**IV.    Disqualification is required when a law firm either (a) represented a former client in a substantially related matter or (b) received confidential information relevant to the present lawsuit.**

"When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'"  *In re ProEducation Intern., Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311 (5th Cir. 1995)).  Western District Local Rule AT-7 provides that members of this Court's bar and any attorney admitted pro hac vice must comply with the Texas Disciplinary Rules of Professional Conduct, which are "adopted as the standards of professional conduct of this court."  For matters not governed by the Texas Rules, the ABA's "Model Rules of Professional Conduct should be consulted."  Local Rule AT-7.  *See ProEducation*, 587 F.3d at 299 (considering both Texas Rules and Model Rules).

The Fifth Circuit's approach to ethical issues "has remained 'sensitive to preventing conflicts of interest.'"  *ProEducation*, 587 F.3d at 299 (quoting *In re American Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992)).  "Under this approach, a district court is *obliged* to take measures against unethical conduct occurring in connection with any proceeding before it."  *Id.* (quoting *American Airlines*, 972 F.2d at 611) (emphasis in original).  While disqualification must not be done cavalierly, the court must consider the facts particular to the case in the context of the relevant ethical criteria.  *Id.* at 300.

Both Texas Rule and Model Rule 1.09(a) state that

> A lawyer who formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

A lawyer's conflicts and knowledge of client confidences are imputed to all members of his or her firm, regardless of size:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.06 or 1.09 … .

Texas Rule 1.10(a).[7]  *See ProEducation*, 587 F.3d at 300 (under the Texas Rules, "the personal conflicts of one attorney are imputed to all other members of a firm," unless the disqualified lawyer leaves the firm).

> The attorney's knowledge is imputed by law to every other attorney in the firm. There is, in effect, an irrebuttable presumption that an attorney in a law firm has access to the confidences of the clients and former clients of other attorneys in the firm. *One reason for this presumption is that it would always be virtually impossible for a former client to prove that attorneys in the same firm had not shared confidences*. Another reason for the presumption is that it helps clients feel more secure. Also, the presumption helps guard the integrity of the legal practice by removing undue suspicion that clients' interests are not being fully protected.

*Nat'l Med. Enterprises, Inc. v. Godbey*, 924 S.W.2d 123, 131 (Tex. 1996) (emphasis added). Additionally, "imputed disqualification gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm," and all firm lawyers are "vicariously bound by the obligation of loyalty owed by the other lawyers with whom the lawyer is associated." Texas Rule 1.10, comment 1. "*Only in this manner can the lawyer's duty of absolute fidelity be enforced and*

---

[7] ABA Rule 1.10(a) has materially identical language. Both rules provide two exceptions not applicable here: where the prohibition is based on the disqualified lawyer's (1) personal interest or (2) association with a *prior* firm, if the lawyer is screened and the client is given express written notice. Screens *within* a firm are inadequate when, as here, the conflicted lawyer remains affiliated. *X Corp.*, 2024 WL 3408220, at *9 (disqualifying Quinn because "[s]creening lawyers or offices is no fix in these circumstances:  Quinn is Quinn.").

Motion to Disqualify – Page 10

*the spirit of the rule relating to privileged communications be maintained.*"  *American Airlines*, 972 F.2d at 618 (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953)) (emphasis added by Fifth Circuit).

Thus, the Fifth Circuit requires that a law firm be disqualified when either (1) "the present and previous representations are substantially related" or (2) the former client shows "specific instances where it revealed relevant confidential information regarding its practices and procedures."  *American Airlines*, 972 F.2d at 615.  *See also Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1032 (5th Cir. Unit B 1981) (disqualification shown "either by establishing that the present and previous representations are substantially related or by pointing to specific instances where it revealed confidential information regarding its practices and procedures").

The Fifth Circuit's disqualification standard, derived in part from an attorney's duty of loyalty, "is not solely concerned with the adverse use of confidential information."  *American Airlines*, 972 F.2d at 618.  And the attorney's representation does not need to be "'relevant' in the evidentiary sense to be 'substantially related.'  It need only be akin to the present action *in a way reasonable persons would understand as important to the issues involved.*"  *Id*. (quoting *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981)) (emphasis added).

