UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TECHTRONIC INDUSTRIES COMPANY LIMITED, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 1:25-cv-00249-DAE |
| MUDDY WATERS CAPITAL LLC and MW DOMINO MANAGEMENT LLC, | § § § § | |
| Defendants. | § | |

## **DECLARATION IN SUPPORT OF MUDDY WATERS' MOTION TO DISQUALIFY**

My name is Carson Block. I am over the age of 18, of sound mind, have not been convicted of a felony, and am otherwise competent to give this Declaration. I swear, under penalty of perjury, that the facts in this Declaration are true and are based on my personal knowledge or the exhibits referenced.

1. I am the Founder and Chief Executive Officer of Muddy Waters Capital LLC ("Muddy Waters"). In that role, I am familiar with Muddy Waters' operations and have access to its business records. Muddy Waters combines investigative financial journalism with a non-traditional revenue model, publishing reports about publicly traded companies that it believes are abusing public markets and / or their customers. Muddy Waters and affiliated investment entities may take investment positions based on that journalism. Its research and publication process, trading activity, contractual arrangements, and relationships with sources and outside researchers are central to its business and are treated as highly confidential. Muddy Waters is sometimes referred to colloquially as an "activist short seller."

2. In or around October 2021, Muddy Waters, certain affiliated entities, and certain Muddy Waters principals, including me, became subjects of investigation by the Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") concerning activist short sellers and their trading, research, and publication practices. The SEC closed its investigation without recommending any enforcement action against Muddy Waters, me, or any person affiliated with Muddy Waters. Muddy Waters received a no-further-action letter from the SEC in late July 2024. The DOJ/SEC investigation examined Muddy Waters' trading in securities, the timing of its trading and publications, the preparation and publication of research reports, communications relating to those reports, and Muddy Waters' relationships with outside researchers and other market participants.

3. On October 14, 2021, the U.S. Attorney's Office for the Central District of California issued grand-jury subpoenas relating to Muddy Waters. During the investigation, I, Freddy Brick (Partner at Muddy Waters), and Scott Devinsky (COO and CFO of Muddy Waters)

<div style="border: 2px solid black; display: inline-block; padding: 10px; text-align: center;">

**EXHIBIT**

**1**

</div>

received warrants or subpoenas seeking documents related to Muddy Waters.

4.      Muddy Waters retained Debevoise & Plimpton LLP as its primary law firm to represent and advise Muddy Waters, me, and its principals in the investigation and to coordinate their response to the agencies.

5.      Muddy Waters and I also sought independent legal opinions and additional strategic legal advice.  The purpose was not limited to a single question.  Muddy Waters and I wanted experienced counsel not affiliated with Debevoise to assess the government's theories, evaluate Debevoise's strategy, advise me, Muddy Waters, and its principals, and participate in strategy discussions concerning subpoenas, communications with the government, public and media responses, and potential litigation.

6.      On January 3, 2022, a mutual acquaintance connected me with Alex Spiro of Quinn Emanuel to facilitate my and Muddy Waters' search for that additional legal representation and advice.  Spiro, who has recently appeared as counsel for TTI in this lawsuit that Quinn Emanuel filed against Muddy Waters, referred me to his Quinn Emanuel partner William A. Burck in the firm's D.C. office.  That evening, Burck e-mailed me and said he understood Muddy Waters might have an SEC issue and that he would be happy to speak.  Exhibit 2 is a true and correct copy of our e-mail chain.

7.      Before sharing any confidential information, I asked Burck to confirm that Quinn Emanuel had no conflict with Muddy Waters or me.  I pointed out to Burck Quinn Emanuel's June 2021 website article titled *"'That Is Not An Opinion:'  How to Sue Short Sellers,"* including its reference to navigating the "muddy waters" of short attacks, which was clearly a coy reference to me and my company.  Exhibit 3 is a true and correct copy of that article.  Burck told me that phrase was written by "Someone dumb" at Quinn Emanuel and said Quinn Emanual represented "a bunch of short sellers."  Ex. 2 at 3, 2.  Burck's reassurances led me to consider retaining Quinn Emanuel to represent me and Muddy Waters.

