# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **Techtronic Industries Company Limited,** *Plaintiff* | § | |
| **v.** | § | **No. 1:25-cv-00249-DAE** |
| **Muddy Waters Capital LLC and MW Domino Management LLC,** *Defendants* | § | |

## ORDER

Before the Court are Defendant Muddy Waters Capital LLC's Motion to Disqualify its Former Counsel, filed July 19, 2026 (Dkt. 56); Defendants' Time-Sensitive Emergency Motion to Stay Discovery Pending Resolution of Motion to Disqualify Counsel (ECF 56), filed August 5, 2026 (Dkt. 67); and the associated response and reply briefs.[1] The Court held a hearing on the motions at which the parties appeared through counsel on August 26, 2026.[2]

## I. Background

Plaintiff Techtronic Industries Company Limited ("TTI"), a Hong Kong-based manufacturer of power tools, outdoor power equipment, and vacuum cleaners, asserts eight claims against Defendants, including defamation, partnership/joint venture liability, conspiracy to disparage TTI's business, and conspiracy to commit libel and libel per se. Amended Complaint, Dkt. 39. Defendant Muddy Waters Capital is a privately held investment firm and Defendant MW Domino Management LLC is an investment fund; Austin, Texas resident Carson Block is the sole member of both.

---

[1] By Text Orders entered July 20 and August 11, 2026, the Honorable David A. Ezra referred the motions to this Magistrate Judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

[2] By Text Order entered August 24, 2026, Judge Ezra also referred Defendants' Motion to Quash (Dkt. 75), which was filed August 21, 2026 and was not ripe until after the hearing.

TTI's claims arise from two reports published in February and June 2023 by third-party independent activist short-seller Victor Bonilla under the name Jehoshaphat Research after he entered a contract with Muddy Waters in September 2022. TTI's stock declined after the reports, which TTI alleges were malicious, false, and defamatory. TTI sued Bonilla in the Middle District of Florida on August 3, 2023, and that case is set for trial in November 2026. *Techtronic Indus. Co. Ltd. v. Bonilla*, No. 8:23-cv-01734-CEH-AEP (M.D. Fla. Aug. 3, 2023) ("Florida Action"). Muddy Waters now asks the Court to disqualify Plaintiff's counsel, the law firm Quinn Emanuel Urquhart & Sullivan LLP, alleging that the firm obtained relevant confidential information during its representation of Muddy Waters in a related matter.

It is undisputed that Quinn Emanuel represented Muddy Waters and its affiliates, Block, and other employees as secondary counsel in an investigation by the Department of Justice and Securities and Exchange Commission beginning in January 2022. Dkt. 56-5 (engagement letter). During the representation, Quinn Emanuel partner William Burck billed 19.5 hours of time and exchanged some 560 emails with Muddy Waters. Block Dec., Dkt. 56-1 ¶ 16; Dkt. 65 at 3. Muddy Waters contends that it disclosed to Quinn Emanuel extensive confidential information relevant to this case, including "detailed, confidential information about its relationships with third-party researchers and balance sheet arrangements." Dkt. 56 at 6.

> Burck served as second-opinion counsel and a high-level strategic adviser alongside [primary law firm Debevoise & Plimpton LLP]. He participated in calls with Muddy Waters and Debevoise, communicated directly with me and other Muddy Waters personnel, reviewed written analyses and draft materials, advised on responses to subpoenas and communications with the agencies, and advised concerning related litigation and media strategy.

Block Dec., Dkt. 56-1 ¶ 15. Muddy Waters shared with Quinn Emanuel confidential information about its "use of and relationships with outside researchers, including the identities of third-party short activists that Muddy Waters has worked with, compensation and profit-sharing

arrangements, and other confidential trade secrets about the manner and scope of Muddy Waters' short activist business." *Id.* ¶ 23. The confidential information Muddy Waters provided to Quinn Emanuel included "non-public business information, particularly concerning Muddy Waters' work with third party activist short sellers, such as Jehosaphat [sic] Research." *Id.* ¶ 27.

