UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TECHTRONIC INDUSTRIES COMPANY LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>MUDDY WATERS CAPITAL LLC and MW DOMINO MANAGEMENT LLC,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:25-cv-00249-DAE |

**DEFENDANT MUDDY WATERS CAPITAL LLC'S RESPONSE TO PLAINTIFF'S OBJECTION TO ORDER DISQUALIFYING QUINN EMANUEL**

TO THE HONORABLE DAVID A. EZRA:

Muddy Waters Capital LLC ("Muddy Waters") responds to Techtronic Industries Company Limited ("TTI")'s objection to Magistrate Judge Susan Hightower's disqualification order (ECF 81) and would respectfully show:

## I. Introduction and summary.

Judge Hightower correctly disqualified Quinn from pursuing this lawsuit against its former client, Muddy Waters. Quinn went directly from defending Muddy Waters' business practices, honesty, and third-party relationships in a government investigation to attacking those same things in this case as "sinister," "selfish," and "insidious." Quinn, quite literally, switched sides to argue that its former client's business is based on lying for profit with co-conspirators. Quinn's ethical duties are not measured in billable hours, and the hundreds of confidential Muddy Waters emails that remain on Quinn's computers to this day confirm the depth of its attorney-client relationship with Muddy Waters and its principals.

To obtain reversal, Quinn must show that the disqualification order is "clearly erroneous

or contrary to law," a highly deferential standard. Quinn does not identify a single misstatement of law or erroneous statement of fact in the Order. Rather, it simply asks this Court to draw a different conclusion from the evidence and arguments that Judge Hightower considered. Although Muddy Waters is confident this Court would reach the same conclusion if its review were *de novo*, a magistrate judge's non-dispositive order should not be reversed, even if the reviewing judge might reach a different conclusion.

TTI's objection rehashes two arguments Judge Hightower considered and rejected: (1) Quinn's representation of Muddy Waters was not "substantially related" to TTI's allegations in this case and (2) Muddy Waters should have moved to disqualify sooner. Neither argument warrants reversal.

First, TTI's Quinn-drafted Amended Complaint, with its full-throated assault on Muddy Waters' business model, honesty, and third-party relationships, shows that this matter is substantially related to Quinn's prior representation of Muddy Waters in a DOJ/SEC investigation into its research, publication, and trading practices – the practices TTI now calls "market manipulation." That investigation focused on Muddy Waters' relationships with outside researchers like Victor Bonilla, the basis for TTI's claim that Muddy Waters bears vicarious liability for Bonilla's reports. This Court has ruled that TTI has alleged facts which, if proven, could establish that vicarious liability, putting Quinn's prior representation of Muddy Waters directly at issue. Judge Hightower's conclusion that "TTI's claims are substantially related to Quinn Emanuel's representation during the DOJ and SEC investigations" is not contrary to law.

Second, Quinn's complaint that Muddy Waters should have filed its motion sooner ignores the specific facts of this case. Waiver of prior counsel's conflict is not measured in months, but in a case's progress and, as this Court recently noted, this case is in the "early stages of litigation."

Muddy Waters promptly and repeatedly put TTI on notice of Quinn's conflict and its intent to seek disqualification should the case survive Rule 12 dismissal. After filing suit in February 2025, TTI did nothing for ten months while this Court considered Defendants' motion to dismiss, which was granted on December 19, 2025. Then, other than a brief mediation, TTI again did nothing while this Court considered Defendants' motion to dismiss TTI's Amended Complaint until late March 2026, when Quinn began to demand discovery from its former clients. Because Quinn insisted on deposing its former clients before that motion was decided, Muddy Waters moved to disqualify Quinn to ensure that issue would be before the Court if TTI's Amended Complaint survived dismissal. After this Court ruled, Judge Hightower promptly took up and decided Muddy Waters' motion. No discovery has been taken; the scheduling order has been vacated; there is no trial setting; and TTI proffered no evidence that it suffered any actual prejudice from the sequence and timing of this Court's rulings. Judge Hightower's finding that Muddy Waters did not waive its motion to disqualify is not clearly erroneous.

## II. The standard of review.

This Court referred the disqualification motion to Judge Hightower on July 20, 2026. The parties thoroughly briefed the issues and submitted multiple exhibits. ECF 56, 56-1–12, 65, 65-1–14; 71. Judge Hightower held a hearing August 26, 2026, where she heard extensive argument and carefully questioned counsel. ECF 83. She then issued a 10-page ruling that systematically considered the parties' arguments and legal authorities. ECF 81 (the "Order").

