**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| TECHTRONIC INDUSTRIES CO. LIMITED,<br><br>Plaintiff,<br><br>– against –<br><br>MUDDY WATERS CAPITAL LLC, and MW DOMINO MANAGEMENT LLC,<br><br>Defendants. | Case No. 1:25-cv-00249-DAE |

**TTI'S REPLY IN SUPPORT OF OBJECTION TO MAGISTRATE JUDGE'S ORDER DISQUALIFYING QUINN EMANUEL**

TTI's Objection (ECF 85 ("Objection")) identified two errors in the Order (ECF 81 ("Order")), each independently requiring reversal: the Order excused Muddy Waters' tactical delay in moving for disqualification, and it found a substantial relationship without the specific showing the law requires. Muddy Waters' Response (ECF 90 ("Response")) does little to answer either error beyond urging deference. Instead of supplying the specificity the Order failed to demand, it again resorts to labels, calling this case "side-switching" and invoking Muddy Waters' "business model." But no label can change that Muddy Waters held its disqualification theory in reserve for at least 17 months, invoking it only when it had exhausted every other play to avoid discovery. Far from rehabilitating the Order, the Response confirms why it should be set aside.

First, the Response defends the Order's waiver ruling with the same footnotes and unsupported judicial economy rationale that led the Order astray. Muddy Waters insists that waiver "is not about counting months," but it is about diligence. Rather than present its conflict theory for resolution, it briefed two dispositive motions and moved for disqualification only after exhausting its other discovery-avoidance tactics. Nor do its footnotes change that calculus, as they never mentioned a substantial relationship or offered TTI or the Court any means of resolving the issue. Flagging an alleged conflict in passing while deliberately declining to litigate it does not preserve a disqualification motion; it is the gamesmanship that waiver doctrine exists to prevent. Tellingly, neither the Response nor the Order identifies a single case supporting Muddy Waters' footnote defense or excusing a delay of this length.

Second, the Response defends the Order's substantial relationship ruling by describing both matters so broadly that the distinctions the law requires disappear. Muddy Waters bears the burden of specifically delineating the issues and claims common to both representations, yet after three briefs it still points only to its business model, its publications, and its relationships with

researchers in general. That is the kind of general knowledge of an organizational client's policies and practices that ordinarily does not preclude a later representation. Quinn Emanuel's sole partner who worked on the investigations matter billed his last hour to Muddy Waters in July 2022, before Muddy Waters and Bonilla signed the September 2022 agreement from which every claim in this case arises. Muddy Waters' hyperbole falls far short of justifying the Order's erroneous acceptance of generic overlap in place of the specific showing the law requires. The Order should be set aside.

## ARGUMENT

The Order should be set aside under Federal Rule of Civil Procedure 72(a) because it misapplied the governing law on both issues before it, excusing a tactical delay that the governing standard treats as waiver, and finding a substantial relationship without holding Muddy Waters to its burden of specificity. Where any part of the Order is "clearly erroneous or contrary to the law," the Court "must modify or overturn" that part of the Order. *Lower48 IP LLC v. Shopify, Inc.*, 2023 WL 11893431, at *2 (W.D. Tex. Nov. 2, 2023). The Order also lacks the detailed findings that must support any disqualification. *See, e.g.*, *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1033 (5th Cir. 1981). The Court should set aside the Order and deny Muddy Waters' motion.

### A. The Order Erroneously Found That Muddy Waters Did Not Waive Its Disqualification Motion By Tactically Delaying The Motion

Muddy Waters does not dispute that it waited 28 months from first learning that Quinn Emanuel, on behalf of TTI, was pursuing claims related to its relationship with Bonilla, and 17 months after TTI filed this lawsuit before bringing its motion to disqualify. Muddy Waters instead offers two justifications for its delay and for the Order's ruling that it did not waive this motion: (1) that fully briefing multiple dispositive motions would avoid "burdening the Court with a potentially unnecessary motion to disqualify" (Response at 17), and (2) that it "expressly

reserv[ed] its rights" to move to disqualify by including one footnote each in its motions to dismiss (Response at 16). Neither reason excuses the delay, and the Order erred in crediting both.

i. **Muddy Waters waived its motion to disqualify by tactically delaying that motion to proceed with dispositive motions and delaying discovery.**

Muddy Waters asserts that the Order correctly concluded that Muddy Waters' explanation for its delay was "persuasive" and showed no "evidence that the delay was for tactical reasons." Response at 15-16. Not so. Muddy Waters delayed filing its motion to disqualify for at least 17 months after the start of this case, and 28 months after it was on notice of an alleged conflict, using every strategy possible to delay and evade discovery. *See* Objection at 9-11. The Order misapplied the law to these facts, leading to the clearly erroneous finding that there was no tactical delay.