Both grounds of disqualification are present here.

## V.    Quinn must be disqualified because it represented Muddy Waters in a substantially related matter and received highly confidential information.

### A.    TTI's own pleadings conclusively establish that this lawsuit is substantially related to Quinn's representation of Muddy Waters.

In TTI's original Complaint, Quinn described in detail Muddy Waters' business model, its management of assets and capital, its taking short positions in public companies, its use of a

research arm to investigate companies, its publication of research reports, and its relationships with outside researchers. ECF 1 ¶¶ 1-3, 35-44. These matters were all part of the DOJ/SEC's investigation of Muddy Waters and Quinn's representation and advice. The Complaint made two even more express references to that matter in an effort to portray Muddy Waters negatively: it alleged that Muddy Waters faces a "looming regulator threat," *id.* ¶ 35, even though Quinn knows that the DOJ/SEC investigation led to no action against Muddy Waters or its principals. And the Complaint disparaged Muddy Waters' third-party research agreements, calling them "insidious balance sheet arrangements," *id.* ¶ 37, even though Quinn helped advise on how to *defend* those very relationships during the investigation. Even after Muddy Waters pointed out Quinn's conflict and the Court dismissed TTI's Complaint, Quinn repeated those references to Muddy Waters in TTI's Amended Complaint. ECF 39 ¶¶ 42, 44.

By including those allegations in the Complaint, and by repeating them in the Amended Complaint, TTI and Quinn have placed Quinn's intimate knowledge and prior representation of Muddy Waters and its principals directly at issue. To be "substantially related," matters need only be akin "in a way reasonable persons would understand as important to the issues involved." *American Airlines*, 972 F.2d at 618. Here, not only would any reasonable person understand that Quinn's intimate knowledge of Muddy Waters' confidential business information is important to this case, TTI and Quinn *themselves* have conclusively shown that importance by repeatedly alleging related matters in TTI's pleadings. It is far too late for them to argue those allegations are not relevant to TTI's lawsuit.

How can Quinn reference a "looming regulator threat" without implicating its representation of Muddy Waters during the extensive DOJ/SEC investigation? How can Quinn call that threat "looming" when it knew, from its own representation of Muddy Waters, that the

Motion to Disqualify – Page 12

investigation ended with no action taken?  How can Quinn characterize Muddy Waters' agreement with third-party researcher Bonilla as an "insidious balance sheet arrangement" when those agreements were central to its representation of Muddy Waters?  What reasonable person would not conclude that it is improper for TTI to be represented by a law firm that represented Muddy Waters during that "looming regulator threat" where it helped Muddy Waters explain and defend those "insidious balance sheet arrangements"?

As other courts have noted, Quinn cannot ethically switch sides or attack agreements it previously defended.  *See* cases cited in Section II, above.  It should be disqualified based on the allegations in TTI's Amended Complaint alone.

**B.    Quinn obtained confidential information from Muddy Waters that TTI and Quinn contend is relevant to this case.**

As detailed above, Quinn received voluminous confidential information about Muddy Waters during the DOJ/SEC investigation.  Simply reading TTI's lawsuit shows that Quinn has put that information squarely at issue by alleging extensive details about Muddy Waters' business model, its management of assets and capital, its short positions in public companies, its internal research arm, its publication of research reports, and its relationship with outside researchers.  ECF 1 ¶¶ 1-3, 35-44; ECF 39 ¶¶ 1, 42-44.  Both the Complaint and Amended Complaint identify specific companies Muddy Waters researched and shorted in the past, ECF 1 ¶ 32-33, ECF 39 ¶ 39-40, a focus of the DOJ/SEC investigation.  Ex. 1 ¶ 19.[8]  And those allegations are not neutral recitations. TTI and Quinn claim that Muddy Waters' "insidious" relationships with outside researchers are conspiracies to knowingly publish false information about publicly traded companies for profit

---

[8] Even if some of that information was discernable from public sources, a lawyer may not disclose information obtained from a client during a representation, whether public or not.  Texas Rule 1.09(c)(1), (2); Model Rules 1.6(a), 1.9(c)(2).