8.      On January 5, 2022, Burck told me in writing that he had "cleared conflicts" and asked when I wanted to speak.  Ex. 2 at 2.  I relied on that assurance that Quinn Emanuel had no conflicts and would loyally represent me and Muddy Waters in my further communications with him, and in the decision to retain Quinn Emanuel and share highly confidential information with the law firm.

9.      Burck and I had an initial conference call on January 7, 2022, to discuss Quinn Emanuel's representation of me and Muddy Waters.  The participants included Burck, me, Brick, Devinsky, and other Muddy Waters personnel.  During that and other early communications, we explained the investigations, the subpoenas and warrants, Muddy Waters' business and organizational structure, its trading and research practices, its publication process, and its relationships with outside researchers.

10.      On January 19, 2022, Burck sent Muddy Waters what he described as Quinn Emanuel's standard engagement letter, which proposed that Quinn Emanuel represent me, Muddy Waters and related entities,  Freddy Brick, and Scott Devinsky.  Exhibit 4 is a true and correct copy of that letter.

11. We did not accept that letter. Muddy Waters' General Counsel reviewed it, returned a redline, and discussed the changes with Burck. I was copied on their relevant communications and understood that the requested revisions focused in significant part on conflicts and the protection of Muddy Waters' confidential information.

12. Among other things, we added language providing that Quinn Emanuel would not "explicitly use or seek to use information that is specific to our business" if Quinn Emanuel later represented a client adverse to Muddy Waters in litigation. We also obtained additional protections concerning the internal sharing of its privileged information.

13. On January 24, 2022, Burck transmitted a revised engagement letter that included our suggested revisions and said: "Your edits [are] incorporated as well as the new ones we discussed and your comments addressed." The engagement letter was signed by Burck on behalf of Quinn Emanuel and countersigned by me, the other individual clients, and on behalf of Muddy Waters and its related entities on January 25, 2022. Exhibit 5 is a true and correct copy of the executed engagement letter.

14. The engagement letter stated that the representation would conclude upon, among other possible grounds, "communications from the DOJ and the SEC that they will not further pursue the matter." It also stated that Quinn Emanuel could represent future clients adverse to Muddy Waters only if the future matter was not substantially related to Quinn Emanuel's representation of me and Muddy Waters. Ex. 5.

15. Quinn Emanuel's representation of Muddy Waters and its principals, including me, in the DOJ/SEC investigation was active and substantive. Burck served as second-opinion counsel and a high-level strategic adviser alongside Debevoise. He participated in calls with Muddy Waters and Debevoise, communicated directly with me and other Muddy Waters personnel, reviewed written analyses and draft materials, advised on responses to subpoenas and communications with the agencies, and advised concerning related litigation and media strategy.

16. A review of Muddy Waters' Global Relay archive identified 1,229 archived e-mail records between Muddy Waters and Burck from January 3, 2022, through August 15, 2023. Because Global Relay preserves separate custodian copies of the same message, those records represent approximately 560 unique messages after de-duplication.

17. The same records reflect at least nine conference or strategy call scheduling messages that Burck received and accepted between January and July 2022, including calls labeled "PRIVILEGED: Call re MW / DOJ," "PRIVILEGED: DOJ Discussion," and "Strategy Call." I participated in many of those calls. A true and correct copy of the calendar invitations to and acceptances by Burck is Exhibit 6, which accurately reflects calendar invitations and Burck's acceptances for calls scheduled as part of Quinn Emanuel's representation.