It is unclear when the engagement ended. In the "Scope of Engagement" section, the engagement letter states that the firm's engagement would conclude with "communications from the DOJ and the SEC that they will not further pursue the matter or for any of the reasons stated in the Date of Commencement and Termination of the Engagement section of this letter." Dkt. 56-5 at 2. The latter section provides that representation will be terminated, among other reasons, "following 60 days of inactivity by [Quinn Emanuel] on the matter." *Id.* at 9. Quinn Emanuel contends its representation ended in September 2022, sixty days after it last billed time on the matter. Dkt. 65 at 5. But Block avers that Burck's correspondence with Muddy Waters "continued through at least August 15, 2023." Dkt. 56-1 ¶ 26. Muddy Waters' $100,000 retainer was not returned until July 1, 2024, and the SEC formally notified Muddy Waters that it concluded its investigation by letter dated July 29, 2024. *Id.* ¶¶ 2, 31-32; Dkt. 56-10 at 1 (July 1, 2024 emails regarding return of retainer "[w]ith your matter having ended").

TTI, through Quinn Emanuel, served a subpoena on Muddy Waters in the Florida Action in May 2024 and subpoenaed Block and his colleague Freddy Brick two months later. Dkts. 65-5, 65-6, 65-7. After this Court decided motions to quash and compel discovery, Quinn Emanuel deposed Block and Brick in the Florida Action in November 2024. *Techtronic Indus. Co. Ltd. v. Victor Bonilla*, No. 1:24-cv-00803-RP (W.D. Tex. Dec. 14, 2024). TTI filed this lawsuit on February 20, 2025, and Muddy Waters filed the motion to disqualify seventeen months later.

## II. Legal Standards

Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). Courts consider "state and national ethical standards adopted by the court" when deciding a motion to disqualify. *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). Courts must consider the particular facts of each case in the context of the relevant ethical criteria and deference to a litigant's rights. *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 300 (5th Cir. 2009). "Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995). The party moving for disqualification bears the ultimate burden of proof of showing that disqualification of counsel is necessary. *Texas v. Biden*, 570 F. Supp. 3d 398, 404 (N.D. Tex. 2021).

When considering motions to disqualify, courts should first look to "the local rules promulgated by the local court itself." *ProEducation*, 587 F.3d at 299 (citation omitted). Local Rule AT-7 provides that members of the bar and any attorney admitted *pro hac vice* must comply with the Texas Disciplinary Rules of Professional Conduct, which are "adopted as the standards of professional conduct of this court." For matters not covered by the Texas Rules, the American Bar Association's "Model Rules of Professional Conduct should be consulted." Local Rule AT-7; *see also ProEducation*, 587 F.3d at 299 (considering both Texas Rules and Model Rules).

Texas Rule and Model Rule 1.09(a) both state: "A lawyer who formerly represented a client in a matter shall not thereafter represent another person ***in the same or a substantially related matter*** in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." (emphasis added). A

lawyer's conflicts and knowledge of client confidences are imputed to all members of his or her firm. Texas Rule 1.10(a). Courts are to

> weigh the litigant's rights and the public interest, considering "whether a conflict (1) has the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case."

*Spencer v. BMW of N. America, LLC*, No. 5:14-CV-00869-DAE, 2015 WL 3936211, at *2 (W.D. Tex. June 26, 2015) (quoting *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001)).

## III. Analysis

Muddy Waters contends that Quinn Emanuel must be disqualified because the law firm represented it in a substantially related matter and received highly confidential information relevant to this case. TTI argues that Muddy Waters waived disqualification by delay; the representations are not substantially related; and none of its attorneys received any confidential information about Muddy Waters because the Quinn Emanuel attorney "who briefly represented Muddy Waters has never been a part of the TTI team nor consulted with it." Dkt. 65 at 2.

### A. Waiver

A party can waive a motion to disqualify by delaying its filing. *Wavetronix LLC v. Iteris, Inc.*, No. 1:24-CV-00190-DTG, 2024 WL 5708194, at *1 (W.D. Tex. July 22, 2024). "[W]hen considering an equitable defense based on waiver, the Court considers when the movant learned of the conflict, why the delay occurred, whether the motion was delayed for tactical reasons, and whether disqualification would result in prejudice to the nonmoving party." *Flowers v. Heard, McElroy & Vestal, L.L.C.*, 551 F. Supp. 3d 688, 702 (W.D. La. 2020) (citation omitted). Courts have found waiver based on delays similar to or shorter than the seventeen months that elapsed

between when TTI filed this case and Muddy Waters moved to disqualify. *See Microsoft Corp. v. Commonwealth Sci. & Indus.,* Nos. 6:06-CV-549 & 550, 2007 WL 4376104, at *9 (E.D. Tex. Dec.13, 2007) (two years), *aff'd*, 297 F. App'x 970 (Fed. Cir. 2008); *City of El Paso v. Salas-Porras Soule,* 6 F. Supp. 2d 616, 621 (W.D. Tex. 1998) (citing cases of one year to over two years); *Abney v. Wal-Mart,* 984 F. Supp. 526, 530 (E.D. Tex.1997) (one year to two-and-a-half years); *Buck v. Palmer*, 381 S.W.3d 525, 528 (Tex. 2012) (seven months).