A disqualification order is non-dispositive. *Davis v. CenturyLink, Inc.*, No. 3:22-CV-00038, 2023 WL 2401697, at *1 (S.D. Tex. Mar. 8, 2023). A district judge may reverse a magistrate judge's non-dispositive order only when the objecting party shows that the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Local Rule App'x

C, Rule 4(a). This standard is "highly deferential" and requires affirmance "unless on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *Gomez v. Ford Motor Co.*, No. 5:15-CV-866-DAE, 2017 WL 5201797, at *2 (W.D. Tex. Apr. 27, 2017). This standard "does not entitle the court to reverse or reconsider the order simply because it would or could decide the matter differently." *Id.* (quoting *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015)). The District Court cannot consider arguments or evidence that were not presented to the magistrate judge. *Moore v. Ford Motor Co.*, 755 F.3d 802, 808 & n.15 (5th Cir. 2014) (Rule 72a provides "no basis for the district court to [] receive[] additional evidence"); *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369–71 (5th Cir. 2024) (arguments not presented to magistrate judge waived). *See also Stanford v. Vida*, No. 1:25-CV-792-DAE, 2025 WL 2986147, at *3 (W.D. Tex. Oct. 22, 2025) (Ezra, J.) (declining to consider arguments and evidence first presented in objections to magistrate judge's R&R).

## III. The relevant facts and procedural history.

### A. Quinn's representation of Muddy Waters and Carson Block.

TTI's objection gives short shrift to the nature and scope of Quinn's representation of Muddy Waters, Block, and other Muddy Waters principals. It wrongly focuses on the number of hours Quinn billed, as if its ethical obligations are proportionate to the revenue it received.

Beginning late 2021, the DOJ and SEC investigated Muddy Waters in a broad inquiry into activist short sellers. ECF 56-1 ¶ 2. The government thoroughly examined Muddy Waters' business: its preparation and publication of research reports; the timing and reasons for its publications; its trading positions and history; its relationships with outside researchers. *Id.* Muddy Waters produced hundreds of thousands of confidential internal emails, chats, and attachments. *Id.* ¶ 24. While Muddy Waters retained Debevoise & Plimpton as primary counsel,

it wanted independent counsel to evaluate Debevoise's strategy, advise Muddy Waters and its principals, and participate in discussions and decisions about subpoenas responses, government communications, litigation risk, and media responses. ECF 56-1 ¶¶ 4-5. *Id.*

On January 3, 2022, a mutual acquaintance connected Block with Quinn partner Alex Spiro. ECF 56-1 ¶ 6. Spiro, who has appeared on filings in this case, referred Block to his partner, William Burck. *Id.* Before Block disclosed any confidential information, he had Burck confirm that Quinn had cleared conflicts. ECF 56-1 ¶¶ 7–8; ECF 56-2 at 2. Block relied on Burk's assurance when sharing confidential Muddy Waters information. ECF 56-1 ¶ 8.

Block, Freddy Brick, Scott Devinsky, and other Muddy Waters personnel had a conference call with Burck to discuss Quinn's representation. ECF 56-1 ¶ 9. During that call and later, Burck learned the scope of the DOJ/SEC investigation, Muddy Waters' business operations and organizational structure, its confidential research and publication process and history, its trading practices and history, and its relationships with outside researchers. *Id.* Quinn's engagement letter, signed January 25, 2022, retained it to represent Muddy Waters, related entities, and Block, Brick, and Devinsky personally. ECF 56-1 ¶ 13; ECF 56-5. Burck charged $2,030 per hour, and Quinn required a $100,000 retainer, which it agreed to return within thirty days of its final bill. ECF 56-9 at 1; ECF 56-5 at 8.

Quinn's representation was active and substantive. ECF 56-1 ¶ 15. Burck participated in at least nine strategy calls; received Debevoise's legal work; communicated with Block and other Muddy Waters personnel; reviewed written analyses and drafts; and advised his clients on subpoena responses, government communications, and media strategy. *Id*. Burck sent or received 560 emails that remain on Quinn's computers to this day. ECF 56-1 ¶¶ 16-17; ECF 65-1 ¶ 14.

The government investigation expanded in June 2022, delving into include Muddy Waters'

research, publications, and its relationships, communications, and arrangements with third-party researchers – the exact relationship between Muddy Waters and Bonilla on which TTI's "conspiracy to libel" claims are based. ECF 56-1 ¶¶ 19-20. Burck assisted Muddy Waters' response to new subpoenas and participated in multiple calls discussing the company's legal strategy. *Id.* ¶ 21; ECF 56-9. Muddy Waters disclosed to Quinn the companies and securities it had researched and shorted, how and where it traded, the timing and rationale for its publications and trading positions, and detailed confidential information about its third-party researchers like Bonilla. ECF 56-1 ¶¶ 20-23.

Muddy Waters contends that Quinn's representation continued until July 1, 2024, when Quinn sent an unsolicited email declaring the matter "ended," ECF 56-10, even though neither the DOJ nor SEC had said the investigation was over. Quinn claims its representation ended in late September 2022, sixty days after Burck last billed time on July 29, 2022, ECF 65-1 ¶ 15, even though Quinn kept Muddy Water's $100,000 retainer until July 2024. ECF 56-5 at 8. Judge Hightower did not need to resolve this dispute because Quinn was disqualified under the rules governing prior, not current, clients. ECF 81 at 3–5.