Instead of addressing these detailed circumstances of its delay tactics, Muddy Waters generically asserts that "[w]aiver is not about counting months." Response at 16. But as the Order noted, "[c]ourts have found waiver based on delays similar to or shorter than the seventeen months that elapsed" here. Order at 5-6. "When a party waits a year or more to file a motion to disqualify, federal courts often find that he is engaged in precisely the kind of dilatory tactic, designed to prejudice his opponent, that constitutes waiver." *Transcon. Realty Invs., Inc. v. Moos*, 839 F. Supp. 3d 515, 531-32 (N.D. Tex. 2026) (internal citations omitted). Neither the Order nor Muddy Waters cites a single case finding a lack of waiver after a delay of this length. As TTI's Objection explained, and as the Order agrees, the cases finding waiver establish the opposite. Objection at 11-12; Order at 5-6. *See Microsoft Corp. v. Commonwealth Sci. & Indus. Rsch. Org.*, 2007 WL 4376104, at *9 (E.D. Tex. Dec. 13, 2007) (two years); *City of El Paso v. Salas-Porras Soule*, 6 F. Supp. 2d 616, 621 (W.D. Tex. 1998) (citing cases of one year to over two years); *Abney v. Wal-Mart*, 984 F. Supp. 526, 530 (E.D. Tex. 1997) (one year to over two-and-a-half years); *Buck v. Palmer*, 381 S.W.3d 525, 528 (Tex. 2012) (seven months).

Muddy Waters' efforts to distinguish the authority finding waiver fare no better. First, Muddy Waters attempts to distinguish *Holiday Hospitality Franchising LLC v. North Riverfront Marina & Hotel, LLLP* on the basis that the motion for disqualification was filed after the motion to dismiss was denied. *See* Response at 17-18.[1] This is no distinction at all: Muddy Waters filed its motion to disqualify less than two weeks before its motion to dismiss was denied. *See* ECF 56; ECF 61. Further, Muddy Waters' attempted distinction confirms that waiver is appropriate here. In *Holiday Hospitality*, the court rejected the "strategic decision" to delay filing a disqualification motion until after a "potentially case-dispositive motion is ruled on." 2022 WL 22980079, at *3 (N.D. Ga. July 7, 2022). Muddy Waters made such a strategic decision, delaying its motion until it had fully briefed not one, but ***two***, case-dispositive motions (*see* ECF 23, 41)—17 months after TTI filed this case.

Second, Muddy Waters' only other attempt to differentiate a case cited by TTI, *Moos*, 839 F. Supp. 3d at 533 (Response at 18 n.5), also fails. In *Moos*, the court held that the movant had waived disqualification by filing after 18 months only when its temporary restraining order had been denied. *Id.* at 533. Where the movant "flagged the potential ethical issue but held onto it and did nothing for more than a year," the facts "point more strongly in the direction of dilatory tactics than they do toward a genuine effort to preserve client privileges." *Id*. Muddy Waters' argument that the *Moos* court did not "infer tactical delay from elapsed time alone" (Response at 18 n.5) is beside the point. In *Moos*, as Muddy Waters admits, the court found waiver because of "delay plus

---

[1] Muddy Waters asserts that the Court cannot consider *Holiday Hospitality* because TTI did not cite the case in its Opposition before the Magistrate Judge. Response at 17-18. But Muddy Waters' authorities support only the proposition that ***arguments*** not presented to the Magistrate Judge are waived. Response at 17-18 (citing *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369-71 (5th Cir. 2024)). Here, TTI has consistently argued that Muddy Waters waived its motion to disqualify by first filing its motions to dismiss. *See, e.g.*, ECF 65 at 12-13.

conduct contradicting the movants' asserted reason for delay." Response at 18 n.5. The same is true here: Muddy Waters engaged in years of tactical discovery delays. In failing to consider the circumstances of Muddy Waters' pattern of tactical discovery evasion and instead crediting Muddy Waters' baldly asserted judicial economy rationale, the Order clearly erred.