Motion to Disqualify – Page 13

(while failing to allege *facts* supporting those accusations, despite extensive pre-trial discovery).

Muddy Waters does not need to show that Quinn has, or necessarily will, use confidential information against it in this lawsuit, although that seems unavoidable if the case proceeds to discovery. All Muddy Waters needs to show is that (1) Quinn received confidential information while representing Muddy Waters and (2) that confidential information is relevant to this case. *American Airlines*, 972 F.2d at 615; *Duncan*, 646 F.2d at 1032. The first is uncontested; the second is demonstrated by the Complaint and Amended Complaint Quinn drafted and TTI approved. Quinn should be disqualified on this basis, as well.

## VI.    TTI/Quinn's sudden and unnecessary insistence on discovery necessitates this motion.

TTI and Quinn may respond "delay" and "waiver." While this case *has* been pending for over a year, it has not proceeded past the pleading stage, for good reason: this Court dismissed TTI's original Complaint; an equally strong motion to dismiss TTI's Amended Complaint is pending; TTI's First Report claims were dismissed on summary judgment in Florida; and its newly asserted Second Report claims are barred by limitations and vulnerable to dismissal in the Florida case, which is set for trial in November.

Once TTI filed this lawsuit, Muddy Waters could not undo the harm of being sued by its former counsel. Although TTI's Complaint (and now its Amended Complaint) plainly put at issue confidential matters Quinn learned during its representation of Muddy Waters, the swiftest way to terminate Quinn's conflict was to seek dismissal. For over a year, while the parties contested whether TTI can even state a claim, TTI sought no discovery. After Alex Spiro's name appeared on filings, however, matters changed: TTI/Quinn suddenly, and without consulting Muddy Waters' counsel, served voluminous written discovery and deposition notices for Quinn's former clients Carson Block, Freddy Brick, and Scott Devinsky, among others (including a deceased colleague,

Motion to Disqualify – Page 14

whom TTI's lawyers would have known was deceased had they read Block's pre-lawsuit deposition before serving the notices). The requests did not exclude documents and information TTI had already obtained in pre-lawsuit discovery, nor were they limited to the claim that survived summary judgment in Florida. Muddy Waters timely objected and asked this Court to stay discovery pending a ruling on its motion to dismiss and the Florida trial's outcome. ECF 51.

For no discernable reason other than to impose burdens on a small company and its employees, TTI/Quinn is demanding that Muddy Waters immediately respond to voluminous discovery and produce Quinn's former clients to be deposed by Quinn lawyers. Ex. 11. Muddy Waters has asked them to consider this Court's crowded docket and await developments that may moot the need for any discovery. Ex. 12. However, given TTI/Quinn's insistence on taking discovery that would deeply implicate Quinn's intimate knowledge of its former clients' confidences, Muddy Waters, unfortunately, has no choice but to put this issue before the Court now.

## VII.    Conclusion.

Quinn's conflicted representation of TTI and its access to Muddy Waters' confidential information present both grounds for Fifth Circuit disqualification. Quinn's representation of TTI also runs afoul of the considerations this Court has noted as grounds for disqualification – when a representation "(1) has the appearance of impropriety in general, or (2) a possibility that specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Spencer v. BMW of North America, LLC*, No. 5:14-CV-00869-DAE, 2015 WL 3936211, at *1-2 (W.D. Tex. June 26, 2015) (quoting *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001)).