18. While Quinn Emanuel was representing me, and Muddy Waters and its principals, Quinn Emanuel published an article on April 29, 2022, titled "*Updating the Offensive Playbook: Recent Developments in Short Seller Litigation*." This article specifically referred to me and Muddy Waters as targets of the very investigation in which I had hired Quinn Emanuel to represent me and Muddy Waters. A true and correct copy of that article is Exhibit 7. In April 2022, at the

Declaration in Support of Muddy Waters' Motion to Disqualify Counsel – Page 3

same time as this article is being published, Burck was actively participating in strategy calls with me and other Muddy Waters personnel concerning the SEC and DOJ investigation.  Neither Burck nor anyone at Quinn Emanuel asked me for permission to refer to me and Muddy Waters in that article or even gave me the courtesy of notifying me when it was published.

19.    On June 9, 2022, the U.S. Attorney's Office issued additional grand-jury subpoenas to Muddy Waters Capital LLC and related entities.  The subpoenas sought documents and communications concerning trading in specific stock tickers and documents concerning the preparation, publication, and response to short reports and other public statements concerning specified issuers.

20.    The June 2022 subpoenas expanded the investigation into subjects that were especially sensitive to Muddy Waters, including its research process, its journalistic and publication activities, and communications involving outside researchers, sometimes referred to as "balance sheet partners."

21.    Burck was actively involved in the response to the June 2022 subpoenas.  For instance, Quinn Emanuel's June 2022 invoice records a June 10 call with Muddy Waters and Debevoise concerning the new subpoenas; preparation for a participation in a June 16 client strategy call; a June 17 call with Debevoise; a June 20 call with Muddy Waters concerning the DOJ; and a June 22 call concerning DOJ strategy.  Ex. 9.

22.    As part of those discussions and during contemporaneous email exchanges, Muddy Waters and I disclosed to Quinn Emanuel highly confidential information identifying which companies and securities Muddy Waters had researched and/or shorted, how and where it traded, the timing and rationale for positions and publications, and the information that had been produced to the agencies.  Muddy Waters keeps this information confidential because it reveals its proprietary journalistic research and trading processes, internal decision-making, strategic priorities, and assessment of particular companies and securities.  Disclosure of that information could allow market participants or litigation adversaries to anticipate Muddy Waters' activities, exploit its journalistic research and trading strategies, identify perceived vulnerabilities, or use its own internal analyses against it in litigation or regulatory proceedings.

23.    During Quinn Emanuel's representation of me and Muddy Waters, we shared with the law firm confidential information about Muddy Waters' use of and relationships with outside researchers, including the identities of third-party short activists that Muddy Waters has worked with, compensation and profit-sharing arrangements, and other confidential trade secrets about the manner and scope of Muddy Waters' short activist business.  This information is among Muddy Waters' most sensitive confidential business information because it reveals how Muddy Waters structures, evaluates, and manages those relationships and how economic incentives, roles, responsibilities, and obligations are allocated.  Disclosure could enable competitors, counterparties, or litigation adversaries to reconstruct Muddy Waters' internal business model, interfere with or exploit its third-party activist relationships, gain leverage in negotiations, or characterize those arrangements adversely in litigation or regulatory proceedings.

24.    Responding to the DOJ/SEC investigation required an enormous, time-consuming, and expensive document collection, review, and production.  In rolling productions during 2022,

Declaration in Support of Muddy Waters' Motion to Disqualify Counsel – Page 4

Muddy Waters produced hundreds of thousands of internal e-mails, chats, and attachments. Quinn Emanuel was included in the attorney-client privileged discussions about the scope of the requests, Muddy Waters' document production strategy, and the framing of its legal objections.

25.    On August 5, 2022, Burck advised me concerning potential litigation and stated that he had been "working with our TX litigators" regarding the matter. Burck described those lawyers as "very aggressive litigators" and conveyed their assessment of the potential claim. This communication confirms that Quinn Emanuel litigators in Texas knew that the firm was advising Muddy Waters and participated in evaluating Muddy Waters' potential claims and litigation strategy. Exhibit 8 is a true and correct copy of that e-mail.

26.    Muddy Waters' correspondence with Burck continued through at least August 15, 2023. Over the course of the representation, I and others at Muddy Waters communicated with Burck and Quinn Emanuel candidly so that they could provide legal advice, knowing they were bound by ethical rules imposing duties of loyalty and confidentiality.