TTI contends that Muddy Waters learned of the conflict when it was subpoenaed in May 2024 and waived disqualification by failing to file its motion as this case proceeded through mediation, briefing on Muddy Waters' motion to dismiss, and TTI's formulation of discovery requests. Muddy Waters points out that it raised the conflict issue just two months after this case was filed, stating in its first motion to dismiss: "Muddy Waters has not yet moved to disqualify Quinn Emanuel because the Court can dismiss TTI's lawsuit on the pleadings. However, should the case proceed further, Muddy Waters reserves its right to challenge Quinn Emanuel's continued representation of TTI based on its prior representation of Muddy Waters." Dkt. 23 at 18 n.6. Muddy Waters calls its motion as "sensibly timed" and cites Judge Ezra's characterization of the case as in the early stages of litigation in his order denying dismissal of the Amended Complaint (Dkt. 61) (sealed), given this timeline:

- February 20, 2025 – Complaint filed (Dkt. 1)
- April 22, 2025 – Muddy Waters move to dismiss Complaint (Dkt. 23)
- December 18, 2025 – Judge Ezra grants motion and dismisses case (Dkt. 38) (sealed)
- January 8, 2026 – TTI files Amended Complaint (Dkt. 39)
- January 22, 2026 – Muddy Waters moves to dismiss Amended Complaint (Dkt. 41)
- July 19, 2026 – Muddy Waters files motion to disqualify (Dkt. 56)
- July 31, 2026 – Judge Ezra denies motion to dismiss (Dkt. 61) (sealed)

In contrast to many cases finding waiver, Muddy Waters' delay in moving to disqualify is not unexplained. It argues that "moving to disqualify while a Rule 12 motion is pending and no discovery is being sought would be premature and a possible waste of the parties' and court's time and resources." Dkt. 71 at 10. While Muddy Waters certainly risked waiver by waiting to move to disqualify, its explanation that little happened in the case during the motion to dismiss stage is persuasive. It did not file "on the eve of trial" as no trial date is set. *Cinco Bayous, LLC v. Samson Expl., LLC*, No. 1:19-CV-452, 2020 WL 13533320, at *7 (E.D. Tex. Aug. 17, 2020). Nor does the motion to disqualify appear abusive or "used as a delaying tactic." *Vinewood Cap., LLC v. Dar Al-Maal Al-Islami Tr.*, No. 4:06-CV-316-Y, 2010 WL 1172947, at *8 (N.D. Tex. Mar. 25, 2010).

Although Muddy Waters learned of the conflict at least seventeen months before filing its motion, its explanation for the delay and lack of evidence that the delay was for tactical reasons weigh against waiver. Having carefully considered the facts and arguments presented, the Court finds that Muddy Waters did not waive its motion to disqualify.

**B. Substantial Relationship**

Cases involving prior representations are governed by the "substantial relationship" test:

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations.

*One World Foods, Inc. v. Stubb's Austin Rest. Co.*, No. A-15-CA-1071-SS, 2016 WL 6242121, at *5 (W.D. Tex. Oct. 25, 2016) (quoting *Am. Airlines*, 972 F.2d at 614). "The key is the substantial relationship test, which states that attorneys may not be adverse to a former client in 'the same or a substantially related matter.' But this does not prevent an attorney from ever being adverse to a former client." Dkt. 65 at 10 (quoting Tex. R. Prof. Cond. 1.09(a)).

The Court finds that Muddy Waters also has met its burden to show that this litigation is substantially related to Quinn Emanuel's prior representation of Muddy Waters and that it disclosed relevant confidential information to the firm. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1032 (5th Cir. Unit B 1981), *overruled on other grounds by Gibbs v. Paluk*, 742 F.2d 181 (5th Cir. 1984). Block states in his declaration:

> TTI's allegations against Muddy Waters, as framed and drafted by Quinn Emanuel attorneys, put at issue exactly the same business practices, relationships, and regulatory risks that Quinn Emanuel was retained to evaluate and defend and about which Muddy Waters and I gave Quinn Emanuel confidential information. In particular, the pleadings' allegations concerning outside researchers and contractual or profit-sharing arrangements concern subjects that Muddy Waters and I disclosed to and discussed with Quinn Emanuel in confidence during the DOJ and SEC representation.