**B. TTI's contentions in this lawsuit.**

To prevail in this case, TTI must prove Muddy Waters' liability for Bonilla's reports. TTI alleges three vicarious liability theories: conspiracy, agency, and partnership. ECF 39 ¶¶ 149–266. All three theories depend on proving the nature of Muddy Waters' relationships with third-party researchers. In particular, to prove conspiracy, TTI must show that Muddy Waters and Bonilla agreed to publish false facts, and that Muddy Waters had this intent "at the inception of the combination or agreement." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 223 (Tex. 2017). TTI's Amended Complaint shows it intends to make that showing by

proving that Muddy Waters' business model is based on lying for profit and hiding behind outside researchers – not just the specifics of its relationship with Bonilla.

The Amended Complaint opens by claiming that "Muddy Waters has built a business model that depends on the destruction of corporate reputations, regardless of truth." ECF 39 ¶ 1. It claims, for instance, that Muddy Waters published "blatantly false" information about other companies in 2019 and June 2024. ECF 39 ¶¶ 39-40. Muddy Waters' business model, trading, research, and publications were the central focus of the DOJ/SEC investigation where Quinn represented Muddy Waters. ECF 56-1 ¶¶ 2, 20, 23, 27.

Quinn alleges that Muddy Waters started working with outside researchers like Bonilla due to a "looming regulator threat." ECF 39 ¶ 42. Quinn admits this alleged "regulator threat" refers to the very DOJ/SEC investigation where it represented Muddy Waters, ECF 65 at 14, directly injecting Quinn's prior representation of Muddy Waters into this case.

Quinn claims Muddy Waters created "insidious" arrangements with "anonymous third parties" to "publish false reports," and that Muddy Waters' contract with Bonilla is just "one such scheme" with "one such Muddy Waters partner." ECF 39 ¶¶ 2-4. Quinn claims Muddy Waters deploys "a sophisticated network of affiliates and partners to drive down stock prices" and contracted with Bonilla to deploy a pre-existing "playbook." *Id.* Quinn learned confidential details about these relationships when it represented Muddy Waters. ECF 56-1 ¶¶ 20, 23, 27.

In the DOJ/SEC matter, Quinn ***defended*** Muddy Waters' business, publications, and third-party agreements; here, Quinn ***attacks*** its former client, calling these practices "sinister" and "insidious:"

> 42. ***Perhaps owing to the looming regulator threat***, Muddy Waters also serves as ***an anonymous and sinister role*** supporting and profiting from smaller short sellers. In this ***innocuous sounding "balance sheet" arrangement***, Muddy Waters shorts a company based on a report from one of its activist researchers. . . . . Both parties win with publication

> regardless of the truth … . …
>
> 44. ***Under the insidious balance sheet arrangement***, Muddy Waters benefits from a decline in the stock price regardless of whether the allegations in the report are accurate or truthful; … ***This indifference to the truth is not accidental–it is Muddy Waters' conscious strategy to profit from market manipulation*** … .

ECF 39 ¶ 42. Quinn has been repeatedly disqualified for this ***exact*** type of side-switching.[1]

**C. This case's procedural history.**

TTI exaggerates the case's progress to date. Suit was filed February 20, 2025, and Defendants timely moved to dismiss on April 22, 2025, immediately flagging Quinn's conflict, explaining that it had not yet moved to disqualify Quinn because the Court could dismiss the case on the pleadings, and reserving its right to do so if the case proceeded. ECF 23 at 18 n.6. Quinn's claim that this notice was "ambiguous," ECF 85 at 12, is specious. Quinn had all the information it needed to recognize its conflict. Instead, it first denied, and then ignored, its prior representation of Muddy Waters. *See* ECF 29 at 7 n.4; Section IV.C.2.a, below.

While Defendants' motion to dismiss was pending, the parties submitted a proposed scheduling order, but for ***ten months*** TTI did nothing else: it did not request a Rule 26(f) conference, serve initial disclosures, seek discovery, file any motion, or take any other action before the Court dismissed its Complaint on December 18, 2025. After Quinn filed TTI's Amended Complaint, Defendants moved to dismiss, again noting Quinn's conflict and reserving Muddy Waters' right to seek Quinn's disqualification if the Amended Complaint survived. ECF 41 at 14 n.5.

---

[1] For example, in *X Corp. v. Bright Data, Ltd.*,

> [Quinn] advised a client on how to defend its business model against litigation brought by a social media platform only to turn around and sue the same client in a suit designed the thwart the very same business model on behalf of a second social media platform. This violated the law firm's duty of loyalty to the client and the law firm must be disqualified.

2024 WL 3408220, at *1 (N.D. Cal. 2024). *See also* ECF 56 at 2–3 (citing cases).

The parties held a brief mediation to satisfy the agreed scheduling order, but not until late March 2026 did TTI even try to serve written discovery, improperly emailing it without a Rule 5(b)(2)(E) agreement. ECF 85 at 5. Quinn also emailed six depositions notices without conferring as required by Local Rule AT-4(a), seeking to interrogate its former clients Muddy Waters, Block, Brick, and Devinsky. Reflecting a lack of attention belying its claim of "three years" work, Quinn noticed the deposition of Marcelo Gualda, whom Quinn long ago was told was dead. ECF 51 at 3, 5-6.