The two cases Muddy Waters affirmatively offers in support of its position likewise fail. Response at 16-17. Muddy Waters argues those cases "confirm" that its tactical decision to delay filing its disqualification motion and instead to file dispositive motions did not constitute waiver. *Id*. at 17. They do no such thing. In fact, in neither case was a conflict or a waiver even at issue. In both cases, a pro se plaintiff requested that opposing counsel be removed because of alleged misrepresentations, not because of an alleged conflict. In one case, a plaintiff asked the court to "order an immediate correction of the record" and sanction opposing counsel for alleged "instances of misrepresentation and omission." *See* Motion to Disqualify, *Doe v. Spillman Ranch Homes, LP,* Case No. 1:23-cv-01525-DAE (W.D. Tex. Apr. 2, 2025), ECF 68. And in the other, a plaintiff asked the court to "dismiss" opposing counsel, alleging that "defense council repeatedly [] misquote[ed] plaintiff's motion to the point of prejudic[e]." Motion to Dismiss Defense Council, *Gehring v. San Antonio Police Dep't,* Case No. 5:14-cv-00545-DAE (W.D. Tex. Oct. 14, 2014), ECF 6. In each case, the Court granted the defendant's dispositive motion and then denied the motions to disqualify based on opposing counsel's alleged misrepresentations as moot. *Doe v. Spillman Ranch Homes, LP*, 2025 WL 1672385, at *5 (W.D. Tex. June 12, 2025); *Gehring v. San Antonio Police Dep't*, 2015 WL 225064, at *3 (W.D. Tex. Jan. 15, 2015). Contrary to Muddy Waters' representations, in neither case did the Court sanction Muddy Waters' tactical approach of delaying a motion to disqualify by choosing to file a dispositive motion first.

Muddy Waters' three briefs on this issue have failed to identify even a single case

endorsing its 17-month delay or its proffered judicial economy justification for that delay. The Order's acceptance of those arguments was contrary to law and should be reversed.

#### ii. Muddy Waters did not preserve its motion to disqualify by referencing potentially confidential information in footnotes.

Muddy Waters next seeks to excuse its tactical delay by asserting that TTI was "on notice of Quinn's conflict and [Muddy Waters'] intent to seek disqualification," pointing to a single footnote in each of its motions to dismiss (ECF 23 at 18 n.6; ECF 41 at 14 n.5), and a passing mention in its motion to stay discovery (ECF 51 at 6-7). Response at 2-3, 8-9, 16-17. None of Muddy Waters' vague, nonactionable notes save it, and to the extent the Order credited them, it clearly erred.

First, the references were too vague to preserve anything, alluding to unspecified confidential information, identifying no basis for a conflict beyond the prior representation, and never mentioning the substantial relationship test. Objection at 13. For example, the footnote in Muddy Waters' first motion to dismiss stated only that the prior representation "involved detailed inquiries into Muddy Waters' business model, during which it disclosed highly confidential information to Quinn Emanuel" and that "Muddy Waters reserve[d] its right to challenge Quinn Emanuel's continued representation of TTI." ECF 23 at 18 n.6. "[M]erely voicing an objection to opposing counsel does not suffice for preservation purposes." *Holiday Hosp.*, 2022 WL 22980079, at *3 (internal citations omitted). Neither the Order nor Muddy Waters cites any authority to the contrary. For good reason: A contrary rule would allow any party to defer a disqualification motion indefinitely by mentioning a potential conflict in passing, leaving its adversary to litigate and invest in its case under a threat that can be deployed whenever it becomes tactically advantageous, which is exactly the result waiver doctrine is designed to foreclose.