In short:  Quinn told potential clients, with a wink, that it knew how to navigate the "muddy waters" of suing short sellers.  Quinn then assured Muddy Waters it represented other short sellers, had no conflicts, and would protect its confidential information, which convinced Muddy Waters to disclose its most sensitive company information.  Quinn then, while representing the country's most prominent activist short seller, updated its short-seller lawsuit "playbook" while telling the world Muddy Waters and Carson Block were under government investigation.  Then, when a chance to execute its short-seller lawsuit "playbook" for a multi-billion-dollar company came along, Quinn told Muddy Waters its representation was over and sued its former client.  Topping it off, Quinn then denied in court that it had ever represented Muddy Waters.

No matter how Quinn may try to split hairs in excusing its representation of both TTI and Muddy Waters, these circumstances cannot be considered acceptable to a "reasonable person," the ultimate judge of attorney ethics.  *American Airlines*, 972 F.2d at 618.  The uncontested facts of this case present an ugly conflict warranting disqualification.

Respectfully submitted,

*/s/ Peter D. Kennedy*

| | |
|---|---|
| David S. Korzenik | Peter D. Kennedy |
| (admitted pro hac vice) | Texas Bar No. 11296650 |
| dkorzenik@mkslex.com | pkennedy@gdhm.com |
| Miller Korzenik Rayman LLP | James A. Hemphill |
| The Paramount Building | Texas Bar No. 00787674 |
| 1501 Broadway, Suite 2015 | jhemphill@gdhm.com |
| New York, NY 10036 | Hailey L. Suggs |
| (212) 752-9200 (Phone) | Texas Bar No. 24113497 |
| (212) 688-3996 (Fax) | hsuggs@gdhm.com |
| | Graves, Dougherty, Hearon & Moody, P.C. |
| | 401 Congress Avenue, Suite 2700 |
| | Austin, Texas 78701 |
| | (512) 480-5764 (Phone) |
| | (512) 536-9908 (Fax) |

**Counsel for Defendants**

**Certificate of Conference**

Pursuant to Local CV-7(g), I certify that Defendants have raised the conflict of interest set out in this motion in three filed pleadings and directly with counsel for Plaintiff, in a good faith effort to resolve this dispute through the voluntary withdrawal of Plaintiff's counsel, but the dispute has not been resolved.

/s/ Peter D. Kennedy
Peter D. Kennedy

**Certificate of Service**

On July 19, 2026, I caused a copy of this document to be served by the Electronic Case Filing System as shown below.

Asher B. Griffin
Quinn Emanuel Urquhart & Sullivan LLP
300 West 6th Street, Suite 2010
Austin, Texas 78701

Jason Sternberg
Laura N. Ferguson
Quinn Emanuel Urquhart & Sullivan LLP
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133

Kristin Tahler
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

Nicholas Inns
Quinn Emanuel Urquhart & Sullivan LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005

/s/ Peter D. Kennedy
Peter D. Kennedy

**EXHIBITS IN SUPPORT OF
DEFENDANT MUDDY WATERS CAPITAL LLC'S
MOTION TO DISQUALIFY ITS FORMER COUNSEL**

1.      Declaration of Carson Block.

2.      E-mails between William A. Burck and Carson Block re:  "Referred by Alex Spiro."

3.      Quinn Emanuel article, "*How to Sue Short Sellers*" (June 25, 2021).

4.      Proposed Quinn Emanuel Engagement Agreement (January 19, 2022).

5.      Fully executed Quinn Emanuel Engagement Agreement (January 25, 2022).

6.      Calendar invites and acceptances by William A. Burck for Muddy Waters conference and strategy calls.

7.      Quinn Emanuel article, "*Updating the Offensive Playbook:  Recent Developments in Short Seller Litigation*" (April 29, 2022).

8.      E-mails between Carson Block and William A. Burck (August 5, 2022).

9.      Quinn Emanuel invoices to Muddy Waters.

10.     E-mail from Quinn Emanuel to Muddy Waters (July 1, 2024).

11.      Letter from counsel for TTI to counsel for Muddy Waters demanding immediate discovery (July 14, 2026).

12.     Letter from counsel for Muddy Waters to counsel for TTI responding to July 14, 2026, letter (July 17, 2026).