27.    The confidential information provided to Quinn Emanuel included privileged communications, attorney work product, internal legal assessments, litigation and regulatory strategy, media strategy, and non-public business information, particularly concerning Muddy Waters' work with third party activist short sellers, such as Jehosaphat Research.

28.    The information Muddy Waters provided to Quinn Emanuel is highly confidential and commercially sensitive. Disclosure or adverse use of that information would harm Muddy Waters by revealing its internal research and trading processes, contractual arrangements, strategic priorities, risk assessments, and potential weaknesses to litigation adversaries.

29.    Muddy Waters and I provided this information to Quinn Emanuel because Quinn Emanuel said that it had cleared conflicts, agreed to represent both Muddy Waters and me, agreed to protect their confidences, and would be bound by a duty of loyalty. Neither Muddy Waters nor I have ever authorized Quinn Emanuel to use that information for any reason other than the law firm's representation of us, and certainly not in any matter of any kind whatsoever adverse to us.

30.    Quinn Emanuel required a $100,000 retainer, which Muddy Waters provided. Quinn Emanual sent invoices to Muddy Waters. Exhibit 9 contains true and correct copies of those invoices. Quinn Emanuel charged $2,030 per hour for Burck's services. *Id*.

31.    On July 1, 2024, out of the blue, Muddy Waters received an email from Quinn Emanuel declaring that, "[y]our matter having ended," Quinn Emanuel would be returning the $100,000 retainer it held for its representation of me, Muddy Waters, and its other clients. Exhibit 10 is a true and correct copy of that email. The retainer was returned on July 5, 2024.

32.    At the time Quinn Emanuel declared that the matter had ended, neither Muddy Waters nor I had received any communication from either the DOJ or the SEC stating that either agency had closed the investigation, although Muddy Waters ultimately received a no-further-action letter from the SEC in late July 2024. We never received such a letter from the DOJ, which we understand is customary given the SEC's civil standard is a lower legal threshold.

33.    I have reviewed the Complaint and Amended Complaint filed by Quinn Emanuel

for TTI in this case. Those pleadings attack Muddy Waters' alleged "business model," trading and publication practices, the timing and financial motivation of short positions, coordinated publicity, and its relationships and contracts with third-party researchers. Both complaints allege that Muddy Waters faces a "looming regulator threat" and points to criminal and civil enforcement actions brought by the DOJ and SEC against short sellers using arrangements similar to Muddy Waters' relationships with outside researchers. This clearly is a reference to the very DOJ/SEC investigation where Quinn Emanuel represented me and Muddy Waters.

34.     TTI's allegations against Muddy Waters, as framed and drafted by Quinn Emanuel attorneys, put at issue exactly the same business, practices, relationships, and regulatory risks that Quinn Emanuel was retained to evaluate and defend and about which Muddy Waters and I gave Quinn Emanuel confidential information. In particular, the pleadings' allegations concerning outside researchers and contractual or profit-sharing arrangements concern subjects that Muddy Waters and I disclosed to and discussed with Quinn Emanuel in confidence during the DOJ and SEC representation.

35.     Quinn Emanuel never requested, and neither Muddy Waters nor I ever provided, consent to Quinn Emanuel's representation of TTI in this matter, nor was I given prior notice of Quinn Emanuel's plan to file suit against my company. I am shocked that a law firm that represented me and my company in an important legal matter, that received my and my company's confidences, and that gave me and my company critical legal advice, is now suing my company and denigrating me and my company on behalf of a different (and far larger and wealthier) client. I expected Quinn Emanuel to adhere to the highest standards of ethics in the legal profession and to provide me and my company undivided loyalty, as required by the rules governing lawyers and simple common decency. I am deeply offended and disappointed that Quinn Emanuel has failed to live up to its ethical obligations.

FURTHER DECLARANT SAYS NOT.

Date: July 18 2026

_____
Carson Block

Declaration in Support of Muddy Waters' Motion to Disqualify Counsel – Page 6