Dkt. 56-1 ¶ 34.

TTI argues that information disclosed to Quinn Emanuel during the investigations relates to Muddy Waters' business generally, not Bonilla specifically, and so is insufficient under comment 3 to Texas Rule 1.09:

> In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation.

But Muddy Waters argues persuasively that the knowledge Quinn Emanuel gained is sufficient because TTI in this litigation is and attempting to prove an agency relationship with third parties like Bonilla and attacking its business model, the subject of the DOJ and SEC investigations. For example, TTI has subpoenaed for deposition Block, Brick, and others at Muddy Waters Burck interviewed in the previous representation.

The allegations in TTI's Amended Complaint also support a finding that some of its claims against Bonilla are grounded in Muddy Waters' business model. Unredacted allegations in support

of TTI's claim for partnership/joint venture liability include: "Under their partnership Agreement, Bonilla and Muddy Waters associated to carry on a business for profit: researching publicly traded companies and profiting from short-selling based on negative—and, as here, false and disparaging—research reports." Dkt. 39 ¶ 247. TTI alleges:

> Through a calculated pattern of behavior, Muddy Waters takes large short position and then orchestrates campaigns to drive down stock prices through the publication and promotion of false and damaging reports, which it knows will move markets. Operating through proxies to remain anonymous, Muddy Waters maximizes profits through these reports while remaining deep in the shadows, shielded from accountability. In this case, Muddy Waters partnered with Victor Bonilla to deploy its playbook against TTI . . . .
>
> When Muddy Waters publishes reports under its own name, Muddy Waters at least assumes public accountability for its claims. But Muddy Waters has developed a more insidious model: funding and directing anonymous third parties to publish false reports while concealing its financial stake and involvement altogether. This case arises from one such scheme.

Dkt. 39 ¶¶ 1-2. Muddy Waters has shown that TTI's claims are substantially related to Quinn Emanuel's representation during the DOJ and SEC investigations. *Cf. X Corp. v. Bright Data Ltd.*, No. C 23-03698 WHA, 2024 WL 3408220 (N.D. Cal. July 12, 2024) (disqualifying Quinn Emanuel when it had advised defendant on its business model from serving as counsel for plaintiff "in a suit designed to thwart the very same business model on behalf of a second social media platform"); *SC Innovations, Inc. v. Uber Techs., Inc.*, No. 18-cv-07440-JCS, 2019 WL 1959493 (N.D. Cal. May 2, 2019) (disqualifying Quinn Emanuel as counsel for plaintiff bringing antitrust claims against Uber, which firm had previously defended against such claims).

**C. Prejudice**

Finally, TTI argues that it would face severe prejudice from the disqualification of Quinn Emanuel, which also represents it in the Florida Action. TTI contends: "To retain another counsel—who would have to process the multi-year litigation history (including two years of

litigation against Muddy Waters), review discovery, and learn the relevant theories—would be enormously expensive, time consuming, and dilatory." Dkt. 65 at 20. Muddy Waters does not address these arguments in its reply brief, but argued at the hearing that TTI brought any prejudice on itself by counsel not withdrawing when informed of the conflict.[3] Muddy Waters also argued in reply that Quinn Emanuel should have withdrawn voluntarily, and that it had made clear when it moved to dismiss that "it would seek disqualification if the case proceeded past the pleading stage." Dkt. 71 at 2.

The Court finds that the prejudice to TTI arising from the need to replace its counsel at this early stage of the litigation is outweighed by the prejudice to Muddy Waters arising from Quinn Emanuel's prior representation. Discovery is just starting, and no trial date is set. The Court also finds that the appearance of impropriety and the likelihood of public suspicion from that appearance outweigh the interests served by the firm's continued participation. *Spencer*, 2015 WL 3936211, at *2.

## IV. Conclusion

For the reasons, the Court **GRANTS** Defendant Muddy Waters Capital LLC's Motion to Disqualify its Former Counsel (Dkt. 56).

In light of this ruling, the Court **DENIES AS MOOT** Defendants' Time-Sensitive Emergency Motion to Stay Discovery Pending Resolution of Motion to Disqualify Counsel (Dkt. 67).

**SIGNED** on September 4, 2026.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

[3] The parties agreed at the hearing that the Court's ruling on this motion will not affect the Florida Action.