The parties agreed to extend the discovery deadlines, and after obtaining a Rule 5(b)(2)(E) agreement, TTI served written discovery on April 24, 2026. ECF 52-2 at 5. Muddy Waters timely objected and moved to stay discovery until the Court ruled on the pending motion to dismiss. ECF 51. Muddy Waters again noted Quinn's conflict and stated that it would seek Quinn's disqualification if the Amended Complaint survived dismissal. ECF 51 at 6-7.

Ignoring both pending motions, Quinn demanded immediate discovery. ECF 56-11. Muddy Waters promptly responded, again noted Quinn's conflict, and asked Quinn to await the Court's rulings, which could end the lawsuit and render discovery unnecessary. ECF 56-12. Quinn refused, so Muddy Waters moved to disqualify the firm on July 19. ECF 56. The Court referred the motion to Judge Hightower while it considered the pending motions to dismiss and stay discovery. Even then, with the disqualification motion referred for decision, Quinn demanded that Muddy Waters abandon its objections to Quinn's conflict and produce Quinn's former clients for deposition. ECF 85-2 at 4. Muddy Waters again asked Quinn, without success, to await the Court's rulings. *Id*. at 2-3.

Defendants' motion to dismiss was denied July 31, with this Court noting that the case was at an "early stage of litigation." ECF 61 at 30. Quinn continued to try to preempt the

disqualification motion by insisting on immediately taking its former clients' depositions, forcing Defendants to move for a temporary discovery stay and to quash Quinn's deposition notices until Judge Hightower could rule. ECF 67; ECF 75. Judge Hightower heard the motion to disqualify on August 26 and ruled on September 4. ECF 81.

## IV. Judge Hightower's Order is neither "contrary to law" nor "clearly erroneous."

### A. The Order correctly states the law.

Judge Hightower's Order correctly states the legal standards governing motions to disqualify, waiver, and the "substantial relationship" test. ECF 81 at 4-9. The Order cites the key Fifth Circuit cases and multiple decisions from this Court and others, including cases neither party cited, indicating independent research. *Id*. at 4-7. The Order cites two cases where Quinn was disqualified for impermissible "side switching." *Id*. at 9. TTI admits that the Order correctly states the applicable legal standards. ECF 85 at 9, 15.

Quinn's legal arguments against disqualification have reflected a fundamental misunderstanding of the ethics rules. There is no "big firm/small client" or "less than twenty billable hours" exception to Quinn's duties of confidentiality and loyalty. It cannot "wall off" lawyers to eliminate a conflict. The Texas Rules and Fifth Circuit precedent unequivocally provide that "ethical walls" are viable only ***after*** a conflicted lawyer has left a law firm. Both Texas Rule 1.10(a) and ABA Rule 1.10(a) provide that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so … ." Even Quinn does not claim that Burck could represent TTI in this case. Because Burck cannot, his law firm cannot.[2]

---

[2] Burck is no minor player: he is Quinn's Co-Managing Partner, ECF 65-1 ¶ 1 and, along with Alex Spiro (who referred Block to Burck for the DOJ/SEC investigation and who has appeared on filings in this case), co-chairs Quinn's Investigations, Government Enforcement and White Collar Criminal Defense Group.

An "attorney's knowledge is ***imputed by law*** to every other attorney in the firm," and there is "***an irrebuttable presumption*** that an attorney in a law firm has access to the confidences of the clients and former clients of other attorneys in the firm." *Nat'l Med. Enterprises, Inc. v. Godbey*, 924 S.W.2d 123, 131 (Tex. 1996) (emphasis added). "[T]he personal conflicts of one attorney are imputed to all other members of a firm" until the disqualified lawyer leaves the firm. *In re ProEducation Intern., Inc.*, 587 F.3d 296, 299 (5th Cir. 2009). Every lawyer – even those in big firms – is "vicariously bound by the obligation of loyalty owed by the other lawyers with whom the lawyer is associated." Texas Rule 1.10, comment 1. "***Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.***" *In re American Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992) (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953)) (emphasis added by Fifth Circuit). Quinn ***knows*** "[s]creening lawyers or offices is no fix," because a federal court told it so in *X Corp. v. Bright Data LTD.*, 2024 WL 3408220, at *9 (N.D. Cal. Jul. 12, 2024). Judge Hightower correctly applied this rule. ECF 81 at 9 (noting that Quinn was disqualified in *X Corp.* because "it had advised defendant on its business model from serving as counsel for plaintiff 'in a suit designed to thwart the very same business model on behalf of a second social media platform'"). Judge Hightower's Order is not "contrary to law."