Second, even if they served any notice function, the footnotes left TTI in an impossible

position in which it was aware that Muddy Waters believed there may be a disqualification issue but had no means to raise that issue for resolution. Muddy Waters contends that TTI and Quinn Emanuel assumed the risk of disqualification by continuing to litigate, Response at 16, 20, but that argument inverts the burden, which rests on the party seeking disqualification to raise the issue and prove it. *See* Order at 4 (citing *Texas v. Biden*, 570 F. Supp. 3d 398, 404 (N.D. Tex. 2021)). TTI had no procedural vehicle for obtaining a ruling that its counsel was not conflicted, and Muddy Waters answers only that Quinn Emanuel should have withdrawn voluntarily (Response at 14-15), but that assumes the very conflict Muddy Waters bears the burden to prove, and a firm that disputes a conflict in good faith is not obligated to withdraw merely because its adversary asserts one. By choosing to mention potential disqualification in passing in footnotes rather than raise the issue for resolution by the Court, Muddy Waters sought to leverage the issue for its tactical advantage. This is precisely the type of circumstance that warrants a finding of waiver. *See, e.g.*, *In re Nat'l Lloyds Ins. Co.*, 2016 WL 552112, at *7-8 (Tex. App. Feb. 10, 2016).

Muddy Waters' delay was tactically calculated to further Muddy Waters' objectives of delay and evasion, and none of its justifications holds water. The Order's finding otherwise was clearly erroneous and should be set aside.

### B. The Order Erroneously Ruled That Burck's Government Investigations Advice Was Substantially Related To This Defamation Action

Muddy Waters argues that the Order correctly found that "this litigation is substantially related to Quinn Emanuel's prior representation of Muddy Waters," because it "correctly stat[ed] the legal standard and review[ed] the salient facts." Response at 12. But reciting the right standard does not insulate a ruling that misapplies it, and a legal conclusion is contrary to law when it fails to apply or misapplies the governing caselaw. *Great W. Cas. Co. v. Deepwell Energy Servs., LLC*, 2024 WL 4103369, at *2 (W.D. Tex. May 14, 2024). Here, the Order stated the substantial

relationship test correctly but never held Muddy Waters to the specificity that test demands.

i. **The Order erred in holding that Muddy Waters met its burden of proving substantial relatedness with specificity.**

First, the Order was contrary to law in failing to hold Muddy Waters to its burden "of proving the present and prior representations are substantially related," and of "delineat[ing] with specificity the subject matters, issues and causes of action common to prior and current representations." *Finalrod IP, LLC v. John Crane, Inc*., 2016 WL 866930, at *3 (W.D. Tex. Mar. 3, 2016) (internal citations omitted). Even in its Response, Muddy Waters fails to provide the requisite specificity. Instead, it doubles down on vagaries, arguing that William Burck's representation was "active and substantive" (Response at 5), that the Amended Complaint "attack[s] Muddy Waters' business model, publications, and history" (Response at 14), and that both representations concern Muddy Waters' "business model" (Response at 14). Generalities of that kind are not the specific delineation the law requires, and the Order's acceptance of them misapplied the governing standard.

The practical implications here demonstrate why the law requires specific delineation. As TTI explained in its Objection, if invoking vague and generic overlap like the "business model" were enough to warrant disqualification, the substantial relationship doctrine would collapse and virtually no two matters involving the same client could ever ***not*** be substantially related. Such a rule would nullify the express consent Muddy Waters provided to Quinn Emanuel to be adverse to it in matters not substantially related (Objection at 14-15), and would erase the distinction the Texas Rules draw between a former client's general policies and practices, which ordinarily do not bar a later representation, and specific facts relevant to the new matter, which ordinarily do. *See, e.g.*, Tex. R. Prof. Cond. 1.09.

This Court's ruling in *Finalrod* confirms this point. In that case, both representations

involved the same patent, but this Court explained that "that is the end of their similarity for disqualification purposes" and held that the representations were not substantially similar, because disqualification "requires more than that two cases involve the same patent." 2016 WL 866930, at *5. Muddy Waters seeks to distinguish *Finalrod* on the grounds that the earlier work there concerned patent validity while the latter case concerned infringement, and that the relevant information had since become public. Response at 13. That distinction confirms rather than undermines TTI's argument because *Finalrod* looked past the shared subject matter to the specific issues each representation presented and found them distinct. The same analysis applies here, where Burck advised on a government inquiry into potential securities violations, this case asks whether Muddy Waters is liable for Bonilla's reports about TTI, and much of what Muddy Waters calls its business model is a matter of public record. *See* ECF 65 at 14-15. A shared reference to Muddy Waters' business model is no more sufficient than a shared patent was in *Finalrod*.