**B. The Order correctly states the facts.**

The Order also correctly states the relevant facts: the nature of TTI's claims against Muddy Waters, the nature of Quinn's representation of Muddy Waters, and the procedural history of this case. ECF 81 at 1-3, 8-10. TTI does not claim that the Order misstates any material facts, let alone that the Order's statement is "clearly erroneous." ECF 85 at 1-20. The uncontested facts are more than sufficient to support the Order's conclusions measured against its correctly stated legal

standards. This Court can, and should, affirm the Order on this basis alone, because Quinn's "objection" simply asks this Court to second-guess a magistrate judge's application of uncontested facts to correctly stated law and reach a different conclusion, which is improper. *Gomez*, 2017 WL 5201797, at *2 (W.D. Tex. Apr. 27, 2017) (district could is not entitled to reverse magistrate judge's non-dispositive order "simply because it would or could decide the matter differently").

### C. Quinn simply wants the Court to reach a different conclusion than Judge Hightower reached after careful consideration of the law and facts.

#### 1. TTI's Amended Complaint conclusively shows this lawsuit is substantially related to Quinn's representation of Muddy Waters.

Quinn's objection to Judge Hightower's finding that its representation of Muddy Waters is substantially related to TTI's claims in this lawsuit merely repeats arguments made to, and rejected by, Judge Hightower.

After correctly stating the legal standard and reviewing the salient facts, Judge Hightower found that "this litigation is substantially related to Quinn Emanuel's prior representation of Muddy Waters," where the company "disclosed relevant confidential information to the firm." ECF 81 at 8. Supporting that conclusion, the Order cites Block's detailed declaration, which compares TTI's allegations with the confidential information he had personally disclosed to Quinn during the DOJ/SEC investigation, explaining that "the pleadings' allegations concerning outside researchers and contractual or profit-sharing arrangements concern subjects" that were "disclosed to and discussed with Quinn Emanuel in confidence during the DOJ and SEC representation." ECF 81 at 8 (quoting ECF 56-1 ¶ 34). The Order correctly rejected Quinn's claim that this was just "general business information" because the information is specifically related to TTI's allegations in this case: "TTI in this litigation is attempting to prove an agency relationship with third parties like Bonilla and attacking [Muddy Waters'] business model, the subject of the DOJ

and SEC investigation." ECF 81 at 8. The Order noted that TTI has subpoenaed Quinn's former clients Block and Brick "and others at Muddy Waters Burck interviewed in the previous representation." *Id*. TTI's written discovery requests likewise reach into that representation. ECF 71 at 5-6; *see* n. 3, below.

This Court's decision in *Finalrod IP, LLC v. John Crane, Inc.*, 2016 WL 866930, at *5 (W.D. Tex. Mar. 3, 2016), cited by Quinn, is inapposite. There, the challenged law firm had assisted an inventor in a patent application and drafted an assignment of the patent, but the infringement action it was hired to defend did not involve the patent's validity. *Id*. at * 5 (noting that "validity and infringement are distinct issues"). Further, any confidential information the firm may have received about the patent had become public. *Id.* at *6. In contrast, Muddy Waters identified in detail the confidential information disclosed to Quinn, information that remains confidential and in Quinn's possession. ECF 56-1 ¶¶ 22–23, 34. TTI's Amended Complaint, which alleges that Muddy Waters' business model is conspiring with third-party researchers like Bonilla to defame public companies and evade scrutiny, substantially overlaps with the DOJ/SEC's investigation. This Court's recent ruling that the Amended Complaint states facts that, if proven, could support Muddy Waters' vicarious liability for publications by outside researchers ties the DOJ/SEC matter even closer to TTI's claims here. ECF 39 ¶¶ 248-52, 258-62. Judge Hightower recognized this connection, noting that TTI's claims "are grounded in Muddy Waters' business model" and attempt to impose partnership/joint venture liability on Muddy Waters by citing not just its relationship with Bonilla, but also its purported "calculated pattern of behavior" of operating "through proxies to remain anonymous" to be "shielded from accountability." ECF 81 at 9 (quoting ECF 39 ¶¶ 1-2). The Order notes that TTI's complaint alleges that Muddy Waters had a preexisting "playbook" that it purportedly "partnered with Victor Bonilla to deploy … ." *Id.*

(quoting ECF 39 ¶¶ 1-2). The Order's conclusion that "Muddy Waters has shown that TTI's claims are substantially related to Quinn Emanuel's representation during the DOJ and SEC investigations" is supported by two prior cases where Quinn was disqualified for similar "side-switching" to sue its former clients. ECF 81 at 9.