#### ii. This litigation is about Muddy Waters' relationship with Bonilla, not its business model.

Second, the Order clearly erred in how it framed the issues in dispute in this matter. Muddy Waters' only response is to double down on the incorrect interpretations of the Amended Complaint that originally led the Magistrate Judge astray. Response at 12-13. Muddy Waters' Response again quotes repeatedly from the introduction of the Amended Complaint to characterize this action as relating to Muddy Waters' agency relationship with "third parties like Bonilla" and its "business model." Response at 7, 13-14 (citing ECF 39 ¶¶ 1-4). But the causes of action in the Amended Complaint relate only to Muddy Waters' relationship ***with Bonilla himself***—a relationship that did not even ***exist*** until six weeks after Burck stopped billing time to Muddy Waters—and whether that relationship gives rise to partnership or agency liability (ECF 39 ¶¶ 245-266) or whether the specific circumstances of Muddy Waters' participation in Bonilla's

defamatory reports about TTI give rise to conspiracy liability (*id.* ¶¶ 149-244). *See* Objection at 16-17. This critical distinction between the representations endures, and the Order was clearly erroneous in ruling otherwise.

iii. **Even if confidential information had been shared, that is not an independent basis for disqualification.**

Lastly, Muddy Waters seeks to paper over its failure to show a substantial relationship by arguing that it "identified in detail the confidential information disclosed to Quinn," and that Burck's conflicts are imputed to Quinn Emanuel. Response at 13. But that argument misses the mark. Even if Muddy Waters did identify confidential information communicated to Burck, Fifth Circuit precedent requires the identification of "*relevant* confidential information," not simply "confidential information."[2] *Duncan*, 646 F.2d at 1032 (emphasis added). The Response fails to explain how confidential information about Muddy Waters' "business model" is sufficiently related to its specific relationship with Bonilla, where Texas Rules require more relatedness than a former client's general policies and practices. And because that relationship did not begin until September 2022, after Burck stopped working for Muddy Waters, Muddy Waters cannot argue that any generic business model information from July 2022 or earlier could "materially advance" TTI's claims about that relationship with Bonilla. There is thus no legal support for the Order's ruling, and it should be set aside.

## CONCLUSION

For the foregoing reasons, the Court should set aside the Order and deny Muddy Waters' motion to disqualify TTI's counsel.

---

[2] Texas Rule 1.09, which the Order quotes (Order at 4, 7-8), no longer lists receipt of confidential information as a separate ground for disqualification; instead, the Rule incorporates confidential information into the substantial relationship test. *See* Tex. R. Prof. Cond. 1.09 cmt. 3.

Dated: October 19, 2026

**QUINN, EMANUEL, URQUHART & SULLIVAN LLP**

*/s/ John F. Bash*

John F. Bash
Texas Bar No. 24067504
300 West 6th Street, Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100
Facsimile: (737) 667-6110
Email: johnbash@quinnemanuel.com

*Specially Appearing for Techtronic Industries Company Limited for this Reply*

**CERTIFICATION OF SERVICE**

I hereby certify that on October 19, 2026, true and correct copies of the foregoing document were served on the following counsel in the manner indicated:

**VIA E-MAIL**

Peter D. Kennedy
Texas Bar No. 11296650
James A. Hemphill
Texas Bar No. 00787674
Hailey L. Suggs
Texas Bar No. 24113497
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas 78701
Telephone: (512) 480-5764
Email: pkennedy@gdhm.com
jhemphill@gdhm.com
hsuggs@gdhm.com

David S. Korzenik, *pro hac vice*
Miller Korzenik Rayman LLP
The Paramount Building
1501 Broadway, Suite 2015
New York, NY 10036
Telephone: (212) 752-9200
Email: dkorzenik@mkslex.com

*Counsel for Defendants*

*/s/ John F. Bash*
John F. Bash