Quinn now calls its virulent attacks on Muddy Waters' "surplusage," ECF 85 at 16-17, but studiously avoids claiming it will not make those accusations at trial. These attacks are central to TTI's claims, not "surplusage." The Amended Complaint spends ***eleven pages*** attacking Muddy Waters' business model, publications, and history before even turning to Bonilla's TTI reports. ECF 39 ¶¶ 1-44. TTI's discovery requests, which seek documents about ***all*** Muddy Waters' third-party researchers, not just Bonilla, confirm the breadth of TTI and Quinn's planned attack on Muddy Waters' business practices, not just its relationship with Bonilla.[3]

**2. Judge Hightower's conclusion that Muddy Waters did not waive Quinn's conflict is correct and amply supported by the record.**

**a. Quinn was ethically *required* to withdraw.**

It is not a client's job to police a law firm's ethical duties. Rather, our self-regulating profession "***depends primarily upon understanding and voluntary compliance*** … ." Tex. Disciplinary R. Prof. Conduct, Preamble ¶ 11 (emphasis added) ("Texas Rules"). The rules ***mandate*** withdrawal when a conflict arises:

> If a lawyer has accepted representation in violation of this Rule, or if multiple representation properly accepted becomes improper under this Rule, ***the lawyer <u>shall</u> promptly withdraw*** from one or more representations to the extent necessary for any remaining representation not to be in violation of these Rules.

[3] Quinn demanded ***all*** documents related to ***all*** such third-party relationships that existed during and were the subject of the DOJ/SEC investigation. ECF 56-1 ¶ 2. Quinn fundamentally misses the point by arguing that Muddy Waters should object to these requests as overbroad, not cite them as grounds for disqualification. ECF 85 at 17 n.1. The discovery requests show the scope of TTI's legal theory – that Muddy Waters' business practices and relationships with third-party researchers prove Muddy Waters' pre-existing intent to libel TTI. When challenged, TTI did not drop these requests, but instead moved to compel answers. ECF 69.

Texas Rule 1.06(e) (emphasis added). A proper pre-suit conflict check should have alerted Quinn to its conflict. Muddy Waters notified Quinn that it objected to this conflict a year and a half ago and multiple times after.

Quinn should have complied with Texas Rule 1.06(e) and voluntarily withdrawn in April 2025. Instead, it called Muddy Waters' objection "inflammatory" and falsely told this Court that it had only represented Carson Block "personally" in a matter with "different facts" and "different parties," ECF 29 at 7 n.4, ***not*** that it had represented Block in his ***business*** dealings and had cited the ***exact*** subject of that representation in TTI's complaint. Quinn falsely assured this Court that "***Muddy Waters has never been a Quinn Emanuel client***," *id.* (emphasis added), even though Muddy Waters was named first among Quinn's clients in the firm's retention agreement and paid Quinn's retainer and invoices. ECF 56-1 ¶ 30. Even if Quinn's conflict system had failed, Quinn knew for certain its statements to this Court were false after Defendants filed a digital excerpt of Quinn's retention agreement on June 13, 2025. ECF 35 at 3 n.1. Quinn did not correct its misstatement, as required, *see* Texas Rule 3.03(b), Quinn only begrudgingly admitted to an "inadvertent error" more than a year later, but never explained how it supposedly did not know who its clients were. ECF 65 at 3 n.1.

Quinn had multiple chances to follow Texas Rule 1.06(c) but instead forced Muddy Waters to file a disqualification motion, gambling on obtaining a waiver from its ethical duties in court.

**b. There was no "tactical delay."**

Contrary to TTI's suggestion, Judge Hightower did not overlook the timing of Muddy Waters' motion to disqualify. She considered that timing, TTI's arguments, and found Muddy Waters' explanation "persuasive," with no "evidence that the delay was for tactical reasons." ECF

81 at 5-7. Quinn has not shown that conclusion is "clearly erroneous;" it just wants this Court to draw a different inference from the same series of events.

Waiver is the "intentional relinquishment or abandonment of a known right." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Rather than intentionally relinquish its rights, Muddy Waters immediately identified Quinn's conflict and renewed its objection multiple times, expressly ***reserving*** its rights. ECF 23 at 18 n.6; ECF 41 at 14 n.5; ECF 51 at 7. TTI knew of Muddy Waters' objection and the exact basis of Quinn's conflict, and it knowingly assumed the risk of proceeding with conflicted counsel. Waiver is not about counting months. It requires examining what occurred before the disqualification motion was filed (extended somnolence by TTI and Quinn), the reason for waiting (pending dispositive motions), and whether a party gained a tactical advantage. TTI identifies so such advantage – other than Muddy Waters' sensible (and fully justified, given Judge Hightower's ruling) objection to being deposed by its former counsel in a substantially related matter. [4]

Muddy Waters' conduct was entirely consistent with how this Court has proceeded. The Defendants' initial Rule 12 motion was granted; a disqualification motion filed before then would have been moot. The Defendants' motion to dismiss TTI's Amended Complaint was still pending when Muddy Waters filed its motion to disqualify, allowing the Court to take disqualification up

[4] TTI's argument that Muddy Waters "waived" this conflict by not seeking Quinn's disqualification in the Florida lawsuit is baseless. None of Quinn's Muddy Waters clients were defendants in that lawsuit, and Quinn itself describes that non-party discovery as "more circumscribed" and "narrowly tailored" for the Florida lawsuit against Bonilla. ECF 52 at 8. TTI's reliance on *Selby v. Revlon Consumer Prods. Corp.*, 6 F. Supp. 2d 577, 581-82 (N.D. Tex. 1997), is misplaced. *Selby* says that a nonparty former client *may* invoke Rule 1.9 to prevent its former lawyer from taking its deposition. But it says nothing about waiver, and it does not hold that a nonparty *must* litigate counsel's disqualification in someone else's lawsuit to preserve its right to object when its former lawyers sue it. TTI also tries to support its objection with a new declaration that it did not present to Judge Hightower. ECF 85-1. This is improper. *Moore*, 755 F.3d at 808 & n.15. Even if TTI's belated proffer is considered, it relates to non-party discovery in the Florida lawsuit, long before this case was filed. ECF 85-1. It provides no evidence of "tactical" delay in moving to disqualify Quinn in this lawsuit.

immediately after ruling on the motion to dismiss, which is exactly what happened. In *Gehring v. San Antonio Police Department*, this Court first considered a motion to dismiss, granted it, and then denied a pending motion to disqualify as moot. No. 5:14-CV-00545-DAE, 2015 WL 225064 (W.D. Tex. Jan. 15, 2015). In *Doe v. Spillman Ranch Homes, LP*, this Court took up a summary judgment motion, granted it, and denied a pending motion to disqualify as moot. No. 1:23-CV-01525-DAE, 2025 WL 1672385 (W.D. Tex. June 12, 2025). Those decisions confirm that, as Judge Hightower found, Muddy Waters was taking a reasonable position by first giving the Court time to resolve dispositive motions before burdening the Court with a potentially unnecessary motion to disqualify.

Quinn complains that Muddy Waters did not immediately move to disqualify when it began demanding discovery in late March 2026. ECF 85 at 9, 12-13. But TTI's discovery was not properly served until late April, and Muddy Waters timely objected and moved to stay discovery, flagging – for the third time – Quinn's conflict and its intent to seek disqualification if the pending motion to dismiss was denied. ECF 51 at 7. Quinn calls this a "pretext," but that makes no sense; once Quinn forced Muddy Waters' hand by insisting on taking its former clients' depositions, Muddy Waters promptly filed the motion to disqualify that Quinn knew was coming. ECF 56. Muddy Waters' resistance to adversarial discovery conducted by its former counsel in a matter substantially related to a prior representation shows ***diligence***, not delay. As the Order notes, Quinn's waiver argument relied on cases where a party had sandbagged its opponent by not raising disqualification until ***after*** discovery had been taken or even right before trial. ECF 81 at 7. The opposite is true here.

Finally, TTI's objection cites an unpublished Georgia case that it did not present to Judge Hightower, *Holiday Hospitality Franchising LLC v. North Riverfront Marina & Hotel, LLLP*, 1:21-

CV-2584-TWT, 2022 WL 22980079 (N.D. Ga. July 7, 2022). This Court should not reverse based on arguments not made below. *Shambaugh & Son, L.P.*, 91 F.4th at 369-71 (5th Cir. 2024) (arguments not presented to magistrate judge waived). But even if this Court considers *Holiday Hospitality*, it would not apply, because in that case the defendant moved to disqualify ***after*** the court had denied a dispositive motion. *Holiday Hospitality*, 2022 WL 22980079, at *3. Here, Muddy Waters prevailed on its motion to dismiss TTI's Original Complaint and moved to disqualify Quinn while its motion to dismiss the Amended Complaint was pending.[5] The question is not whether Muddy Waters could have filed sooner, but whether Judge Hightower's ruling that Muddy Waters did not engage in improper tactical delay is "clearly erroneous." It is not.

**c. Muddy Waters demonstrated prejudice; TTI did not.**

TTI argued that replacing Quinn would impose undefined expense and delay, ECF 81 at 9-10, but that is the inevitable consequence of retaining a conflicted law firm. Judge Hightower found, after considering the parties' relative burden, that the harm to Muddy Waters from being sued by its former law firm in a substantially related matter outweighed TTI's claimed prejudice. *Id.* at 10. TTI relied on argument, not evidence, in claiming that replacing counsel would be too costly for a $14 billion company. TTI's claim that it will lose "three years" of work is vastly overblown. This case has been pending for less than two years, not three; there is no trial date or scheduling order in place; discovery has not begun; Quinn did virtually no work in this case for

[5] Nor does another case that TTI did not cite to Judge Hightower, *Trans. Realty Investors, Inc. v. Moos*, 2026 WL 2168728 (N.D. Tex. July 28, 2026), infer tactical delay from elapsed time alone. There, the disqualification question was not "side switching," as here, but rather opposing counsel having improperly obtaining privileged documents. *Id*. at *3. The objecting party continued litigating in other pending cases and spent three months arranging to complete a deposition they later sought to stop. They then challenged the deposition on grounds unrelated to the alleged misuse of privileged information and moved to disqualify only after the court denied their request for a temporary restraining order. *Moos* turned on delay plus conduct contradicting the movants' asserted reason for delay. Here, Muddy Waters consistently objected to Quinn's conflict and filed its disqualification motion in time for the Court to address it immediately after its decision on the motion to dismiss TTI's Amended Complaint.

more than a year after filing it; the Order has no impact on the Florida case; and TTI can use the third-party discovery it took from Muddy Waters in that case. ECF 81 at 10 n.3. Quinn's lack of serious attention to this case, even through late April 2026, is shown by its attempt to depose a dead man – its counsel had not even bothered to read Block's deposition from the Florida case before issuing deposition notices.

Unlike TTI, Muddy Waters identified, in detail, the prejudice it faces from being sued by its former law firm. Quinn obtained voluminous confidential information from Muddy Waters during the DOJ/SEC investigation. ECF 56-1 ¶¶ 20-23, 28. Every Quinn attorney, not just Burck, is irrebuttably presumed to know that confidential information and was poised to use that information against Muddy Waters in this suit. *Nat'l Med. Enterprises, Inc. v. Godbey*, 924 S.W.2d 123, 131 (Tex. 1996). The Northern District of California got it right: "Quinn is Quinn." *X Corp. v. Bright Data Ltd.*, 2024 WL 3408220, at *9 (N.D. Cal. Jul. 12, 2024). Quinn's inexplicable insistence on taking its former clients' depositions before Judge Hightower could rule on Muddy Waters' disqualification motion only reinforces this concern.

TTI's Quinn-drafted Amended Complaint is hellbent on proving that Muddy Waters is a "selfish," "sinister," "insidious" business built on publishing lies for profit that faces "looming regulator threat" from the DOJ and SEC. Even though, as TTI and Quinn know, that investigation found no wrongdoing by Muddy Waters whatsoever, they insisted on injecting it into this lawsuit to support their "conspiracy to libel" theory. How are Muddy Waters and Block supposed to respond to these charges before a jury, assuming the case gets that far?

Does Block tell the jury that he hired a top law firm, Quinn, to respond to that "looming regulator threat" and thus bolster Quinn in the jury's eyes? Does he tell the jury that, contrary to Quinn's insinuations, that "threat" is now gone, due in part due to Quinn's work? Does he call

Quinn partner William Burck to confirm that the "looming" threat went nowhere? Will the jury believe Block, or will it infer that Quinn would not be suing its former client unless it knew that Muddy Waters and Block are, indeed, "selfish" and "sinister" and that their relationship with Bonilla is "insidious"? Or, to avoid these dilemmas, will Muddy Waters have to hide the fact that it hired Quinn to confirm that its business is legitimate? In short, how can Muddy Waters possibly rebut ***its own law firm's accusation that its business is supposedly built on lying for profit with "co-conspirators" like Bonilla?***

Judge Hightower recognized the severe trial prejudice Muddy Waters would face defending itself against its own law firm and her concluded that it outweighed any prejudice to TTI from the need to replace its counsel "at this early stage of the litigation." ECF 81 at 10. She recognized that TTI assumed the risk of disqualification, having been repeatedly put on notice of Quinn's conflict. ECF 81 at 10. Finally, she recognized, as has this Court, "that the appearance of impropriety and the likelihood of public suspicion from that appearance outweigh the interests served by the firm's continued participation." *Id*. (citing *Spencer*, 2015 WL 3936211, at *2). This Court should not disturb that well-considered ruling because it is neither contrary to law nor clearly erroneous.

**V. Conclusion.**

For these reasons, the Court should overrule TTI's objections to the disqualification order.

Respectfully submitted,

*/s/ Peter D. Kennedy*

Peter D. Kennedy
Texas Bar No. 11296650
pkennedy@gdhm.com
G. Douglas Kilday
Texas Bar No. 00787834
dkilday@gdhm.com
Hailey L. Suggs
Texas Bar No. 24113497
hsuggs@gdhm.com
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Ave., Suite 2700
Austin, Texas 78701
(512) 480-5764 (Phone)
(512) 536-9908 (Fax)

David S. Korzenik
(admitted pro hac vice)
dkorzenik@mkslex.com
Miller Korzenik Rayman LLP
The Paramount Building
1501 Broadway, Suite 2015
New York, NY 10036
(212) 752-9200 (Phone)
(212) 688-3996 (Fax)

**Counsel for Defendants**

**Certificate of Service**

On October 6, 2026, I caused a copy of this document to be served by the Electronic Case Filing System as shown below.

Asher B. Griffin
Quinn Emanuel Urquhart & Sullivan LLP
300 West 6th Street, 2010
Austin, Texas 78701

Jason Sternberg
Laura N. Ferguson
Quinn Emanuel Urquhart & Sullivan LLP
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133

Kristin Tahler
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

Nicholas Inns
Quinn Emanuel Urquhart & Sullivan LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005

*/s/ Peter D. Kennedy*
Peter D. Kennedy